IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GETTY IMAGES (US), INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-135 (GBW) |
| | ) | |
| STABILITY AI, LTD. and | ) | |
| STABILITY AI, INC., | ) | |
| | ) | |
| Defendants. | | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
## MOTION TO DISMISS OR TRANSFER THIS ACTION

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

OF COUNSEL:

Nicole M. Jantzi
Paul M. Schoenhard
FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP
801 17th Street, NW
Washington, DC 20006
(202) 639-7000

*Attorneys for Defendants Stability AI, Inc. and
Stability AI Ltd.*

Amir R. Ghavi
Michael C. Keats
Nicholas D. Winkley
FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP
One New York Plaza
New York, New York 10004
(212) 859-8000

May 2, 2023

## TABLE OF CONTENTS

Table of Authorities .................................................................................................................. ii

Nature and Stage of the Proceeding........................................................................................1

Summary of Argument .............................................................................................................1

Statement of Facts.....................................................................................................................3

Argument ...................................................................................................................................4

I.      This Court Lacks Personal Jurisdiction Over Stability UK. .................................4

        A.      Delaware's Long-Arm Statute Does Not Provide a Basis for Personal
                Jurisdiction Over Stability UK...................................................................5

        B.      Stability UK is Not Subject to General Jurisdiction in Delaware...........7

        C.      Stability UK is Not Subject to Specific Jurisdiction in Delaware. .......10

        D.      The Federal Long-Arm Statute Does Not Provide a Basis for Personal
                Jurisdiction Over Stability UK.................................................................11

II.     Stability UK is a Necessary and Indispensable Party. .......................................13

III.    This Court Should Dismiss this Case for Failure to State a Claim....................15

IV.     This Court Should Transfer this Case to the Northern District of California
        Pursuant to 28 U.S.C. § 1631....................................................................................16

V.      This Court Should Alternatively Transfer This Case to the Northern District of
        California Pursuant to 28 U.S.C. § 1404(a). .........................................................17

        A.      The § 1404(a) Factors Overwhelmingly Favor Transfer. .....................17

Conclusion ...............................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Adtile Techs. Inc. v. Perion Network Ltd.*,
   192 F. Supp. 3d 515 (D. Del. 2016)................................................................11, 12

*Adverio Pharma GmbH v. Alembic Pharms. Ltd.*,
   No. 18-73-LPS, 2019 WL 581618 (D. Del. Feb. 13, 2019)....................................16

*Arcelik, A.S. v. E.I. Du Pont de Nemours & Co.*,
   No. 15-961-LPS, 2016 WL 5719681 (D. Del. Sept. 29, 2016) ...............................14

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
   552 F.3d 1324 (Fed. Cir. 2008)...............................................................................13

*Baker v. Wehinger*,
   No. 18-5800-DMG, 2021 WL 1573820 (C.D. Cal. Mar. 5, 2021) ..........................13

*Blair v. Infineon Techs. AG*,
   720 F. Supp. 2d 462 (D. Del. 2010)...........................................................................8

*Brit. Telecomms, PLC v. IAC/InteractiveCorp*,
   356 F. Supp. 3d 405 (D. Del. 2019)...........................................................................15

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985).................................................................................................10

*CFMT Inc. v. Steag Microtech, Inc.*,
   No. 95-442-LON, 1997 WL 313161 (D. Del. Jan. 9, 1997)...................................12

*Christianson v. Colt Indus. Operating Corp.*,
   486 U.S. 800 (1988).................................................................................................16

*Commisseriat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*,
   293 F. Supp. 2d 423 (D. Del. 2003), *vacated on other grounds by* 395 F.3d
   1315 (Fed. Cir. 2005).................................................................................................12

*Cont'l Grain Co. v. The FBL-585*,
   364 U.S. 19 (1960)...................................................................................................19

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)...............................................................................................6, 7

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*,
   566 F.3d 94 (3d Cir. 2009).......................................................................................16

*Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*,
   623 F.3d 147 (3d Cir. 2010).......................................................................................6

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021) ............................................................................................................7

*Freeman v. Nw. Acceptance Corp.*,
   754 F.2d 553 (5th Cir. 1985) ..............................................................................................14

*Funai Elec. Co. v. Personalized Media Commc'ns, LLC*,
   No. 15-558-RGA, 2016 WL 370708 (D. Del. Jan. 29, 2016)................................................5

*Gen. Sci. Corp. v. Den-Mat Holdings, LLC*,
   No. 21-882-CFC, 2021 WL 4622548 (D. Del. Oct. 7, 2021) ..............................................20

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)..............................................................................................................8

*Hall v. Nat'l Serv. Indus., Inc.*,
   172 F.R.D. 157 (E.D. Pa. 1997)..........................................................................................14

*Hanson v. Denckla*,
   357 U.S. 235 (1958)............................................................................................................10

*Henderson v. United States Off. of Pers. Mgmt.*,
   844 F. App'x 551 (3d Cir. 2021) .........................................................................................16

*In re: Howmedica Osteonics Corp*,
   867 F.3d 390 (3d Cir. 2017)..........................................................................................17, 20

*IM2 Merch. & Mfg., Inc. v. Tirex Corp.*,
   No. 18077, 2000 WL 1664168 (Del. Ch. Nov. 2, 2000) ........................................................8

*inno360, Inc. v. Zakta, LLC*,
   50 F. Supp. 3d 587 (D. Del. 2014) ..................................................................................5, 10

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945)..............................................................................................................5

*Island Insteel Sys., Inc. v. Waters*,
   296 F.3d 200 (3d Cir. 2002).................................................................................................16

*Japan Petroleum Co. (Nigeria) v. Ashland Oil, Inc.*,
   456 F. Supp. 831 (D. Del. 1978) ..........................................................................................15

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995)...................................................................................................17

*Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*,
   201 F.R.D. 337 (D. Del. 2001), *aff'd*, 65 F. App'x 803 (3d Cir. 2003)..................................14

*M2M Sols. LLC v. Telit Commc'ns PLC*,
No. 14-1103-RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015) ............................................16

*Martinez v. E.I. DuPont de Nemours & Co.*,
82 A.3d 1 (Del. Super. Ct. 2012), *aff'd*, 86 A.3d 1102 (Del. 2014) ......................................14

*Memory Integrity, LLC v. Intel Corp.*,
No. 13-1804 GMS, 2015 WL 632026 (D. Del. Feb. 13, 2015) ............................................18

*Metro-Goldwyn-Mayer Studious, Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)..........................................................................................................11

*Monsanto Co. v. Syngenta Seeds, Inc.*,
443 F. Supp. 2d 636 (D. Del. 2006)...............................................................................11, 12

*O'Connor v. Sandy Lane Hotel Co.*,
496 F.3d 312 (3d Cir. 2007)..................................................................................................5

*Pearson v. Component Tech. Corp.*,
247 F.3d 471 (3d Cir. 2001)...............................................................................................8, 9

*Provident Tradesmens Bank & Tr. Co. v. Patterson*,
390 U.S. 102 (1968)..........................................................................................................14

*Reach & Assocs., P.C. v. Dencer*,
269 F. Supp. 2d 497 (D. Del. 2003)......................................................................................6

*Registered Agents, Ltd. v. Registered Agent, Inc.*,
880 F. Supp. 2d 541 (D. Del. 2012).....................................................................................5, 7

*Ruhrgas AG v. Marathon Oil Co.*,
526 U.S. 574 (1999)..............................................................................................................4

*Sebastian Brown Prods., LLC v. Muzooka Inc.*,
No. 14-009-SLR, 2015 WL 1467255 (D. Del. Mar. 30, 2015) ............................................11

*Shoemaker v. McConnell*,
556 F. Supp. 2d 351 (D. Del. 2008)......................................................................................6

*Smart Audio Techs., LLC v. Apple, Inc.*,
910 F. Supp. 2d 718 (D. Del. 2012)....................................................................................19

*Sony Corp. v. Pace PLC*,
No. 15-288-SLR, 2016 WL 593455 (D. Del. Feb. 12, 2016) ..............................................12

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*,
No. 16-581-RGA-MPT, 2017 WL 896988 (D. Del. Mar. 7, 2017)...................................9, 15

*Telcordia Techs., Inc. v. Alcatel S.A.*,
   No. 04-874-GMS, 2005 WL 1268061 (D. Del. May 27, 2005) ...............................................12

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*,
   676 F. Supp. 2d 321 (D. Del. 2009)......................................................................................18

*Time Share Vacation Club v. Atl. Resorts, Ltd.*,
   735 F.2d 61 (3d Cir. 1984)....................................................................................................5

*Toys "R" Us, Inc. v. Step Two, S.A.*,
   318 F.3d 446 (3d Cir. 2003)..................................................................................................10

*Tractenberg v. Marriott Int'l, Inc.*,
   No. 21-1002-SB, 2021 WL 5299823 (D. Del. Nov. 15, 2021).............................................8

*Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*,
   332 F.3d 188 (3d Cir. 2003)...................................................................................................8

*United States v. Bestfoods*,
   524 U.S. 51 (1998)............................................................................................................9, 15

*Walden v. Fiore*,
   571 U.S. 277 (2014).............................................................................................................7

*Wilson v. The Canada Life Assur. Co.*,
   No. 08-1258, 2009 WL 532830 (M.D. Pa. Mar. 3, 2009) ...................................................13

**Statutes**

10 *Del. C.* § 3104 (c)(1)–(4) ..............................................................................................6

28 U.S.C. § 1404(a) ..................................................................................1, 17, 19, 20

28 U.S.C. § 1631.........................................................................................1, 16

## NATURE AND STAGE OF THE PROCEEDING

On February 3, 2023, Plaintiff Getty Images (US), Inc. ("Getty") filed this action for copyright and trademark infringement, among other claims, against Defendant Stability AI, Inc. ("Stability US").  On March 29, 2023, Getty amended its Complaint to add Stability AI Ltd. ("Stability UK") as a defendant. D.I. 13 ("Am. Compl.").  Stability UK and Stability US now move this Court to dismiss the Amended Complaint for lack of personal jurisdiction, for inability to join a necessary and indispensable party, and for failure to state a claim upon which relief can be granted.  Alternatively, Stability UK and Stability US move to transfer this case to the Northern District of California under 28 U.S.C. § 1631 or § 1404(a).

## SUMMARY OF ARGUMENT

This lawsuit does not belong in Delaware.  First, there is no personal jurisdiction over Stability UK, a necessary and indispensable party.  As the Amended Complaint alleges, Stability UK is organized under the laws of the United Kingdom, maintains its principal place of business in London, England, and has no offices or personnel in Delaware.  All of the allegations of infringement based on the training of Stable Diffusion on Getty's images occurred outside Delaware.  Getty fully recognizes that it cannot establish personal jurisdiction over Stability UK, underscored by its initial decision to name only Stability US, Stability UK's corporate parent, as a defendant in this action.  It was only *after* Stability US informed Getty's counsel that it intended to move to dismiss on the grounds that Stability UK was a necessary and indispensable party that Getty named Stability UK as an additional defendant.

But Getty cannot cure its failure to name a necessary and indispensable party by naming a party over which there is no personal jurisdiction.  The Amended Complaint does not allege any facts tying Stability UK to Delaware.  The mere fact that Stability US, a Delaware holding company, is Stability UK's corporate parent plainly does not confer personal jurisdiction over

Stability UK—and Getty does not contend otherwise.  Instead, the Amended Complaint asserts that Stability UK and Stability US are alter egos, and therefore can be treated as a single enterprise for jurisdictional and pleading purposes.  But Getty has failed to allege any facts beyond mere corporate ownership and overlapping senior management common to virtually every parent-subsidiary relationship, and those facts are insufficient as a matter of law to establish that Stability US and Stability UK are alter egos.  Simply put, the claims against Stability UK should be dismissed for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

Second, Stability UK remains a necessary and indispensable party to this action, even though this Court lacks personal jurisdiction over it.  Getty's belated decision to name Stability UK as an additional defendant in its Amended Complaint only confirms this fact.  The claims against Stability US therefore should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) because Stability UK cannot be joined in this action.

Third, the Amended Complaint suffers from another fatal defect.  In its zeal to bolster its baseless alter ego theory, Getty has lumped Stability US and Stability UK together and made impermissible group-pleading allegations as to "Stability AI."  Under settled law, such "shotgun" pleading does not satisfy the requirements of Fed. R. Civ. P. 8(a), and the Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).

Finally, although dismissal is warranted and appropriate, under settled law, this Court can transfer this case to the Northern District of California, where a previously filed class action is pending against both Stability US and Stability UK that arises from substantially the same facts and circumstances and presents identical issues of law—making transfer both in the interests of judicial economy, and necessary to avoid subjecting Stability US and Stability UK to the risk of inconsistent judgments.  As detailed below, more than 20% of Stability UK's U.S.-based

2

workforce resides in California (while none reside in Delaware), and Stability UK and Stability US have consented to personal jurisdiction in the Northern District of California.  Meanwhile, the Northern District of California is plainly convenient for Getty because Getty maintains its headquarters on the west coast and has a significant presence in California.  Getty has no such connections to Delaware.

## STATEMENT OF FACTS

Stability US and Stability UK[1]

The Amended Complaint alleges that Defendant Stability US is a Delaware holding company. Am. Compl. ¶ 14; O'Donoghue Decl. ¶ 4.  Stability US owns a subsidiary, Stability UK, which is a limited company formed under the laws of the United Kingdom. Am. Compl. ¶¶ 15, 19; O'Donoghue Decl. ¶ 5.  Neither Stability US nor Stability UK has any offices or employees located in Delaware. O'Donoghue Decl. ¶¶ 11, 14.  Stability US is the corporate vehicle through which investors and financing sources have provided capital. *Id.* ¶ 13.

Founded in 2019, Stability UK operates the DreamStudio platform and has been involved with the ongoing development of Stable Diffusion, an open-source generative imaging artificial intelligence ("AI") technology. *Id.* ¶ 6.

To avoid the clear absence of jurisdiction over Stability UK in Delaware, Getty baldly alleges that Stability US and Stability UK "are alter egos of one another and operate as a single enterprise." Am. Compl. ¶ 15.  In support of this allegation, Getty relies on facts common to parent-subsidiary relationships, such as common ownership and control. *Id.* ¶¶ 18–20.

---

[1]    Accompanying this motion is the Declaration of Peter O'Donoghue, dated May 2, 2023 ("O'Donoghue Declaration").  All citations to "Ex." herein refer to the exhibits to the O'Donoghue Declaration.  Unless otherwise noted herein, all citations and internal quotation marks are omitted, and all alterations and emphases in quoted materials are added.

The Prior-Filed California Class Action

On January 13, 2023, three plaintiffs filed a lawsuit against both Stability US and Stability UK in the Northern District of California (the "Class Action"). *See* O'Donoghue Decl. ¶ 17, Ex. A. The plaintiffs in the Class Action purport to represent a nationwide putative class, including all copyright owners of images that were used to train Stable Diffusion. The class plaintiffs allege, among other things, that Stability UK and Stability US infringed plaintiffs' copyrights by using those images to train Stable Diffusion without their authorization. The Class Action seeks monetary damages and injunctive relief and asserts claims under the Copyright Act, the DMCA, the Lanham Act, and various California state laws.

Getty's U.K. and Delaware Actions

On January 16, 2023, Getty Images (UK), Ltd. commenced a pre-filing procedure against Stability UK asserting claims for copyright infringement and related claims under the laws of the United Kingdom, based on Stability UK's alleged training and release of Stable Diffusion. The following month, on February 3, 2023, Getty Images (US) Inc. filed this suit against Stability US— but not against Stability UK. D.I. 1. After conferring with Stability US and Stability UK's counsel, Getty amended its complaint to add Stability UK as a defendant. Like the Class Action, Getty alleges that "Stability AI" infringed Getty's copyrighted images by using photographs from Getty's online image database while training Stable Diffusion. Getty similarly seeks damages and injunctive relief under the Copyright Act, the DMCA, and the Lanham Act.

## ARGUMENT

### I.     This Court Lacks Personal Jurisdiction Over Stability UK.

Personal jurisdiction is an "essential element" of a court's ability to hear a case, "without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). Getty bears the burden of establishing, with particularity, that sufficient

minimum contacts exist between Stability UK and Delaware to support personal jurisdiction here. *Registered Agents, Ltd. v. Registered Agent, Inc.*, 880 F. Supp. 2d 541, 544 (D. Del. 2012); *see O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).  To do so, Getty cannot rely on the bare pleadings alone, but "must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984); *Registered Agents, Ltd.*, 880 F. Supp. 2d at 544.

To establish personal jurisdiction, Getty must establish facts sufficient to satisfy both statutory and constitutional requirements. *See, e.g.*, *inno360, Inc. v. Zakta, LLC*, 50 F. Supp. 3d 587, 592 (D. Del. 2014).  First, Getty must establish a statutory basis for jurisdiction under Delaware's long-arm statute. *Id.*  Second, Getty must establish that the exercise of jurisdiction comports with constitutional due process. *Id.*; *see International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Getty has failed to do either.

A.   ***Delaware's Long-Arm Statute Does Not Provide a Basis for Personal Jurisdiction Over Stability UK.***

Delaware's long-arm statute "has been broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause," but Delaware Courts have made clear that "the personal jurisdictional analysis must not be collapsed into a single constitutional inquiry." *Funai Elec. Co. v. Personalized Media Commc'ns, LLC*, No. 15-558-RGA, 2016 WL 370708, at *2 (D. Del. Jan. 29, 2016).  Therefore, if Getty "cannot satisfy the statutory basis for personal jurisdiction, the court need not reach the constitutional due process prong of the personal jurisdiction analysis." *Registered Agents, Ltd.*, 880 F. Supp. 2d at 547.

Delaware's long-arm statute provides for the exercise of personal jurisdiction over any nonresident who in person or through an agent: (1) "Transacts any business or performs any character of work or service in the State"; (2) "Contracts to supply services or things in this State";

(3) "Causes tortious injury in the State by an act or omission in this State"; or (4) "Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State." 10 *Del. C.* § 3104 (c)(1)–(4).  Courts in this District have held that the long-arm statute requires a showing of specific jurisdiction (other than with respect to (c)(4), which relates to general jurisdiction). *See Shoemaker v. McConnell*, 556 F. Supp. 2d 351, 354–55 (D. Del. 2008).

Here, Getty has not even attempted to plead a statutory basis for jurisdiction under Delaware's long-arm statute.  Getty does not allege that any of the purportedly infringing acts regarding training Stable Diffusion occurred within Delaware. *Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 503 (D. Del. 2003) ("In order for a court to exercise jurisdiction under Subsections (c)(1) and (c)(3), some act must actually occur in Delaware.").  Rather, although the Amended Complaint is vague in this regard, Getty appears to allege that the training took place in England and Germany. *See, e.g.*, Am. Compl. ¶¶ 48 ("Stable Diffusion was trained . . . from Datasets prepared by non-party LAION, a German entity . . ."); 18 ("Stability [US] and Stability [UK] . . . are located at the same physical London address . . .").  Getty also does not allege that Stability UK contracted to supply services or things in Delaware. *See Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (holding that subsection (c)(2) of the Delaware long-arm statute requires that service contracts must be for services performed in Delaware).  Section 3104(c)(4) likewise is not a basis for exercising jurisdiction because Stability UK is not subject to general jurisdiction in Delaware, as discussed further below.[2]

---

[2]     To the extent that Section 3104(c)(4) purports to grant general jurisdiction based solely on a company's continuous and regular business contacts with Delaware, this Section would clearly violate the constitutional limitations identified by the Supreme Court. *See Daimler AG v. Bauman*,

Because Getty has failed to plead any facts supporting personal jurisdiction over Stability UK under Delaware's long-arm statute, this Court should dismiss the claims against Stability UK for lack of personal jurisdiction. *See Registered Agents, Ltd.*, 880 F. Supp. 2d at 547.

**B.      *Stability UK is Not Subject to General Jurisdiction in Delaware.***

In addition to lacking any statutory basis for exercising personal jurisdiction over Stability UK, Getty also cannot establish that exercising jurisdiction comports with the U.S. Constitution. The two routes to establishing personal jurisdiction under the U.S. Constitution are general and specific jurisdiction. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). General jurisdiction exists where a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction, on the other hand, "'focuses on the relationship among the defendant, the forum, and the litigation'" rather than "the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

Getty concedes, as it must, that Stability UK is not "at home" in Delaware. *Daimler AG*, 571 U.S. at 127. "Stability AI, Ltd. is a UK corporation with headquarters in London, UK." Am. Compl. ¶ 15. And Getty does not allege that this is an "exceptional case" where Stability UK's operations in Delaware are "so substantial and of such a nature as to render" it subject to general personal jurisdiction in the State. *Daimler AG*, 571 U.S. at 139 n.19.

Moreover, the fact that Stability UK's parent company, Stability US, is incorporated in Delaware does not change the analysis. It is settled that a parent company's forum contacts are

---

571 U.S. 117, 127 (2014) (holding that even "a substantial, continuous, and systematic course of business" cannot support the exercise of general personal jurisdiction).

not imputed to its subsidiary. *See Goodyear Dunlop Tires*, 564 U.S. at 921 (holding that there was no personal jurisdiction over three foreign subsidiaries of a US-based parent company); *IM2 Merch. & Mfg., Inc. v. Tirex Corp.*, No. 18077, 2000 WL 1664168, at *4 n.15 (Del. Ch. Nov. 2, 2000) (holding that the mere fact that a parent is incorporated in Delaware is insufficient to confer jurisdiction over a non-Delaware subsidiary). Indeed, that theory of personal jurisdiction has been squarely rejected in this Court. *See Tractenberg v. Marriott Int'l, Inc.*, No. 21-1002-SB, 2021 WL 5299823, at *1 (D. Del. Nov. 15, 2021) ("We cannot travel from a *Delaware parent* to a *foreign subsidiary*") (emphasis in original).

Finally, Getty's attempt to overcome its jurisdictional shortcomings by relying on an alter ego theory fails. For one, Getty has not attempted to allege that Stability US and Stability UK have structured their corporate affairs in order to perpetrate a fraud on Getty or anyone else, much less demonstrate this alter ego relationship by clear and convincing evidence. *See Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 470 (D. Del. 2010) ("This court has required an element of fraudulent intent in its alter ego test"); *Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003) ("Alter ego . . . must be shown by clear and convincing evidence"). For another, Getty does not allege any facts to satisfy the high standards required to establish that separate companies are alter egos. *See Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484–85 (3d Cir. 2001) (noting that courts consider whether there is "gross undercapitalization, [a] failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, [an] absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder"). Indeed, none of Getty's allegations go beyond the typical powers of stock ownership inherent in

any parent-subsidiary relationship. *See United States v. Bestfoods*, 524 U.S. 51, 61–62 (1998) ("[I]t is hornbook law that the exercise of the 'control' which stock ownership gives to the stockholders . . . will not create liability beyond the assets of the subsidiary" and "[t]hat 'control' includes the election of directors, the making of by-laws . . . and the doing of all other acts incident to the legal status of stockholders.").

Thus, Getty's allegations that Stability US has the power to appoint or remove members of Stability UK's board of directors and that the two corporations share the same CEO and founder cannot alone establish its alter ego theory. *See id.* (noting that "a duplication of some or all of the directors or executive officers" will not create liability); *Pearson*, 247 F.3d at 471 (holding that liability will not be imposed on the parent corporation merely because directors of the parent corporation also serve as directors of the subsidiary). Likewise, the allegation that Stability US and Stability UK share the same principal places of business (in London) and website are insufficient to establish that the parent and subsidiary are alter egos. *See T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, No. 16-581-RGA-MPT, 2017 WL 896988, at *2, *5 (D. Del. Mar. 7, 2017) (holding that parent and subsidiary were not alter egos of each other despite the fact that the companies had "a shared corporate headquarters, a shared principal executive office address, and shared directors and executive officers."). And Getty's allegations that Stability US raised over $75 million actually confirms that outside investors treat Stability US as a separate legal entity from Stability UK. Indeed, as holding companies often do, Stability US has recently acquired a new company, Init ML Inc. and its subsidiary Init ML SAS, which will operate independent of its sibling Stability UK as a subsidiary of Stability US. *See* O'Donoghue Decl. ¶ 13. Thus, Getty failed to establish that Stability UK and Stability US are alter egos.

C.     *Stability UK is Not Subject to Specific Jurisdiction in Delaware.*

Stability UK is also not subject to specific jurisdiction in Delaware.  Specific jurisdiction arises when a defendant has both purposefully directed its activities at residents of the forum state and the action arises from, or is directly related to, the defendant's actions within the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  The Third Circuit uses a "purposeful availment" test for deciding whether a defendant's internet website meets the test for specific jurisdiction. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451–52 (3d Cir. 2003).  The Amended Complaint makes no allegation that Stability UK made *any* copies of Getty's copyrighted works in Delaware in connection with training Stable Diffusion.  In fact, there is no allegation that Stability UK did *anything* with respect to training Stable Diffusion here.

It is also beyond dispute that "[t]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." *Id.* at 454.  And just because the defendant was aware that its website could be accessed in Delaware and could have foreseen Delaware residents using its services, "does not mean that defendant purposefully directed its activities at residents of Delaware or 'purposefully availed' itself of the privilege of doing business in Delaware." *inno360, Inc.*, 50 F. Supp. 3d at 594.  Indeed, "[c]ourts have repeatedly recognized that there must be 'something more' . . . to demonstrate that the defendant *directed its activity towards the forum state*." *Toys "R" Us, Inc.*, 318 F.3d at 452 (emphasis in original).  To the extent that a Delaware resident accesses the DreamStudio platform, this "random, fortuitous, [and] attenuated" contact is insufficient to confer personal jurisdiction over Stability UK. *Burger King Corp.*, 471 U.S. at 475; *see Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State").  Stability UK is not subject to the jurisdiction of Delaware courts merely because it "has not excluded Delaware from accessing its website." *inno360, Inc.*, 50 F.

Supp. 3d at 595.[3]  Thus, "[t]here is no persuasive evidence that defendants have targeted Delaware residents, or that any Delaware resident has created an account on [DreamStudio] to enable further, continuous interaction with defendants."  *Sebastian Brown Prods., LLC v. Muzooka Inc.*, No. 14-009-SLR, 2015 WL 1467255, at *3 n.4 (D. Del. Mar. 30, 2015).

Simply put, the Amended Complaint fails to allege any connection between Delaware and Stability UK's alleged infringing acts.  For these reasons, this Court lacks specific personal jurisdiction over Stability UK.

### D.  The Federal Long-Arm Statute Does Not Provide a Basis for Personal Jurisdiction Over Stability UK.

Finally, Getty cannot rely on the federal long-arm statute as a basis for personal jurisdiction over Stability UK.  Under Fed. R. Civ. P. 4(k)(2), personal jurisdiction over a foreign defendant exists when: (1) the case arises under federal law; (2) the foreign defendant lacks sufficient contacts with any single state to subject it to personal jurisdiction in any state; and (3) the foreign defendant has sufficient contacts with the United States as a whole to comport with constitutional notions of due process. *See Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 647 (D. Del. 2006).  While most of Getty's claims arise under federal law, to satisfy the second prong, known as the negation requirement, "plaintiffs are required to make an affirmative representation that the defendant is not subject to the general jurisdiction of any state court." *Id.*; *see, e.g.*, *Adtile Techs. Inc. v. Perion Network Ltd.*, 192 F. Supp. 3d 515, 524 (D. Del. 2016).  This is because "plaintiff bears the burden of demonstrating that the defendant is not subject to jurisdiction in any

---

[3]      Getty has not identified a *single* instance in which *a Delaware resident* purchased DreamStudio images or downloaded Stable Diffusion and infringed any of Getty's copyrighted images in Delaware.  Underscoring this, Getty does not *even assert contributory or vicarious copyright infringement claims* against Stability US or Stability UK and therefore could not rely on such allegations to establish jurisdiction. *See Metro-Goldwyn-Mayer Studious, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 929–30 (2005) (setting forth elements of vicarious and contributory infringement claims).

state" (*Telcordia Techs., Inc. v. Alcatel S.A.*, No. 04-874 GMS, 2005 WL 1268061, at *5 (D. Del. May 27, 2005)), and plaintiff's failure to do so precludes the federal long-arm statute's application. *See, e.g.*, *Monsanto Co.*, 443 F. Supp. 2d at 647; *Adtile Techs. Inc.*, 192 F. Supp. 3d at 524.

Here, Getty again has not attempted to satisfy its burden. Nowhere in the Amended Complaint does Getty allege that Stability UK is not subject to U.S. jurisdiction in any state.[4] Because Getty has failed to satisfy its burden under the negation requirement, "Rule 4(k)(2) is inapplicable to establish personal jurisdiction." *CFMT Inc. v. Steag Microtech, Inc.*, No. 95-442-LON, 1997 WL 313161, at *8 (D. Del. Jan. 9, 1997), *adopted*, 965 F. Supp. 561 (D. Del. 1997); *see also Commisseriat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 293 F. Supp. 2d 423, 430 (D. Del. 2003) (holding that simply establishing United States contacts was not enough to prove defendant could not be subject to suit in any state), *vacated on other grounds by* 395 F.3d 1315 (Fed. Cir. 2005) (issue abandoned on appeal).

Getty has not done so because it knows that Stability UK *is* subject to personal jurisdiction in the Northern District of California for purposes of this action. *See Sony Corp. v. Pace PLC*, No. 15-288-SLR, 2016 WL 593455, at *5 (D. Del. Feb. 12, 2016) ("[A] defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed"), *report and recommendation adopted*, 2016 WL 1258721 (D. Del. Mar. 28, 2016). Unlike Delaware, Stability UK does have connections to the California forum that allow the exercise of personal jurisdiction over it. First, some of Stability UK's employees on the west coast were involved in the development of Stable Diffusion and DreamStudio, including one employee that worked on DreamStudio while residing in the Northern District of California. *See*

---

[4]     Indeed, Getty affirmatively—albeit wrongly—represents that Stability UK *is* subject to jurisdiction in the United States, because this Court "has personal jurisdiction over [Stability UK] based on Stability [UK]'s contacts with Delaware . . ." Am. Compl. ¶ 21.

O'Donoghue Decl. ¶ 16.  In fact, more than 20% of Stability UK's US-based workforce resides in California, including two senior executives that report directly to the CEO. *See id.* ¶ 15.  Second, Stability UK has already consented to the jurisdiction of the Northern District of California in the prior class action, which concerns substantially the same allegations, conduct, and legal issues. *See Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1334 (Fed. Cir. 2008) (noting that "the *enforcement* or the *defense of the validity* of the relevant patents" in a certain forum can establish personal jurisdiction in that forum) (emphasis in original).  Third, Stability UK has spent more than $500,000 with California suppliers, a considerable amount for a start-up. *See* O'Donoghue Decl. ¶ 15.  These California contacts, even if not adequate by themselves, when taken together, are sufficient to justify the exercise of personal jurisdiction by the Northern District of California over Stability UK for purposes of this action. *See Baker v. Wehinger*, No. 18-5800-DMG, 2021 WL 1573820, at *4 (C.D. Cal. Mar. 5, 2021) ("[E]ven if any individual contact with California would be too attenuated, the contacts, taken together, constitute purposeful availment").[5]

Accordingly, the Amended Complaint should be dismissed as to Stability UK for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

## II.    Stability UK is a Necessary and Indispensable Party.

Stability UK is a necessary and indispensable party under Rule 19, and because it cannot be joined in this case due to lack of personal jurisdiction, the Amended Complaint should be dismissed as to Stability US as well. *See Wilson v. The Canada Life Assur. Co.*, No. 08-1258, 2009 WL 532830, at *12 (M.D. Pa. Mar. 3, 2009) (dismissing entire action under Rule 19 where there was no personal jurisdiction over an indispensable party, despite the plaintiff naming and

---

[5]     And even if Rule 4(k)(2) did apply, it would create personal jurisdiction in the Northern District of California as well as in Delaware, providing another basis for transfer to California.

technically joining that defendant); *Hall v. Nat'l Serv. Indus., Inc.*, 172 F.R.D. 157, 158–59 (E.D. Pa. 1997) ("Preliminarily, I must address the fact that plaintiffs did name, and hence technically joined, [defendant] Chapmon in their complaint. However, this technical joinder does not necessarily circumvent the analysis required under Rule 19."). A party is a necessary party if, in its absence: (1) complete relief cannot be accorded to the present parties, (2) the disposition of the action would impair the party's ability to protect its own interest, or (3) any of the present parties would be subject to a substantial risk of multiple or inconsistent obligations. *See* Fed. R. Civ. P. 19(a). If the absent party is necessary and cannot be joined, the court must next determine whether the party is considered "indispensable" under Rule 19(b). *Arcelik, A.S. v. E.I. Du Pont de Nemours & Co.*, No. 15-961-LPS, 2016 WL 5719681, at *2 (D. Del. Sept. 29, 2016). This inquiry requires a balancing of the interests of the plaintiff, the defendant, the absent party, the courts, and the public. *Id.*; *see Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 109–11 (1968).

There can be no dispute that "when a plaintiff seeks to hold a parent company liable for the conduct of the parent's subsidiary, the subsidiary is a necessary and indispensable party under Rule 19." *Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 201 F.R.D. 337, 340 (D. Del. 2001), *aff'd*, 65 F. App'x 803 (3d Cir. 2003); *see, e.g., Martinez v. E.I. DuPont de Nemours & Co.*, 82 A.3d 1, 21 (Del. Super. Ct. 2012) ("[F]ederal courts in cases such as this have consistently held that a subsidiary is a necessary party in a suit against the subsidiary's parent corporation where the subsidiary is an active participant in the activity that is alleged as the basis for recovery"), *aff'd*, 86 A.3d 1102 (Del. 2014). This is because the subsidiary's "presence is critical to the disposition of the important issues in the litigation. Its evidence will either support the complaint or bolster the defense." *Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985).

Here, notwithstanding its vague collective term "Stability AI," Getty's allegations relate to

14

Stability UK's purported role in creating, training, and distributing Stable Diffusion.  As Getty correctly alleges, the other named defendant, Stability US, is merely a holding company with "no employees or day-to-day operations." Am. Compl. ¶ 20.  And it is well established that a parent company is not liable for the alleged conduct of its subsidiary. *See Bestfoods*, 524 U.S. at 61 ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries"); *Brit. Telecomms, PLC v. IAC/InteractiveCorp*, 356 F. Supp. 3d 405, 409 (D. Del. 2019) ("A parent company is not liable for the actions of its subsidiary solely because of the parent-subsidiary relationship").  A judgment rendered in the absence of Stability UK would not be adequate because Stability US is not an operating company and has not engaged in any of the alleged conduct at issue here.  *See Japan Petroleum Co. (Nigeria) v. Ashland Oil, Inc.*, 456 F. Supp. 831, 847 (D. Del. 1978) (finding this factor "controlling").  Stability UK's presence is therefore necessary and indispensable to the disposition of this litigation, and this Court should dismiss the Amended Complaint as to Stability US pursuant to Fed. R. Civ. P. 12(b)(7).

## III.     This Court Should Dismiss this Case for Failure to State a Claim.

Getty's Amended Complaint also fails for another, and entirely different, reason.  Having sought to lump Stability US and Stability UK together to circumvent the Amended Complaint's jurisdictional infirmities, Getty fails to identify which defendant is responsible for the alleged infringing acts.  Instead, Getty improperly groups Stability US and Stability UK under the collective designation "Stability AI" and refers generically to Stability AI's alleged infringement.

It is well established that lumping allegations against a group of defendants is insufficient to state a claim—even when against a parent company and its subsidiary. *See, e.g.*, *T-Jat Sys. 2006 Ltd.*, No. 16-581-RGA-MPT, 2017 WL 896988, at *7 (dismissing complaint for making allegations against a Delaware parent company and its wholly-owned Washington subsidiary

under the umbrella term "Expedia"); *M2M Sols. LLC v. Telit Commc'ns PLC*, No. 14-1103-RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015) (dismissing complaint for making allegations against a UK parent company and its U.S. subsidiary under the umbrella term "Telit").  Getty thus fails to satisfy the pleading standards of Rule 8(a), and this Court should dismiss this case under Fed. R. Civ. P. 12(b)(6). *See Adverio Pharma GmbH v. Alembic Pharms. Ltd.*, No. 18-73-LPS, 2019 WL 581618, at \*6 (D. Del. Feb. 13, 2019) ("[A]llegations lumping multiple defendants together without providing allegations of individual conduct are frequently (as here) insufficient to satisfy the notice pleading standard").

## IV.    This Court Should Transfer this Case to the Northern District of California Pursuant to 28 U.S.C. § 1631.

Unable to establish personal jurisdiction over Stability UK, Getty leaves this Court with two options: dismissal or transfer. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988).  Dismissal is warranted here because Stability UK is not subject to personal jurisdiction *and* Stability UK is a necessary party that cannot be joined in this action.  In the alternative, because this case could have been brought in the Northern District of California, this Court may transfer this case to that District.  Under 28 U.S.C. § 1631, "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed."  Section 1631 permits transfer in lieu of dismissal for lack of personal jurisdiction. *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 107 (3d Cir. 2009); *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 n.9 (3d Cir. 2002).  Indeed, "[s]ection 1631 creates a presumption in favor of transfer." *Henderson v. United States Off. of Pers. Mgmt.*, 844 F. App'x 551, 553 (3d Cir. 2021) (citing *Jonson v. Fed. Deposit Ins. Corp.*, 877 F.3d 52, 58 (1st Cir. 2017)).  Transfer is in the interest of

justice because California is overwhelmingly more convenient for all parties; Getty is based in the Ninth Circuit with its headquarters in the State of Washington.  Accordingly, this Court should transfer this action to the Northern District of California.

**V.     This Court Should Alternatively Transfer This Case to the Northern District of California Pursuant to 28 U.S.C. § 1404(a).**

Even if Getty could establish personal jurisdiction over Stability UK (and it cannot), the case should still be transferred to the Northern District of California under 28 U.S.C. § 1404(a): "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

**A.     *The § 1404(a) Factors Overwhelmingly Favor Transfer.***

To guide a district court's exercise of discretion under § 1404(a), the Third Circuit has set forth various private and public interests to be balanced. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995).  The private interests relate to the convenience of the parties and witnesses, and include (1) "plaintiff's forum preference as manifested in the original choice"; (2) "the defendant's preference"; (3) "whether the claim arose elsewhere"; (4) "the convenience of the parties as indicated by their relative physical and financial condition"; (5) "the convenience of the witnesses"; (6) "the location of books and records"; and (7) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017).  The public interests derive from "the interest of justice," and include (1) "the enforceability of the judgment"; (2) "the relative administrative difficulty in the two fora resulting from court congestion"; (3) "the local interest in deciding local controversies at home"; (4) "the public policies of the fora"; (5) "the familiarity of the trial judge with the applicable state law in diversity cases"; and (6) "judicial economy considerations." *Id.*

**i)     *The Balance of Private Interests Strongly Favors Transfer.***

The convenience of the parties and witnesses will be served by transferring this case to the

Northern District of California.  Almost all of the enumerated factors point to transfer.

**Plaintiff's Choice of Forum.**  Getty's choice of forum should be given minimal weight. Getty is not incorporated in Delaware and it does not have its principal place of business here. *See, e.g.*, *Memory Integrity, LLC v. Intel Corp.*, No. 13-1804-GMS, 2015 WL 632026, at *3 (D. Del. Feb. 13, 2015) (holding that a plaintiff's choice of forum "weighs minimally against transfer" when the plaintiff has a "minimal connection to [the forum]").  Getty is a New York corporation based in the State of Washington and has substantial operations in California. Am. Compl. ¶ 13.

**The Defendants' Preference.**  Stability UK has legitimate and rational reasons for its alternative forum preference—namely, to better coordinate this case with the Class Action, which presents substantially overlapping allegations and legal issues, to preserve company resources, and to avoid inconsistent judgments.  This factor strongly favors transfer.

**Where the Claims Arose.**  The claims in the Amended Complaint relate to the alleged training and development of Stable Diffusion in the United Kingdom and Germany, all of which occurred outside Delaware.  This factor is neutral.

**Convenience of the Parties.**  It is far more convenient for Stability UK to produce documents and make party witnesses available in the same forum as the prior pending Class Action, rather than being forced to do so on both sides of the country. *See Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 334 (D. Del. 2009) (recognizing that the moving party is not required to show that "relevant documents and evidence cannot be made available in Delaware," only that "it is substantially more convenient for the documents and evidence to be produced in the Northern District of California rather than the District of Delaware").  Similarly, Getty's principal place of business is in the State of Washington.  Getty cannot argue that its choice to litigate this case over 2,000 miles from its headquarters is more

convenient than litigating on the west coast where it maintains a significant presence.  This factor greatly favors transfer.

**Convenience of the Witnesses.**  California is more convenient for the witnesses as they will have to be produced for deposition only once, in coordination with the Class Action, rather than multiple times relating to substantially the same facts and circumstances.  Several individuals who participated in the development of Stable Diffusion and DreamStudio reside on the West Coast, including in California, Oregon, and Washington.  *See* O'Donoghue Decl. ¶ 16.

**Location of Books and Records.**  Both Stability UK's and Getty's books and records can be made available in either forum.  This factor is neutral.

**Other Practical Issues.**  The prior pending Class Action in California supports transfer. *See Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012); *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent").  Indeed, the commonalities between the two lawsuits "may allow the court to develop some familiarity with the [copyrights] and technology involved, thereby conserving judicial time and resources." *Smart Audio Techs., LLC*, 910 F. Supp. 2d at 733.  Additionally, transfer avoids subjecting defendants to the risk of inconsistent judgments, which is particularly present here because the cases will involve non-expert determinations about highly complex technology.  This factor greatly favors transfer.

   ii)  ***The Balance of Public Interests Strongly Favors Transfer.***

Although some of the public interest factors are not applicable here, the three factors that are relevant greatly favor transfer.  The enforceability of a judgment favors California because this Court cannot exercise jurisdiction over Stability UK, the operating company.  And because this case does not involve a local controversy or sound in diversity, those two factors are neutral.

Moreover, there also is no public policy of Delaware or California that would be applicable here.

With regard to court congestion, this Court has only four judges, while the Northern District of California has twenty-two—only eight of whom have taken senior status. *See* https://www.cand.uscourts.gov/judges/. This Court also faces a heavier caseload than the Northern District of California. According to the most recent data provided by the Administrative Office of the United States Courts, between October 1, 2021, and September 30, 2022, there were 834 weighted filings per judge in this Court, as compared to 606 weighted filings per judge in the Northern District of California. *See* https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2022/09/30-1; *Gen. Sci. Corp. v. Den-Mat Holdings, LLC*, No. 21-882-CFC, 2021 WL 4622548, at *3 (D. Del. Oct. 7, 2021) (recognizing that weighted filings per Judge is a good measure of court congestion). This factor strongly favors transfer.

Judicial economy also clearly favors transfer. It is well established that judicial economy is served by "having the two actions in the same district (through transfer) when the two cases are in different courts but involve the same or similar issues and parties." *In re: Howmedica Osteonics Corp*, 867 F.3d at 402. Because the Class Action involves the same issues and the same defendants as the present case, transfer is more efficient.

In sum, the relevant private and public interests weigh decisively in favor of transfer. Accordingly, this Court should transfer this case under § 1404(a).

## **CONCLUSION**

This Court lacks personal jurisdiction over Stability UK, the main defendant, and this entire case therefore should be dismissed because Getty cannot join a necessary and indispensable party. Alternatively, this Court should dismiss this case because the Amended Complaint relies on impermissible group pleading. Finally, if the Court does not dismiss this case, the Court should transfer this case to the Northern District of California.

20

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Defendants Stability AI, Inc. and*
*Stability AI Ltd.*

OF COUNSEL:

Nicole M. Jantzi
Paul M. Schoenhard
FRIED, FRANK, HARRIS, SHRIVER
     & JACOBSON LLP
801 17th Street, NW
Washington, DC 20006
(202) 639-7000

-and-

Amir R. Ghavi
Michael C. Keats
Nicholas D. Winkley
FRIED, FRANK, HARRIS, SHRIVER
     & JACOBSON LLP
One New York Plaza
New York, New York 10004
(212) 859-8000

May 2, 2023

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 2, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 2, 2023, upon the following in the manner indicated:

Tammy L. Mercer, Esquire                                         *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Benjamin E. Marks, Esquire                                      *VIA ELECTRONIC MAIL*
Jared R. Friedmann, Esquire
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
*Attorneys for Plaintiff*


                                              */s/ Michael J. Flynn*
                                              _____
                                              Michael J. Flynn (#5333)