IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GETTY IMAGES (US), INC.

        Plaintiff,

v.

STABILITY AI, LTD. and STABILITY AI, INC.

        Defendants.

C.A. No. 23-135 (GBW)

**LETTER TO THE HONORABLE GREGORY B. WILLIAMS
FROM ROBERT M. VRANA REGARDING DISCOVERY DISPUTE**

Dated: October 9, 2023

OF COUNSEL:

Benjamin E. Marks
Jared R. Friedmann
Brian G. Liegel
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
benjamin.marks@weil.com
jared.friedmann@weil.com
brian.liegel@weil.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Tammy L. Mercer (No. 4957)
Robert M. Vrana (No. 5666)
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
tmercer@ycst.com
rvrana@ycst.com

*Attorneys for Plaintiff Getty Images (US), Inc.*

Dear Judge Williams:

Pursuant to this Court's Order at D.I. 30, Getty Images (US), Inc. ("Getty Images") respectfully submits this letter regarding disputed issues relating to jurisdictional discovery.

After Your Honor's Order, the parties engaged in additional meet and confer negotiations, which resolved some, but not all, disputes regarding the scope of jurisdictional discovery to be produced by Stability AI, Ltd. and Stability AI, Inc. (collectively, "Defendants").[1] Outstanding is Defendants' refusal to produce two highly relevant categories of information: (1) investor pitch and solicitation materials relating to Stability AI, Inc.'s fundraising and (2) board meeting agendas and board presentations. Both of these specific, narrowly tailored categories go *directly* to whether and to what extent the Defendants observe corporate formalities and what Stability AI, Inc. (a U.S. shell entity) told investors about its activities and its relationship to Stability AI, Ltd. in the course of raising hundreds of millions of dollars used to fund the operations of Stability AI, Ltd. Accordingly, this Court should compel Defendants to provide the requested information.

## I. Investor Pitch Materials

Getty Images has requested investor pitch and solicitation documents, including those prepared in connection with Stability AI, Inc.'s fundraising efforts. *See* D.I. 25 at 3. In an effort to resolve this dispute, Getty Images offered to limit its request to "copies of pitch materials shared with any third parties and the e-mail or other correspondence with potential or actual investors concerning transmittals of such materials." *See* Sept. 28, 2023 Letter from B. Marks to P. Schoenhard at 2 (attached as Exhibit A). Relatedly, Getty Images requested that, to the extent not identified through documents produced, Defendants identify the individuals involved in raising capital for Stability AI, Inc. and provide a brief description of their role. *Id*. Beyond orally identifying Emad Mostaque and Peter O'Donoghue as individuals who were "formally" involved, Defendants have refused to provide *any documents* or identify other individuals who were (apparently) "informally" involved. The Court should compel Defendants to respond to the request for documents and interrogatory in full.

There should be no dispute that investor pitch materials related to Stability AI, Inc.'s fundraising efforts are relevant to the alter ego question. Such materials will show how Stability AI, Inc. represented its relationship with Stability AI, Ltd., and whether investors were led to believe that they were investing in Stability AI, Ltd. (the creator of Stable Diffusion) or Stability AI, Inc. (a shell corporation). *See Pontiaki Special Mar. Enter. v. Taleveras Grp.*, No. CV 16-247-LPS, 2016 WL 4497058, at *4 (D. Del. Aug. 26, 2016) (Stark, J.) (holding evidence defendants' "website appears to present the group as a single entity" was evidence of alter ego).

This is not speculation. An available news article contains an image of one slide in one pitch deck in which "Stability" advertised *its relationship* with other AI companies and models, including Laion, the entity which Getty Images alleges Defendants funded to produce datasets in furtherance of the infringing scheme. *See* Tim Smith, Sifted EU, *Leaked deck raises questions over Stability AI's Series A pitch to investors* (Apr. 21, 2023), available at:

---

[1] Based on those meet-and-confer discussions, Getty Images understands that Stability AI will produce final copies of board minutes, intercompany agreements, and financial statements or other documentation reflecting intercompany transfers, dividends, or payments; responses to Getty Images' interrogatories concerning those topics; state-specific information about downloads of Stable Diffusion (if available); and a witness for a deposition, which Getty Images has agreed to conduct remotely. Accordingly, those topics are not addressed here.

https://sifted.eu/articles/stability-ai-fundraise-leak (attached as Ex. B); D.I. 13 at ¶ 48. This glimpse into Defendants' investor pitches only raises questions concerning Defendants' representations to investors, interrelated operations, and who was actually responsible for the pitches. Getty Images is entitled to discovery into these documents to identify what investors were told and who was involved in fundraising efforts. *See Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 471–72 (D. Del. 2010) (evidence companies acted as "single entity" included representations that Infineon used term "Infineon Group" in external publications to refer to alleged alter egos and Infineon employees provided support for operations of alter egos); *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 558-59 (Bankr. D. Del. 2012) (corporation's "significant control over a subsidiary's operations and finances" established evidence that dominant stockholder operated company as "a façade"); *Shopman's Loc. Union 502 Pension Fund v. Samuel Grossi & Sons, Inc.*, No. 20-cv-5776, 2022 WL 129684, at *5 (E.D. Pa. Jan. 13, 2022) (compelling production of documents related to "interrelated operations").

  During the meet and confer, Stability AI took the position that its investor pitches do not bear on the alter ego issue because they are assertedly not relevant to how the companies operate currently. But even if there were daylight between what Defendants told investors about their operations and how Defendants operate today, that difference would not affect this Court's jurisdiction over Stability AI, Ltd. given the timing of when its infringing conduct began. Whether Defendants have more recently begun to act as different entities, rather than as alter egos, is of no moment to the jurisdictional question, which is concerned with whether there was jurisdiction when the offending conduct began. *See, e.g.*, *Blair*, 720 F. Supp. 2d at 471–72 (considering evidence of an alter ego relationship within several years of the alleged wrong); *Trustees of Nat. Elevator Indus. Pension v. Lutyk*, 140 F. Supp. 2d 447, 457 (E.D. Pa. 2001), *aff'd sub nom. Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188 (3d Cir. 2003) (evaluating "the time at which the corporation incurred liability").

  If investors were informed that they were supporting the development of Stable Diffusion or investing in Stability AI, Ltd., when in reality they were funding Stability AI, Inc., or that Stability AI, Ltd. was conducting the affairs of Stability AI, Inc., such evidence weighs heavily in favor of holding Defendants are alter egos. Nor can Defendants avoid identifying individuals involved because they held only "informal" roles. While Defendants have refused to provide this basic information, available public news articles suggest that other "Stability employee[s]" were involved (*supra*, n.2)—and involvement is involvement, whether Defendants categorize it as formal or not.

  Further, Getty Images' request is proportional and not unduly burdensome. Many of these materials are likely centrally located. To whatever extent this request may require a search of e-mails, such searches should not be burdensome because Defendants can use targeted time periods, keywords, and custodians to readily identify responsive documents. Defendants surely know the identity of their investors and potential investors, so it is not unduly burdensome to identify the materials and communications sent to them.

  For these reasons, Defendants should be compelled to produce investor pitch and solicitation documents and identify individuals involved in such solicitation and their roles.

## II. Board Meeting Agendas and Board Presentations

  Although Defendants have represented that the two defendant companies "maintain[] separate books and records, maintain[] separate bank accounts, and observe[] corporate formalities," D.I. 18 ¶ 7, Defendants have refused to respond to several basic discovery requests

that test the accuracy of these statements. Specifically, Getty Images' document requests seek shareholder and board meeting minutes, agendas, and board presentations (RFPs 3, 4, and 5). *See* Ex. A at 1. To lessen any possible burden, Getty Images agreed to limit its request to final copies of such minutes, agendas, and presentations. *Id.* Receiving this information goes to the core of the alter ego analysis because it relates to the question of whether Defendants have observed corporate formalities. *See Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 715 (Del. Ch. 2021).

Defendants cannot seriously dispute the relevancy of this request. While Defendants have now agreed to provide final copies of board minutes subject to redactions for privileged information, they are still unwilling to provide the agendas for those meetings and copies of any materials shared with the board. Board agendas and board presentations, however, are also centrally important to the evaluation of whether corporate entities observe corporate formalities, and courts nationwide have relied on agendas and other board documents beyond meeting minutes for this very purpose. *See In re Parmalat Sec. Litig.*, 640 F. Supp. 2d 243, 254 (S.D.N.Y. 2009) (explaining board's agenda provided evidence of domination over activities by alleged alter ego); *IGF Ins. Co. v. Cont'l Cas. Co.*, No. 1:01-CV-799-RLY-KPF, 2009 WL 4016608, at *39 (S.D. Ind. Oct. 19, 2009), *amended in part on other grounds*, No. 1:01-CV-799-RLY-MJD, 2012 WL 5520982 (S.D. Ind. Nov. 14, 2012) (holding evidence of alter ego existed where entities' "'separate' minutes and agendas were nearly identical copies of each other"); *cf. KT4 Partners LLC v. Palantir Techs., Inc.*, 203 A.3d 738, 756 (Del. 2019) (evidence of company's observance of corporate formalities may come "in the form of board minutes, PowerPoint presentations or memoranda addressed to the board" and other documents).

Defendants contend that producing agendas and presentations is burdensome because their processes were "informal." But "informality" does not make these agendas and presentations any less relevant. To the contrary, such informality would support Getty Images' contention that Defendants are alter egos. *See Winchester Global Trust Co. Ltd. v. Donovan*, 880 N.Y.S.2d 877, 22 Misc.3d 1119(A), 2009 WL 294685 at *5 (2009) (rejecting claim that "informal" board meetings constituted corporate formalities); *Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. CIV.A. 762-N, 2005 WL 2130607, at *9 (Del. Ch. Aug. 26, 2005) (allegations that employees acted informally and performed "activities that, in a proper functioning corporation, the board of directors would perform" sufficiently pled alter ego). Further, if Defendants' alleged burden is caused by having to identify which documents are "final" copies, Defendants can simply produce all copies of board agendas and presentations. Getty Images had proposed to limit its request to final copies intending to minimize any burden on Defendants, rather than increase it.

Simply put, just like board minutes, board agendas and presentations are extremely likely to be probative of Defendants' purported observation of corporate formalities (or the lack thereof). Getty Images' narrow request for such documents is not unduly burdensome.

Getty Images' remaining requests are both narrowly tailored and highly relevant to the alter ego issue this Court held discovery is necessary to resolve. *See* D.I. 30. Therefore, Defendants should be compelled to produce the board materials and investor pitch documents and interrogatories as requested above. A proposed order is submitted herewith.

Respectfully submitted,

 */s/ Robert M. Vrana*
Robert M. Vrana (No. 5666)

cc: All Counsel of Record (via e-mail)

4