IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GETTY IMAGES (US), INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-135 (GBW) |
| | ) | |
| STABILITY AI, LTD. and | ) | |
| STABILITY AI, INC., | ) | |
| | ) | |
| Defendants. | | |

## **DEFENDANTS' ANSWERING LETTER BRIEF REGARDING DISCOVERY DISPUTE**

<div style="float:right">

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Defendants Stability AI, Inc. and
Stability AI Ltd.*

</div>

OF COUNSEL:

Nicole M. Jantzi
Paul M. Schoenhard
FRIED, FRANK, HARRIS, SHRIVER
    & JACOBSON LLP
801 17th Street, NW
Washington, DC 20006
(202) 639-7000

Amir R. Ghavi
Michael C. Keats
FRIED, FRANK, HARRIS, SHRIVER
    & JACOBSON LLP
One New York Plaza
New York, New York 10004
(212) 859-8000

October 16, 2023

Dear Judge Williams,

I write on behalf of Stability AI, Inc. and Stability AI Ltd. ("Defendants"), in response to Getty Images (US), Inc.'s ("Getty") October 9, 2023 letter (D.I. 32).

Getty is not entitled to the additional jurisdictional discovery it seeks. Even before the Court determined that any jurisdictional discovery was warranted, Defendants voluntarily provided a reasonable scope of information and documents relevant to Getty's jurisdictional theories; and Defendants volunteered a witness for deposition—a deposition Getty declined to pursue at that time. Since the Court issued its order (D.I. 30), Defendants have reengaged in further discussion with Getty, have agreed to provide yet further information, and have (again) agreed to provide a witness for deposition. But Getty claims that it is somehow still entitled to more. Enough is enough. Getty has failed to provide any convincing explanation for why it requires Defendants' "board meeting agendas and board presentations," much less "investor pitch and solicitation materials relating to Stability AI, Inc.'s fundraising"—information that relates to Defendants' business plans and strategies rather than their current operations. Accordingly, the Court should deny Getty's request to compel such materials.

## I.   Defendants have already provided or agreed to provide reasonable discovery.

The Court directed the parties "to reach agreement on a ***reasonable and limited scope*** and schedule for jurisdictional discovery." (D.I. 30 (emphasis added).) But Getty's October 9 letter glosses over the significant discovery Defendants have either already provided or have now agreed to provide. Indeed, Getty has failed to provide any explanation for why the discovery Defendants have agreed to provide is not sufficient for Getty to evaluate its theories of personal jurisdiction.

As explained in Defendants' July 20, 2023 letter (D.I. 27), following Defendants' Motion to Dismiss or Transfer (D.I. 16), Getty served on Defendants 29 interrogatories and 66 requests for the production of documents. In response, Defendants voluntarily provided Getty with detailed information regarding their incorporation and corporate governance; their principal places of business and office locations; the identities of their officers and directors; the separate bank accounts each maintains; and Stability AI Ltd.'s operations, including information relating to U.S. server locations, business contracts, U.S.-based individuals employed through third-parties, and known contacts with Delaware. In addition, Defendants repeatedly offered for deposition Peter O'Donoghue, Stability AI Ltd.'s Chief Financial Officer, but Getty elected not to proceed.

Following the Court's September 22, 2023 order, the parties again met and conferred. Through a brief series of productive conversations, Defendants agreed to provide the vast majority of the information Getty specifically requested, including:

- The Management Service Agreement between Stability AI Ltd. and Stability AI, Inc.;
- Defendants' final financial statements for 2022;
- Defendants' board meeting minutes (redacted for privilege);
- Additional state-by-state utilization information (to the extent reasonably available); and
- A narrative summary of the Stability AI Ltd. employees who have acted on behalf of Stability AI, Inc., including the nature of such actions/services.

In addition, Defendants once again agreed to provide a witness for deposition.

In its July 18, 2023 letter, Getty informed the Court that it required information regarding Defendants' alleged "Failure to Observe Corporate Formalities," "Improper Commingling of Funds," and "Jurisdictional Contacts in the U.S." (D.I. 25 at 2–3.) Where, as here, Defendants have already provided or agreed to provide significant information relating to each of these categories, nothing further should be required.

## II.      The information Getty continues to seek is beyond the scope of appropriate jurisdictional discovery in this case.

Nonetheless, Getty continues to seek the production of Defendants' "investor pitch and solicitation materials relating to Stability AI, Inc.'s fundraising" and "board meeting agendas and board presentations." (D.I. 32 at 1.) But those materials are not squarely relevant to Getty's alter ego theory, which is primarily concerned with whether Stability AI, Inc. "is little more than a legal fiction." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001). To determine whether two entities are mere "alter egos," courts in this circuit consider: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." *Id.* at 484–85. Pitch materials and board agendas and presentations, however, generally speak to Defendants' business strategy and forward-looking plans, rather than their actual operations. *See Albany Int'l Corp. v. Yamauchi Corp.*, 978 F. Supp. 2d 138, 147 (N.D.N.Y. 2013) ("[A] court is not obligated to permit discovery . . . where a plaintiff's proposed discovery, if granted, would not uncover facts sufficient to sustain jurisdiction.").

More particularly with respect to investor pitch materials,[1] Getty claims that such materials "will show how Stability AI, Inc. represented its relationship with Stability AI, Ltd." (D.I. 32 at 1.) But the identities of third-party investors and the pitch materials shared with them are simply not relevant to the manner in which Defendants actually operate or whether one entity controls and dominates the other. Indeed, Getty fails to explain what marginal benefit the investor pitch materials could provide beyond, for example, Defendants' financial statements and board meeting minutes, which Defendants have already agreed to provide.[2] Unsurprisingly, none of Getty's cited

---

[1]      Specifically, Getty seeks "copies of pitch materials shared with any third parties and the e-mail or other correspondence with potential or actual investors concerning transmittals of such materials," and requests that "Defendants identify the individuals involved in raising capital for Stability AI, Inc. and provide a brief description of their role." (D.I. 32 at 1.)

[2]      In addition, as Getty acknowledges, Defendants have already informed Getty that Emad Mostaque and Peter O'Donoghue were formally involved in Defendants' fundraising efforts. (D.I. 32 at 1.) Getty's insistence that Defendants identify all individuals who may have been involved in any way in Defendants' fundraising efforts is not only beyond any reasonable scope of jurisdictional discovery here, but unduly burdensome given the number of individuals in various capacities involved in coordinating such efforts. Defendants have identified the individuals formally responsible for their fundraising efforts, and nothing more should be required.

The Honorable Gregory B. Williams                                                   Page 3
October 16, 2023

cases stands for the proposition that investor pitch materials bear any relevance to an alter ego analysis when other information that speaks directly to the party's business operations has been provided.  And with respect to timing, as Getty acknowledges, the relevant question is whether Defendants acted as alter egos at the time of the alleged infringing conduct.  Investor pitch materials that provide information regarding Defendants' future plans simply do not bear on such an analysis.

With respect to board agendas and presentations, Getty claims only that board agendas and presentations "relate[] to the question of whether Defendants have observed corporate formalities." (D.I. 32 at 3.)  Again, Getty provides no explanation whatsoever for why the board meeting minutes Defendants have agreed to provide, in addition to other materials including financial statements, are not sufficient to show whether Defendants have observed corporate formalities. Like the investor pitch materials, the only additional information board agendas and presentations may provide beyond board meeting minutes relates to the details of Defendants' potential future plans, and is not relevant to the alter ego analysis.  None of Getty's cited cases are to the contrary. *See In re Parmalat Sec. Litig.*, 640 F. Supp. 2d 243, 254 (S.D.N.Y. 2009) (discussing evidence regarding control over decision making obtained via deposition); *IGF Ins. Co. v. Cont'l Cas. Co.*, 2009 WL 4016608, at *39 (S.D. Ind. Oct. 19, 2009), *amended in part on other grounds*, 2012 WL 5520982 (S.D. Ind. Nov. 14, 2012) (emphasizing concurrent nature of board meetings, which was supported by identical minutes); *KT4 Partners LLC v. Palantir Techs., Inc.*, 203 A.3d 738, 756 (Del. 2019) (discussing documents that may be relevant to stockholders' investigation of wrongdoing in Section 220 action).  Simply put, the fact that Defendants' board meetings, generally, may be relevant to the alter ego analysis does not entitle Getty to all board materials Defendants ever generated, when Defendants have already agreed to provide board meeting minutes and a witness for deposition.

Ultimately, that the alter ego standard is "notoriously difficult for plaintiffs to meet," *Pearson*, 247 F.3d at 485, does not entitle Getty to engage in a fishing expedition as to any and all aspects of Defendants' businesses, including future strategic plans.  Getty's recent release of its own generative artificial intelligence product, however, provides additional insight into Getty's likely motivations in pursuing such an expansive set of materials via jurisdictional discovery.  On September 25, 2023, Getty announced the launch of "Generative AI by Getty Images," which Getty describes as "a new tool that pairs the company's best-in-class creative content with the latest AI technology for a commercially safe generative AI tool."[3]  Getty's assertions that it requires investor pitch materials and board agendas and presentations thus appear to be nothing more than a transparent attempt to peer into the inner-workings of a direct competitor.

Defendants respectfully request that the Court deny Getty's requests to compel additional jurisdictional discovery.

---

[3]      Getty Images, *Getty Launches Commercially Safe Generative AI Offering* (Sept. 24, 2023), available at: https://newsroom.gettyimages.com/en/getty-images/getty-images-launches-commercially-safe-generative-ai-offering.

The Honorable Gregory B. Williams                                                    Page 4
October 16, 2023

Respectfully,

Michael J. Flynn (#5333)

*Counsel for Defendants Stability AI, Inc.*
*and Stability AI Ltd.*

cc:     All Counsel of Record (via electronic mail)