IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GETTY IMAGES (US), INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-135 (JLH) |
| | ) | |
| STABILITY AI, LTD., STABILITY AI, | ) | |
| INC. and STABILITY AI US SERVICES | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF RENEWED
<u>MOTION TO DISMISS</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

Joseph C. Gratz
Timothy Chen Saulsbury
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
(415) 268-7000

Allyson R. Bennett
Laura Gilbert Remus
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA, 90017-3543
(213) 892-5200

Aditya V. Kamdar
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C., 20037
(202) 887-1500

July 29, 2024

# TABLE OF CONTENTS

**Page**

I.  NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II.  INTRODUCTION AND SUMMARY OF ARGUMENTS ........................................... 1

III.  STATEMENT OF FACTS ............................................................................................. 2

    A.  Relationship between Stability UK and Stability US ............................................ 3

    B.  Relationship between Stability UK and Stability Services..................................... 3

    C.  Lack of Connection between Stability UK and Delaware ..................................... 4

    D.  The California Action ........................................................................................... 4

IV.  ARGUMENT ................................................................................................................. 5

    A.  The Court Lacks Personal Jurisdiction Over Stability UK.................................... 5

        1.  Delaware's Long-Arm Statute Does Not Grant Jurisdiction Over Stability UK. ....................................................................................... 5

        2.  Getty Cannot Establish that Exercising Jurisdiction over Stability UK Would Comport with Due Process......................................... 7

        3.  Getty Cannot Establish that Stability UK Is Merely an Alter Ego for Stability US. ................................................................................ 9

        4.  Stability Services' Presence Does Not Extend the Reach of Delaware's Long-Arm Statute. .............................................................. 13

        5.  The Court Lacks Personal Jurisdiction Over Stability UK Under the Federal Long-Arm Statute. ............................................................... 14

    B.  The Claims Against Stability US and Stability Services Should Be Dismissed Because Stability UK Is a Necessary and Indispensable Party. ......... 15

        1.  Stability UK Is a Necessary Party Because It Alone Allegedly Trained and Distributed the Stable Diffusion Models. ........................... 15

        2.  Stability UK Is Indispensable Because a Judgement Rendered in Its Absence Would Be Prejudicial and Inadequate................................. 16

V.  CONCLUSION ............................................................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arçelik, A.S. v. E.I. Du Pont de Nemours & Co.*,
  C.A. No. 15-961-LPS, 2016 WL 5719681 (D. Del. Sept. 29, 2016) .......................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................................................13

*Brit. Telecomms, PLC v. IAC/InteractiveCorp*,
  356 F. Supp. 3d 405 (D. Del. 2019) ..................................................................................15

*CFMT Inc. v. Steag Microtech, Inc.*,
  C.A. No. 95-442-LON, 1997 WL 313161 (D. Del. Jan. 9, 1997) .........................................14

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .......................................................................................................7, 8

*Dou Yee Enters. (S) PTE, Ltd. v. Advantek, Inc.*,
  149 F.R.D. 185 (D. Minn. 1993) .......................................................................................16

*Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*,
  623 F.3d 147 (3d Cir. 2010) ..............................................................................................7

*Freeman v. Nw. Acceptance Corp.*,
  754 F.2d 553 (5th Cir. 1985) ...........................................................................................17

*Funai Elec. Co., Ltd. v. Personalized Media Commc'ns, LLC*,
  C.A. No. 15-558-RGA, 2016 WL 370708 (D. Del. Jan. 29, 2016) .......................................5

*Hall v. Nat'l Serv. Indus., Inc.*,
  172 F.R.D. 157 (E.D. Pa. 1997) ........................................................................................14

*inno360, Inc. v. Zakta, LLC*,
  50 F. Supp. 3d 587 (D. Del. 2014) .....................................................................................8

*Int'l Shoe Co. v. State of Wash.*,
  326 U.S. 310 (1945) ..........................................................................................................7

*Japan Petroleum Co. (Nigeria) v. Ashland Oil, Inc.*,
  456 F. Supp. 831 (D. Del. 1978) .......................................................................................17

*Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*,
  201 F.R.D. 337 (D. Del. 2001) ....................................................................................16, 17

*Kaplan v. First Options of Chicago, Inc.*,
   19 F.3d 1503 (3d Cir. 1994)........................................................................................9

*Marnavi S.p.A. v. Keehan*,
   900 F. Supp. 2d 377 (D. Del. 2012)............................................................................9

*Martinez v. E.I. DuPont de Nemours & Co.*,
   82 A.3d 1 (Del. Super. Ct. 2012) ...............................................................................17

*Mobil Oil Corp. v. Linear Films, Inc.*,
   718 F. Supp. 260 (D. Del. 1989).................................................................................9

*Monsanto Co. v. Syngenta Seeds, Inc.*,
   443 F. Supp. 2d 636 (D. Del. 2006)......................................................................13, 14

*Pearson v. Component Tech. Corp.*,
   247 F.3d 471 (3d Cir. 2001)...........................................................................9, 10, 12

*Phunware, Inc. v. Excelmind Grp. Ltd.*,
   117 F. Supp. 3d 613 (D. Del. 2015)............................................................................4

*Provident Tradesmens Bank & Tr. Co. v. Patterson*,
   390 U.S. 102 (1968)...................................................................................................16

*Reach & Assocs., P.C. v. Dencer*,
   269 F. Supp. 2d 497 (D. Del. 2003).........................................................................4, 6

*Registered Agents, Ltd. v. Registered Agent, Inc.*,
   880 F. Supp. 2d 541 (D. Del. 2012)......................................................................4, 5, 7

*Shoemaker v. McConnell*,
   556 F. Supp. 2d 351 (D. Del. 2008)............................................................................6

*Sony Corp. v. Pace PLC*,
   C.A. No. 15-288-SLR, 2016 WL 593455 (D. Del. Feb. 12, 2016).........................14

*StrikeForce Techs., Inc. v. PhoneFactor, Inc.*,
   C.A. No. 13-490-RGA-MPT, 2013 WL 6002850 (D. Del. Nov. 13, 2013) ...........10

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*,
   C.A. No. 16-581-RGA-MPT, 2017 WL 896988 (D. Del. Mar. 7, 2017) ...............12

*Telcordia Techs., Inc. v. Alcatel S.A.*,
   No. Civ.A. 04-874 GMS, 2005 WL 1268061 (D. Del. May 27, 2005) ...................14

*Time Share Vacation Club v. Atl. Resorts, Ltd.*,
   735 F.2d 61 (3d Cir. 1984)..........................................................................................5

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003)..................................................................................7, 8

*Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*,
    332 F.3d 188 (3d Cir. 2003)...................................................................................11

*United States v. Bestfoods*,
    524 U.S. 51 (1998)................................................................................11, 12, 15

*VoterLabs, Inc. v. Ethos Grp. Consulting Servs., LLC*,
    C.A. No. 19-524-MAK, 2021 WL 4288506 (D. Del. Sept. 21, 2021) .............10, 12

*Wilson v. The Canada Life Assurance Co.*,
    No. 4:08-CV-1258, 2009 WL 532830 (M.D. Pa. Mar. 3, 2009) ............................14

*Winter-Wolff Int'l, Inc. v. Alcan Packaging Food & Tobacco Inc.*,
    Civil Action No. 05-2718 (DRH) (ETB), 2008 WL 11385822 (E.D.N.Y. July
    18, 2008) ...............................................................................................11

## Statutes & Other Authorities

10 Del. C. § 3104(c).................................................................................................5

10 Del. C. § 3104(c)(1)-(4)......................................................................................6

10 Del. C. § 3104(c)(4)............................................................................................6

28 U.S.C. § 1631....................................................................................................5

Fed. R. Civ. P. 4(k).................................................................................................14

Fed. R. Civ. P. 4(k)(2).........................................................................................13, 14

Fed. R. Civ. P. 12(b)(7).............................................................................................18

Fed. R. Civ. P. 19..............................................................................................14, 17

Fed. R. Civ. P. 19(a)................................................................................................15

Fed. R. Civ. P. 19(b)................................................................................................16

## I.     NATURE AND STAGE OF PROCEEDINGS

On February 3, 2023, Plaintiff Getty Images (US), Inc. ("Getty") filed this action for copyright and trademark infringement, among other claims, against Defendant Stability AI, Inc. ("Stability US").  On March 29, 2023, Getty amended its complaint to add Stability AI Ltd. ("Stability UK") as a defendant.  (First Am. Compl., D.I. 13.)  On May 2, 2023, Stability UK and Stability US first moved to dismiss the Amended Complaint for lack of personal jurisdiction, for inability to join a necessary and indispensable party, and for failure to state a claim, or in the alternative to transfer the case to the Northern District of California.  On June 7, 2023, the parties entered a stipulation to provide time for Getty to take jurisdictional discovery.  After more than a year of discovery, Getty once again amended its complaint on July 8, 2024, this time adding Stability AI US Services Corporation ("Stability Services") as a defendant.  (Second Am. Compl., D.I. 42.)  Now that jurisdictional discovery has been substantially completed (*see* D.I. 40 at 2), Stability UK, Stability US, and Stability Services (collectively, "Stability Defendants") file this renewed motion to dismiss.

## II.     INTRODUCTION AND SUMMARY OF ARGUMENTS

This case doesn't belong in Delaware.  None of the Stability Defendants has a physical presence in Delaware.  Nor does Getty.  Nor did the training of the allegedly infringing AI models take place in Delaware.  The *only* connection between this case and Delaware is that Stability US—and now Stability Services—is incorporated here.

That's not enough.  Stability US is only a holding company.  It is not alleged to have done any of the things that Getty complains about; *Stability UK* is.  But Stability UK isn't incorporated in Delaware, is not generally at home here, and has taken no actions in Delaware that give rise to Getty's claims.

Getty tries to solve this problem by claiming that Stability UK is really an alter ego of Stability US. It isn't. After over a year of jurisdictional discovery that included the deposition of Stability UK's CFO, Getty can show only that Stability UK is a wholly owned subsidiary of Stability US and that the two companies share certain senior managers. Under well-established Delaware law, those facts (which are common to many parent-subsidiary corporate relationships) aren't enough to show that Stability UK is Stability US's alter ego.

Getty can't get around this problem by adding Stability Services as a defendant. None of the facts alleged as to Stability Services changes the fact that the Court doesn't have personal jurisdiction over Stability UK—and Stability UK is an indispensable party. Getty's claims against all of the Stability Defendants should be dismissed.[1]

## III.    STATEMENT OF FACTS

Fundamentally, this case is about whether training Stable Diffusion—a generative AI model that produces unique images from text and image prompts—using Getty's copyrighted photographs was legal. That training was allegedly performed by Stability UK. (Second Am. Compl. ¶ 28.) Stability UK is also the company that allegedly developed DreamStudio, an application powered by Stable Diffusion that helps creators generate and edit images. (*Id.* ¶¶ 10, 28)

---

[1] Alternatively, for reasons explained in the contemporaneously filed Motion to Transfer under Section 1404, the Court should transfer this case to the Northern District of California. There, a previously filed class action is pending against both Stability US and Stability UK that raises many of the same legal issues as this action. In addition to being more convenient for the parties, transfer would promote the interests of judicial economy.

## A.       Relationship between Stability UK and Stability US

Stability UK is a limited company formed under the laws of the United Kingdom, with its headquarters in London, England.  (O'Donoghue Decl. ¶¶ 5, 18.)  It is a wholly owned subsidiary of Stability US, a holding company incorporated in Delaware.  (O'Donoghue Decl. ¶¶ 3, 5; Second Am. Compl. ¶ 24.)  While Stability US is the corporate vehicle through which investors and other have provided capital, it is not involved in training or distributing Stable Diffusion, or in developing or distributing DreamStudio.  (O'Donoghue Decl. ¶ 19.)

Stability UK operates independently of Stability US.  Stability UK and Stability US are managed by different boards, which hold separate board meetings and maintain separate minutes for those meetings.  (*Id*. ¶¶ 13-14.)  Stability UK and Stability US also maintain separate financial records and separate bank accounts.  (*Id*. ¶ 9.)  Stability UK has the ability to seek intercompany loans from Stability US and has a long history of doing so.  (*Id*. ¶ 15.)  The relationship between Stability UK and Stability US is further formalized through a Management Services Agreement, which establishes the manner through which executives at Stability UK provide services to Stability US.  (*Id*. ¶ 16.)  As holding companies often do, Stability US also owns other subsidiaries.  For example, Stability Services is another wholly owned subsidiary of Stability US.  (*Id*. ¶ 22.)

## B.       Relationship between Stability UK and Stability Services

Stability Services, a wholly owned subsidiary of Stability US, employs the people in the United States who work with Stability UK.  (*Id*.)  Stability UK bears Stability Services' operating costs.  (*Id*.)  The relationship between Stability UK and Stability Services was formalized in a Service Recharge Agreement on November 20, 2023, giving effect to the understanding between the parties beginning on August 1, 2023.  (*Id*.)

### C.      Lack of Connection between Stability UK and Delaware

None of the Stability Defendants maintain offices or have any employees in Delaware. (*Id*. ¶¶ 17, 20-21, 23.)  Until 2023, the individuals who worked for Stability UK in the United States were employed through third-party remote working companies, which had agreements with Stability UK for their services.  (*Id*. ¶ 21.)  None of those individuals resided in Delaware. (*Id*.)  This arrangement changed with the incorporation of Stability Services in May 2023.  The individuals who work with Stability UK in the United States are now employed through Stability Services, a wholly owned subsidiary of Stability US.  (O'Donoghue Decl. ¶ 22.)  Stability Services similarly has an agreement with Stability UK for its services.  (*Id*.)  None of the individuals working with Stability UK through the agreement with Stability Services reside in Delaware.  (*Id*. ¶ 23.)

### D.      The California Action

On January 13, 2023, a set of individuals filed a lawsuit against both Stability US and Stability UK in the Northern District of California (the "California Action").  (O'Donoghue Decl. ¶ 28, Ex. A (First Amended Complaint, filed November 29, 2023, D.I. 129) (hereinafter, "California Compl."))  The plaintiffs in the California Action purport to represent a nationwide putative class, including all copyright owners of images that were used to train Stable Diffusion. (California Compl. ¶ 34.)  The California plaintiffs allege, among other things, that Stability UK and Stability US infringed plaintiffs' copyrights by using those images to train Stable Diffusion without their authorization.  The California Action seeks monetary damages and injunctive relief, and asserts claims under the Copyright Act, the DMCA, the Lanham Act, and various California state laws.  Getty is a member of the putative class in the California Action.  *Id.*

## IV.     ARGUMENT

### A.     The Court Lacks Personal Jurisdiction Over Stability UK.

Getty has the burden to show that the Court has personal jurisdiction over Stability UK.

*Registered Agents, Ltd. v. Registered Agent, Inc.*, 880 F. Supp. 2d 541, 544-45 (D. Del. 2012);

*Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 502 (D. Del. 2003).  It must show both

that Delaware's long-arm statute grants this Court jurisdiction, and that exercising that

jurisdiction comports with due process.  *See Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp.

3d 613, 629 (D. Del. 2015); 10 Del. C. § 3104(c).  Getty can show neither.

Notably, Getty cannot rely on the pleadings alone to show jurisdiction.  It "must sustain

its burden of proof in establishing jurisdictional facts through sworn affidavits or other

competent evidence." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d

Cir. 1984); *Registered Agents, Ltd.*, 880 F. Supp. 2d at 544.  Despite taking jurisdictional

discovery, Getty has no evidence that Stability UK has the type of contacts in Delaware that

would allow this Court to exercise jurisdiction over it.  The claims against Stability UK should

be dismissed.  In the alternative, Stability UK requests that the case be transferred to the

Northern District of California under 28 U.S.C. § 1631 (allowing a court that lacks jurisdiction

over an action to transfer the action to a jurisdiction in which the action could have been brought,

where transfer is in the interest of justice).[2]

### 1.     Delaware's Long-Arm Statute Does Not Grant Jurisdiction Over Stability UK.

Delaware's long-arm statute "has been broadly construed to confer jurisdiction to the

maximum extent possible under the Due Process Clause," but "the personal jurisdictional

---

[2] In the alternative, the Court should transfer this lawsuit to the Northern District of California under Section 1404(a) for the convenience of parties and witnesses and in the interest of justice, as detailed in Stability Defendants' contemporaneously filed Motion to Transfer.

analysis 'must not be collapsed into a single constitutional inquiry.'" *Funai Elec. Co., Ltd. v. Personalized Media Commc'ns, LLC*, Civ. No. 15-558-RGA, 2016 WL 370708, at *2 (D. Del. Jan. 29, 2016) (citations omitted).  Accordingly, if Getty "cannot satisfy the statutory basis for personal jurisdiction, the court need not reach the constitutional due process prong of the personal jurisdiction analysis." *Registered Agents, Ltd.*, 880 F. Supp. 2d at 547.

Delaware's long-arm statute provides for the exercise of personal jurisdiction over any nonresident who (in person or through an agent):  (1) "Transacts any business or performs any character of work or service in the State"; (2) "Contracts to supply services or things in this State"; (3) "Causes tortious injury in the State by an act or omission in this State"; or (4) "Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State." 10 Del. C. § 3104(c)(1)-(4).  While subsection (c)(4) confers general jurisdiction, subsections (c)(1)-(3) grant specific jurisdiction and therefore require "that the cause of action arise from the defendant's conduct in the forum state." *Shoemaker v. McConnell*, 556 F. Supp. 2d 351, 354-55 (D. Del. 2008).

As to general jurisdiction, Getty would have to show that Stability UK engages in a "persistent course of conduct" in Delaware or "derives substantial revenue from services" consumed there.  10 Del. C. § 3104(c)(4).  Getty does not even try to do so.  Instead, Getty claims that Stability UK is merely an alter ego for Stability US (over which the Court *does* have general jurisdiction).  But, as explained below, Getty's alter ego theory fails.  *See* Section IV.A.3 *infra*.

Getty must therefore show that this Court has specific personal jurisdiction over Getty UK under one of the three prongs of Delaware's long-arm statute. It cannot. Getty doesn't allege and can't show that Stability UK performed any of the allegedly infringing training of Stable Diffusion in Delaware, which would be required for jurisdiction under subsections (c)(1) and (c)(3). *Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 503 (D. Del. 2003) ("In order for a court to exercise jurisdiction under Subsections (c)(1) and (c)(3), some act must actually occur in Delaware."); (*see also* Second Am. Compl. ¶¶ 22, 61). Getty also doesn't allege and cannot show that Stability UK contracted to supply relevant services or things in Delaware, which would be required for jurisdiction under subsection (c)(2). *See Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (holding that subsection (c)(2) of the Delaware long-arm statute requires that service contracts must be for services performed in Delaware).

Because Getty has failed to plead facts, and cannot present evidence, supporting a statutory basis for personal jurisdiction over Stability UK under Delaware's long-arm statute, Getty's claims against Stability UK should be dismissed. *See Registered Agents, Ltd.*, 880 F. Supp. 2d at 547.

### 2. Getty Cannot Establish that Exercising Jurisdiction over Stability UK Would Comport with Due Process.

Even if Getty could establish a statutory basis for personal jurisdiction over Stability UK, exercising personal jurisdiction here would violate due process. Exercising personal jurisdiction comports with the Due Process Clause only if the defendant has sufficient "minimum contacts" with the forum state that the maintenance of the suit would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945). General personal jurisdiction exists over an out-of-state defendant only when its "affiliations

with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  In contrast, the exercise of specific jurisdiction over an out-of-state defendant comports with due process only if "the defendant purposefully avails itself of the privilege of conducting activities within the forum State," and the "cause of action is related to or arises out of the defendant's contacts with the forum." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (citations omitted).

Getty cannot establish general jurisdiction over Stability UK under the Due Process Clause.  Getty concedes that "Stability AI, Ltd. is a UK corporation with headquarters in London, UK." (Second Am. Compl. ¶ 18.)  Getty does not and cannot allege that this is an "exceptional case" where Stability UK's operations in Delaware are "so substantial and of such a nature as to render" it subject to general personal jurisdiction in the State.  *Daimler AG*, 571 U.S. at 139 n.19.

Nor can Getty meet its burden of demonstrating the purposeful availment and nexus requirements for specific jurisdiction.  At most, Getty alleges that Stability UK operates a website accessible to users in Delaware, and that users can access Stable Diffusion and DreamStudio through that website.  (Second Am. Compl. ¶ 35.)  But, "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." *Toys "R" Us*, 318 F.3d at 454.  Even though it may be foreseeable that residents of Delaware would access a website that is generally available, this "does not mean that defendant purposefully directed its activities at residents of Delaware or 'purposefully availed' itself of the privilege of doing business in Delaware." *inno360, Inc. v. Zakta, LLC*, 50 F. Supp. 3d 587, 594 (D. Del. 2014).  "Courts have repeatedly recognized that there must be 'something more' . . . to

demonstrate that the defendant *directed its activity towards the forum state*." *Toys "R" Us, Inc.*, 318 F.3d at 452.

To the extent that any Delaware residents have accessed or used DreamStudio, Getty has not alleged or presented any evidence that Stability UK has distributed or displayed a copy of any allegedly infringing image to a resident of Delaware, and so it has failed to show any nexus between forum contacts and the cause of action.  Moreover, Getty has no claim or evidence that any training of Stable Diffusion occurred in Delaware.  Simply put, the Amended Complaint fails to allege any connection between Delaware and Stability UK's alleged infringing acts.  For these reasons, this Court lacks specific personal jurisdiction over Stability UK.

### 3.    Getty Cannot Establish that Stability UK Is Merely an Alter Ego for Stability US.

Knowing it cannot establish personal jurisdiction over Stability UK, Getty instead argues that it does not have to.  Getty asserts that Stability UK is merely an alter ego for Stability US, such that Stability US's contacts with Delaware should be imputed to Stability UK.  (Second Am. Compl. ¶¶ 22-33.)  But Getty cannot show *any* support for its alter ego theory—let alone the "clear and convincing evidence" required for Getty to prevail on this motion.  *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1522 (3d Cir. 1994), *aff'd*, 514 U.S. 938 (1995); *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001) (burden for establishing alter ego is "notoriously difficult . . . to meet").

### a.    Getty's Failure to Allege Fraud or Injustice Is Fatal to Its Alter Ego Theory.

As a threshold matter, courts in Delaware require a party asserting an alter ego theory to show that respecting the corporate form would "work as a fraud or something in the nature of a fraud."  *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 267 (D. Del. 1989); *see also Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 392 (D. Del. 2012) ("The law requires that fraud

or injustice be found in the defendants' use of the corporate form." (citation omitted)).  Getty

offers no allegations or evidence of fraud here.  Nor does it suggest injustice in the use of the

corporate form.  Instead, it relies on alleged facts endemic to parent-subsidiary relationships—

allegations that Delaware courts routinely excuse in the absence of fraud.  Because fraud is a

required element, Getty's alter ego theory fails for this reason alone.  *See Mobil Oil Corp.*, 718 F.

Supp. at 266-67 (finding alter ego theory failed where subsidiary corporation's debts were

guaranteed by its parent, it shared common officers and directors, it failed to keep minutes of

board meetings separate from those of its parent, and obligations of the parent were paid from

the subsidiary's bank account, but the plaintiff failed to allege fraud); *StrikeForce Techs., Inc. v.

PhoneFactor, Inc.*, Civ. A. No. CV 13-490-RGA-MPT, 2013 WL 6002850, at *4 (D. Del. Nov.

13, 2013) ("[F]raud or some similar injustice is a required element for finding alter ego

liability.").

> **b.** **Getty Cannot Meet Any of the Remaining Alter Ego Factors.**

In any event, Getty's alter ego theory fails for the independent reason that it cannot show

that any of the factors that Delaware courts consider weighs in its favor.  Specifically, to

determine whether one company is merely an alter ego of another, Delaware courts look to the

following factors:  "gross undercapitalization, failure to observe corporate formalities,

nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor

corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of

corporate records, and whether the corporation is merely a facade for the operations of the

dominant stockholder."  *Pearson*, 247 F.3d at 484-85.  None of these factors supports a finding

of alter ego here:

- Stability UK generates revenue and can obtain loans from Stability US to meet its obligations.  (O'Donoghue Decl. ¶¶ 6, 15.)  Thus, Stability UK is not grossly undercapitalized or insolvent.  *See VoterLabs, Inc. v. Ethos Grp. Consulting Servs., LLC*, Civil Action No. 19-524-MAK, 2021 WL 4288506, at *6 (D. Del. Sept. 21, 2021) ("The adduced evidence does not prove Ethos Consulting is inadequately capitalized and has been since formation or insolvent as the testimony demonstrates Ethos Consulting did—and could—obtain intracompany loans to fulfill its obligations.").

- Stability UK and Stability US also hold separate board meetings, keep separate minutes, and maintain separate financial records and bank accounts. (O'Donoghue Decl. ¶¶ 9, 13-14.)  Therefore, Stability UK and Stability US do not fail to observe corporate formalities, and they each have functioning officers and directors and maintain corporate records.  *See Winter-Wolff Int'l, Inc. v. Alcan Packaging Food & Tobacco Inc.*, Civil Action No. 05-2718 (DRH) (ETB), 2008 WL 11385822, at *6 (E.D.N.Y. July 18, 2008) (finding allegations insufficient under Delaware law to support alter ego theory where entities "maintain separate books and records and file separate tax returns").

- A lack of dividend payments from a wholly owned subsidiary to its parent is not unusual, especially for a startup in its growth phase, and should not weigh in favor of an alter ego theory.  *See Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 196 (3d Cir. 2003) (failure to pay dividends "by a closely-held corporation . . . [is] not unusual, and not a strong factor in favor of piercing the corporate veil of such a company").

11

- And finally, Getty hasn't shown that Stability US has siphoned funds from Stability UK, nor that Stability UK is merely a facade for the operations of Stability US.

Instead of identifying factors relevant to the analysis, Getty alleges Stability UK is an alter ego of Stability US based on nothing more than the typical powers of stock ownership inherent in any parent-subsidiary relationship.  *See United States v. Bestfoods*, 524 U.S. 51, 61-62 (1998) ("[I]t is hornbook law that 'the exercise of the "control" which stock ownership gives to the stockholders . . . will not create liability beyond the assets of the subsidiary" and "[t]hat 'control' includes the election of directors, the making of by-laws . . . and the doing of all other acts incident to the legal status of stockholders.'" (citation omitted)).  Thus, Getty's allegations that Stability US has the power to appoint or remove members of Stability UK's board of directors and that the two corporations shared the same CEO and founder do not establish that Stability UK is an alter ego for Stability US.  *See id.* (noting that "a duplication of some or all of the directors or executive officers" will not create liability); *Pearson*, 247 F.3d at 471 (holding that liability will not be imposed on the parent corporation merely because directors of the parent corporation also serve as directors of the subsidiary).  Also irrelevant is Getty's allegation that Stability US does not have any trading or employees of its own.  (Second Am. Compl. ¶ 24.) Related companies commonly contract with one another for services; doing so does not evidence alter ego control.  *VoterLabs*, 2021 WL 4288506, at *6 (rejecting alter ego theory as basis for personal jurisdiction where related companies provided services to one another under contract).

Similarly, Getty's allegation that Stability US and Stability UK share the same principal places of business and website aren't enough to establish an alter ego relationship.  *See T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, C.A. No. 16-581-RGA-MPT, 2017 WL 896988, at *2, *5 (D.

Del. Mar. 7, 2017) (holding that parent and subsidiary were not alter egos of each other despite the fact that the companies had "a shared corporate headquarters, a shared principal executive office address, and shared directors and executive officers.").  Nor is the allegation that Stability US and Stability UK present themselves as one company to the public.  (Second Am. Compl. ¶¶ 25, 32.)  *See T-Jat Sys.*, 2017 WL 896988, at *5 (holding that parent and subsidiary were not alter egos of each other despite the companies referring to themselves collectively as one entity on marketing and promotional materials).  Getty's complaint identifies a list of characteristics common to parent-subsidiary relationship. Because Getty hasn't shown that Stability UK is merely an alter ego of Stability US, and Stability US's contacts with Delaware cannot be imputed to Stability UK.

### 4.    Stability Services' Presence Does Not Extend the Reach of Delaware's Long-Arm Statute.

Getty's addition of Stability Services doesn't confer personal jurisdiction over Stability UK.  Stability Services merely employs individuals in the U.S. who work with Stability UK. The working agreement between Stability UK and Stability Services came into effect in August 2023, after the development, training, and release of most of the products cited in Getty's Second Amended Complaint:  Stable Diffusion (released August 2022); Stable Diffusion 2.0 (released November 2022); Stable Diffusion Reimagine (released March 2023); and SDXL (released July 2023).  (O'Donoghue Decl. ¶ 7.)  Instead of attempting to mount an alter ego argument based on Stability Services, Getty makes the conclusory assertion that employees of Stability Services "have participated in infringing activities." (Second Am. Compl. ¶ 67.)  This conclusory statement lacks factual support, even after months of jurisdictional discovery.  The Court need not accept it as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("[T]he tenet that a court must

accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

### 5.    The Court Lacks Personal Jurisdiction Over Stability UK Under the Federal Long-Arm Statute.

Getty suggests that it can still show personal jurisdiction over Getty UK under the federal long-arm statute.  That argument also fails.

Under Fed. R. Civ. P. 4(k)(2), personal jurisdiction over a foreign defendant exists when: (1) the case arises under federal law; (2) the foreign defendant lacks sufficient contacts with any single state to subject it to personal jurisdiction in any state; and (3) the foreign defendant has sufficient contacts with the United States as a whole to comport with constitutional notions of due process.  *See Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 647 (D. Del. 2006).  Getty "bears the burden of demonstrating that [Stability UK] is not subject to jurisdiction in any state."  *Telcordia Techs., Inc. v. Alcatel S.A.*, No. Civ.A. 04-874 GMS, 2005 WL 1268061, at *5 (D. Del. May 27, 2005); *Monsanto Co.*, 443 F. Supp. 2d at 647.

Getty has not alleged, and cannot meet its burden of demonstrating, that Stability UK is not subject to jurisdiction in any state, and so it cannot establish personal jurisdiction under Rule 4(k)(2).  *See CFMT Inc. v. Steag Microtech, Inc.*, No. CIV.A. 95-442-LON, 1997 WL 313161, at *8 (D. Del. Jan. 9, 1997), *aff'd*, 965 F. Supp. 561 (D. Del. 1997).  Moreover, Stability UK admits that this case can move forward in the Northern District of California—where another case against Stability UK is *already* pending.  That is enough to preclude the application of Rule 4(k). *See Sony Corp. v. Pace PLC*, Civil Action No. 1:15-cv-00288-SLR, 2016 WL 593455, at *5 (D. Del. Feb. 12, 2016) ("A defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed." (citation omitted)).

14

**B.**     **The Claims Against Stability US and Stability Services Should Be Dismissed Because Stability UK Is a Necessary and Indispensable Party.**

Stability UK is a necessary and indispensable party under Fed. R. Civ. P. 19.  The Court's lack of personal jurisdiction over Stability UK therefore requires that the claims against Stability US and Stability Services also be dismissed.  *See Wilson v. The Canada Life Assurance Co.*, No. 4:08-CV-1258, 2009 WL 532830, at *12 (M.D. Pa. Mar. 3, 2009) (dismissing entire action under Rule 19 where there was no personal jurisdiction over an indispensable party, despite the plaintiff naming and technically joining that defendant); *Hall v. Nat'l Serv. Indus., Inc.*, 172 F.R.D. 157, 158-59 (E.D. Pa. 1997) ("Preliminarily, I must address the fact that plaintiffs did name, and hence technically joined, [defendant] Chapmon in their complaint. However, this technical joinder does not necessarily circumvent the analysis required under Rule 19.").

**1.**     **Stability UK Is a Necessary Party Because It Alone Allegedly Trained and Distributed the Stable Diffusion Models.**

A party is a necessary party if, in its absence:  (1) complete relief cannot be accorded to the present parties, (2) the disposition of the action would impair the party's ability to protect its own interest, or (3) any of the present parties would be subject to a substantial risk of multiple or inconsistent obligations.  Fed. R. Civ. P. 19(a).  Applying the alleged facts of this case to these factors confirms that Stability UK is a necessary party.

First, Stability UK's presence is necessary for the relief Getty seeks.  Getty's allegations relate to Stability UK's purported role in creating, training, and distributing Stable Diffusion.  As Getty correctly alleges, Stability US is merely a holding company with "no employees or day-to-day operations."  (Second Am. Compl. ¶ 28.)  It is well established that a parent company is not liable for the alleged conduct of its subsidiary.  *See Bestfoods*, 524 U.S. at 61 ("It is a general

15

principle of corporate law . . . that a parent corporation . . . is not liable for the acts of its

subsidiaries"); *Brit. Telecomms, PLC v. IAC/InteractiveCorp*, 356 F. Supp. 3d 405, 409 (D. Del.

2019) ("A parent company is not liable for the actions of its subsidiary solely because of the

parent-subsidiary relationship").  Further, Stability Services employs personnel in the United

States who work with Stability UK, and thus, like Stability US, is not liable for the actions of

Stability UK.  (O'Donoghue Decl. ¶¶ 22.)  Because neither entity directs the activity of which

Getty complains, complete relief cannot be accorded in the absence of Stability UK.

Second, disposition of the present action without Stability UK would impair Stability

UK's ability to protect its own interests.  Getty seeks destruction of all versions of Stable

Diffusion trained using Getty Images' content without permission.  (Second Am. Compl. at 40,

¶ J.)  As the developer of Stable Diffusion, Stability UK has the right to protect its interests in

Stable Diffusion.  "If a judgment were entered against [Stability US and Stability Services], that

judgment might have a preclusive effect on fact issues and [Stability's] rights and liabilities, thus

impairing its ability to defend itself against subsequent lawsuits that [Getty] might file."  *Dou*

*Yee Enters. (S) PTE, Ltd. v. Advantek, Inc.*, 149 F.R.D. 185, 189 (D. Minn. 1993) (concluding

that Singapore subsidiary is a necessary party to litigation against U.S. parent corporation).

If Stability UK is not party to this action, Getty will lack access to the relief it seeks, and

Stability UK's interests in Stable Diffusion will not be adequately protected.  Stability UK is

therefore a necessary party to the present litigation.

### 2.     Stability UK Is Indispensable Because a Judgement Rendered in Its Absence Would Be Prejudicial and Inadequate.

If the absent party is necessary and cannot be joined, the court must next determine

whether the party is considered "indispensable" under Rule 19(b).  *Arçelik, A.S. v. E.I. Du Pont*

*de Nemours & Co.*, C.A. No. 15-961-LPS, 2016 WL 5719681, at *2 (D. Del. Sept. 29, 2016).

16

"This inquiry requires a balancing of the interests of the plaintiff, the defendant, the absent party, the courts, and the public." *Id.*; *see also Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 109-11 (1968). Courts consider four factors: (1) to what extent a judgment rendered in the party's absence might be prejudicial to the party or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the party's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. *Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 201 F.R.D. 337, 399-40 (D. Del. 2001), *aff'd*, 65 F. App'x 803 (3d Cir. 2003). Here, each of the four factors indicates that Stability UK is an indispensable party.

First, any judgement rendered in the absence of Stability UK will be prejudicial to each of the Stability Defendants because it is Stability UK "whose conduct is largely at issue in this case." *Id.* at 340. "[W]hen a plaintiff seeks to hold a parent company liable for the conduct of the parent's subsidiary, the subsidiary is a necessary and indispensable party under Rule 19." *Id.*; *see also Martinez v. E.I. DuPont de Nemours & Co.*, 82 A.3d 1, 21 (Del. Super. Ct. 2012) ("[A] subsidiary is a necessary party in a suit against the subsidiary's parent corporation where the subsidiary is an active participant in the activity that is alleged as the basis for recovery"), *aff'd*, 86 A.3d 1102 (Del. 2014). The subsidiary's "presence is critical to the disposition of the important issues in the litigation [because i]ts evidence will either support the complaint or bolster the defense." *Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985) (citation omitted). As the primary participant in the activities alleged in Getty's complaint, Stability UK will certainly be prejudiced if the Court renders judgment in its absence.

17

Second, because Stability UK develops, trains, and supports each of the Stable Diffusion models except for Stable Diffusion v1.1-1.5,[3] judgment cannot be rendered that would avoid that prejudice.

Third, "a judgment in [Stability AI's] favor would not be 'adequate' because [Getty] could subsequently sue [Stability UK] in a different forum based on essentially the same facts, while a judgment in [Getty's] favor may be 'hollow' because the proper defendant was never joined." *Jurimex Kommerz Transit*, 201 F.R.D. at 340–41.  *See also Japan Petroleum Co. (Nigeria) v. Ashland Oil, Inc.*, 456 F. Supp. 831, 847 (D. Del. 1978) (finding this factor "controlling").

Fourth, Getty will have an adequate remedy if the action is dismissed for nonjoinder because Getty could bring this action in the Northern District of California, as evidenced by the California Action.

Stability UK's presence is therefore necessary and indispensable to the disposition of this litigation.  Because this Court lacks personal jurisdiction over Stability UK, it should dismiss the Second Amended Complaint as to the remaining defendants—Stability US and Stability Services—pursuant to Fed. R. Civ. P. 12(b)(7).

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this case be dismissed for lack of personal jurisdiction.

---

[3] Stable Diffusion v1.1-1.5 were developed, trained, and released by third parties, not any Stability AI defendant.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

OF COUNSEL:

Joseph C. Gratz
Timothy Chen Saulsbury
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
(415) 268-7000

Allyson R. Bennett
Laura Gilbert Remus
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA, 90017-3543
(213) 892-5200

Aditya V. Kamdar
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C., 20037
(202) 887-1500

July 29, 2024

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 29, 2024, upon the following in the manner indicated:

Tammy L. Mercer, Esquire                                 *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Benjamin E. Marks, Esquire                               *VIA ELECTRONIC MAIL*
Jared R. Friedmann, Esquire
Melissa Rutman, Esquire
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
*Attorneys for Plaintiff*

Brian Liegel, Esquire                                    *VIA ELECTRONIC MAIL*
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
*Attorneys for Plaintiff*

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)