IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GETTY IMAGES (US), INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 23-135 (JLH) |
| | ) |
| STABILITY AI, LTD., STABILITY AI, INC. and STABILITY AI US SERVICES CORPORATION, | ) ) ) |
| | ) |
| Defendants. | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF RENEWED
<u>MOTION TO TRANSFER</u>**

OF COUNSEL:

Joseph C. Gratz
Timothy Chen Saulsbury
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

Allyson R. Bennett
Laura Gilbert Remus
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA, 90017-3543
(213) 892-5200

Aditya V. Kamdar
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C., 20037
(202) 887-1500

July 29, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENTS ............................................. 1

II. ARGUMENT ........................................................................................................................ 1

    A. The Balance of Private Interests Strongly Favors Transfer. ................................... 2

        1. Factor 1:  Plaintiff's Choice of Forum Should Be Given Minimal Weight. ............................................................................................................... 2

        2. Factor 2:  Defendant's Choice of Forum Favors Transfer. ......................... 2

        3. Factor 3:  Where the Claims Arose Favors Transfer. ................................ 3

        4. Factor 4:  The Convenience of the Parties Heavily Favors Transfer. ......... 4

        5. Factor 5:  Witness Convenience Favors Transfer. ..................................... 5

        6. Factor 6:  Location of Books and Records Favors Transfer. ..................... 7

    B. The Balance of Public Interests Strongly Favors Transfer. .................................... 7

        1. Factor 7:  Enforceability of the Judgment Is a Neutral Factor. .................. 7

        2. Factor 8:  Practical Considerations Strongly Favor Transfer. .................... 8

        3. Factor 9:  Court Congestion Favors Transfer. ........................................... 9

        4. Factor 10:  Local Interest Is a Neutral Factor. ........................................... 9

        5. Factor 11:  Public Policy of the Fora Is a Neutral Factor. ......................... 9

        6. Factor 12:  Familiarity of Trial Judge with State Law Is a Neutral Factor. ............................................................................................................. 10

III. CONCLUSION ................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Blackbird Tech LLC v. Cloudflare, Inc.*,
   C.A. Nos. 17-283, 17-284, 2017 WL 4543783 (D. Del. Oct. 11, 2017) ................................... 2

*Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*,
   333 F. Supp. 2d 239 (D. Del. 2004) ....................................................................................... 9

*Cont'l Grain Co. v. The FBL-585*,
   364 U.S. 19 (1960) .................................................................................................................. 7

*Firmani v. Clarke*,
   325 F. Supp. 689 (D. Del. 1971) ............................................................................................. 7

*Gen. Sci. Corp. v. Den-Mat Holdings, LLC*,
   C.A. No. 21-882-CFC, 2021 WL 4622548 (D. Del. Oct. 7, 2021) ......................................... 9

*Ithaca Ventures k.s. v. Nintendo of Am. Inc.*,
   C.A. No. 13-824-GMS, 2014 WL 4829027 (D. Del. Sept. 25, 2014) ..................................... 2

*Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*,
   C.A. No. 12-1479 (GMS), 2013 WL 4496644 (D. Del. Aug. 21, 2013) ................................. 5

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) ...................................................................................................... 1

*Kaplan v. Stock Mkt. Photo Agency, Inc.*,
   133 F. Supp. 2d 317 (S.D.N.Y. 2001) ..................................................................................... 4

*Memory Integrity, LLC v. Intel Corp.*,
   C.A. No. 13-1804-GMS, 2015 WL 632026 (D. Del. Feb. 13, 2015) ...................................... 2

*NXP USA, Inc. v. IMPINJ, Inc.*,
   C.A. No. 19-1875-RGA, 2020 WL 5665257 (D. Del. Sept. 23, 2020) ................................... 3

*Ross v. Institutional Longevity Assets LLC*,
   C.A. No. 12-102-LPS-CJB, 2013 WL 5299171 (D. Del. Sept. 20, 2013) ...................... 2, 5, 7

*Sanofi-Aventis v. Advancis Pharm. Corp.*,
   453 F. Supp. 2d 834 (D. Del. 2006) ..................................................................................... 10

*Sentient Sensors, LLC v. Cypress Semiconductor Corp.*,
   C.A. No. 19-1868 (MN), 2020 WL 3640065 (D. Del. July 6, 2020) ...................................... 7

*Smart Audio Techs., LLC v. Apple, Inc.*,
    910 F. Supp. 2d 718 (D. Del. 2012) ........................................................................ 8

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*,
    676 F. Supp. 2d 321 (D. Del. 2009) ........................................................................ 5

*Tumbaga v. Equifax Info. Servs., LLC*,
    C.A. No. 19-1560 (MN), 2020 WL 4673907 (D. Del. Aug. 12, 2020) .................... 4

**Statutes & Other Authorities**

28 U.S.C. § 1404(a) ................................................................................................ 1, 10

Fed. R. Civ. P. 45(c)(1)(B)(ii) ....................................................................................... 6

LR 7.1.1 ....................................................................................................................... 12

United States District Court Northern District of California, Judges,
    https://www.cand.uscourts.gov/judges/ (last visited July 24, 2024) ....................... 8

California. United States Courts, Judicial Caseload Profile at 14, 66,
    https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.
    pdf (last visited July 24, 2024) ................................................................................. 9

Dustin Podell, et al., "SDXL: Improving Latent Diffusion Models for High-
    Resolution Image Synthesis," https://arxiv.org/pdf/2307.01952 (last visited
    July 25, 2024) ........................................................................................................... 6

Local Rules 3-12(a), https://www.cand.uscourts.gov/wp-
    content/uploads/2023/10/CAND_Civil_Local_Rules_10-19-2023.pdf (last
    visited July 24, 2024) ............................................................................................... 8

I.      INTRODUCTION AND SUMMARY OF ARGUMENTS[1]

This case does not belong in Delaware. As described in the concurrently filed Motion to Dismiss, this Court lacks personal jurisdiction over Stability AI Ltd. ("Stability UK")—a necessary and indispensable party—and therefore this case should be dismissed. In the alternative, the Court should transfer this lawsuit to the Northern District of California under Section 1404(a) "[f]or the convenience of parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a). Getty's claims in this case have no connection to Delaware—and Getty itself is not a Delaware corporation. Further, there is already a class action pending against both Stability AI, Inc. ("Stability US") and Stability UK in California. The California class action was filed before this case and raises many of the same legal issues as this one. Transfer would therefore not only be more convenient for the parties, but it would also promote the interests of judicial economy.

II.     ARGUMENT

To determine whether transfer is appropriate, courts in the Third Circuit consider the private and public interest factors set forth in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The relevant private interest factors are: (1) the plaintiff's forum preference; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the location of books and records. *Id*. The public interest factors to be considered are: (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the

---

[1] The nature of the case and statement of facts are recited in the concurrently filed Motion to Dismiss.

familiarity of the trial judge with the applicable state law in diversity cases. *Id*. at 879-80.

Apart from the plaintiff's forum preference—which weighs only minimally against transfer—every factor either weighs in favor of transfer or is neutral.

        **A.**        **The Balance of Private Interests Strongly Favors Transfer.**

                **1.**        **Factor 1: Plaintiff's Choice of Forum Should Be Given Minimal Weight.**

A plaintiff's choice of forum is entitled to deference when it chooses to file on its home turf. *Ithaca Ventures k.s. v. Nintendo of Am. Inc.*, C.A. No. 13-824-GMS, 2014 WL 4829027, at *2 (D. Del. Sept. 25, 2014). But where, as here, a plaintiff has minimal connection to the selected forum, its choice "weighs minimally against transfer." *Memory Integrity, LLC v. Intel Corp.*, Civil Action No. 13-1804-GMS, 2015 WL 632026, at *3 (D. Del. Feb. 13, 2015); *see also Blackbird Tech LLC v. Cloudflare, Inc.*, Civil Action Nos. 17-283, 17-284, 2017 WL 4543783, at *5 (D. Del. Oct. 11, 2017) (finding plaintiff's choice of forum did "not merit 'substantial' or 'paramount' weight" because although it was incorporated in Delaware, it had "no physical presence in that state.").

Getty "is a New York corporation with headquarters in Seattle, Washington." (Second Am. Compl. ¶ 16, D.I. 42.) Getty does not allege any connection to this district. Its sole reason for choosing this forum appears to be that Stability US and Stability Services are incorporated here. Thus, Getty's choice of forum should be given minimal weight.

                **2.**        **Factor 2: Defendant's Choice of Forum Favors Transfer.**

In analyzing a defendant's choice of forum, courts have "tended to examine whether the defendant can articulate rational, legitimate reasons to support that preference." *Ross v. Institutional Longevity Assets LLC*, Civil Action No. 12-102-LPS-CJB, 2013 WL 5299171, at *10 (D. Del. Sept. 20, 2013) (citation omitted), *report and recommendation adopted*, Civil

2

Action No. 12-102-LPS-CJB, 2013 WL 5613998 (D. Del. Oct. 11, 2013).

Defendants prefer to litigate this case in the Northern District of California, and their reasons are legitimate. As detailed below in Section II.A.5, there are multiple likely witnesses located in California and none in Delaware—including third parties who can be subpoenaed for trial by the Northern District of California, but not Delaware. Moreover, as described in Section II.A.4, below, the California Action presents substantially overlapping allegations and legal issues. Transfer to the Northern District of California avoids the possibility of inconsistent judgments. "Defendant[s'] choice has a legitimate basis, and therefore this factor weighs in favor of transfer." *NXP USA, Inc. v. IMPINJ, Inc.*, Civil Action No. 19-1875-RGA, 2020 WL 5665257, at *2 (D. Del. Sept. 23, 2020).

### 3.      Factor 3:  Where the Claims Arose Favors Transfer.

The claims in the Second Amended Complaint relate to the alleged training and development of Stable Diffusion, none of which is alleged to have occurred in Delaware. (*See* Second Am. Compl. ¶¶ 34-39.) At the time Getty filed its first Amended Complaint (D.I. 13), approximately 56 people in the United States worked for Stability UK through third-party remote working companies, with more than 20% of the US workforce residing in California. None resided in Delaware. (O'Donoghue Decl.[2] ¶ 21.) Currently, approximately 49 people in the United States work for Stability UK through the agreement with Stability Services, with more than 33% of the US workforce currently residing in California, and none residing in Delaware. (O'Donoghue Decl. ¶ 23.)

As described in Subsection II.A.2, *supra*, some people who have worked for Stability UK in California were involved in the development of Stable Diffusion. (O'Donoghue Decl. ¶ 25.)

---

[2] "O'Donoghue Decl." refers to the Declaration of Peter O'Donoghue filed concurrently with Defendants' Motion to Dismiss.

3

At the time Getty filed its first Amended Complaint, several senior executives of Stability UK, including two direct reports of the CEO, resided in California. (O'Donoghue Decl. ¶ 21.) To date, Stability UK has spent over $3,750,000 with California suppliers. (O'Donoghue Decl. ¶ 24.)

This factor therefore favors transfer.

### 4. Factor 4: The Convenience of the Parties Heavily Favors Transfer.

"Determining convenience of the parties requires the Court to consider: (1) the parties' physical location; (2) the associated logistical and operational costs to the parties in traveling to Delaware – as opposed to the proposed transferee district – for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Tumbaga v. Equifax Info. Servs., LLC*, C.A. No. 19-1560 (MN), 2020 WL 4673907, at *3 (D. Del. Aug. 12, 2020).

Neither Stability US nor Stability UK has offices in the United States, but the concurrently pending California Action renders California significantly more convenient than Delaware. As mentioned in Section II.A.2, *supra*, the California Action presents substantially overlapping allegations and legal issues. Indeed, Getty ***is a member of the proposed class*** in the California Action. Like Getty, the California Action's Plaintiffs allege infringement of their copyrighted images by (1) Stability AI's training of Stable Diffusion models and (2) the outputs of those models.[3] Transferring this case to the Northern District of California will therefore

---

[3] Although the California Action does not include trademark claims, Getty's trademark allegations stem from Stability AI's use of copyrighted works to train the Stable Diffusion models. The trademark allegations are therefore subsidiary to the copyright claims. *See Kaplan v. Stock Mkt. Photo Agency, Inc.*, 133 F. Supp. 2d 317, 329 n.17 (S.D.N.Y. 2001) ("'[T]he absence of substantial similarity [under copyright law] leaves little basis for asserting a likelihood of confusion or palming off' for purposes of a trademark claim." (citation omitted.))

4

create efficiencies and preserve company resources.  (O'Donoghue Decl. ¶ 28, Ex. A.)  For example, it is far more convenient for Defendants to produce documents and make party witnesses available in the same forum as the pending California Action, rather than being forced to do so on both sides of the country.  *See Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 334 (D. Del. 2009) (recognizing that the moving party need only show that "it is substantially more convenient for the documents and evidence to be produced in the Northern District of California rather than the District of Delaware").  *See, e.g., Ross*, 2013 WL 5299171, at *10 (finding the defendant had articulated legitimate reasons for transfer when witnesses and documents were located in its preferred forum and there was a pending action in that forum that raised substantially identical claims); *Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*, C.A. No. 12–cv–1479 (GMS), 2013 WL 4496644, at *4 (D. Del. Aug. 21, 2013) (similarly finding the defendant had articulated legitimate reasons for transfer when the parties were litigating a case involving the same family of patents in the defendant's preferred forum and the majority of party and non-party witnesses were located in that forum).

Moreover, the Northern District of California will also be a more convenient forum for Getty, whose headquarters are in Seattle.  (Second Am. Compl. ¶ 16.)  Getty cannot argue with a straight face that its choice to litigate this case over 2,000 miles from its headquarters is more convenient than litigating on the West Coast, where it maintains a significant presence.  This factor strongly favors transfer.

### 5. Factor 5: Witness Convenience Favors Transfer.

This factor favors transfer because Northern California is a more convenient forum for many witnesses.  The parties will no doubt rely on their own employees to testify, and while none of the parties have a physical presence in Delaware, Getty's headquarters are on the West Coast, in Seattle, and thus much closer to Northern California than Delaware.  Several potential

witnesses for Getty reside in California or the nearby State of Washington. For example, Getty's Finance Director, Matthew Tassos, is based in Seattle, Washington. (Remus Decl.[4] ¶ 2, Ex. A.) Cory Lidschin is a Director of Entertainment Partnerships for Getty who is based in Santa Monica, California. (Remus Decl. ¶ 3, Ex. B.) Mr. Lidschin negotiates licensing terms for high-value content impacting long-term revenue streams. (*Id*.) Monique Macias is a Senior Manager of Strategic Partnerships and Revenue Generation based in Los Angeles, California. (Remus Decl. ¶ 4, Ex. C.) Ms. Macias executes partnership deals to license and distribute content. (*Id*.) Ms. Macias also manages sales cycles for products including custom content and generative AI. (*Id*.)

In addition, while there are no individuals in Delaware who participated in the development of Stable Diffusion, several reside in California. (O'Donoghue Decl. ¶¶ 25-27.) For example, Alex Goodwin is a machine learning engineer who was involved in the development of a Stable Diffusion model. (O'Donoghue Decl. ¶ 26.) Mr. Goodwin has left Stability Services but currently resides in California. (Remus Decl. ¶ 5, Ex. D.). *Id*. Similarly, Zion English is a former Stability Services employee based in California. (O'Donoghue Decl. ¶ 27; Remus Decl. ¶ 6, Ex. E.) Mr. English is a machine learning engineer who was involved in the development of Stable Diffusion models. (*Id*.) Mr. English co-authored a paper describing SDXL's advancements over previous Stable Diffusion models. *See* Dustin Podell, et al., "SDXL: Improving Latent Diffusion Models for High-Resolution Image Synthesis," https://arxiv.org/pdf/2307.01952 (last visited July 25, 2024). Because Mr. Goodwin and Mr. English have left Stability Services, the Stability Defendants are not able to compel their attendance. Should the case be transferred to the Northern District of California, however, the

---

[4] "Remus Decl." refers to the Declaration of Laura G. Remus, filed concurrently.

6

Northern District of California would have the power to subpoena them for trial. Fed. R. Civ. P. 45(c)(1)(B)(ii). The convenience of the Stability Defendants' third-party witnesses strongly favors transfer.

Moreover, because the pending California Action in the Northern District of California presents substantially overlapping allegations and legal issues, transferring this case to the same district may allow for coordination of depositions and consolidation of travel. As this Court has recognized, "duplicative litigation of similar issues in separate fora should be avoided." *Firmani v. Clarke*, 325 F. Supp. 689, 693 (D. Del. 1971) ("A strong public policy favors bringing all such litigation together in one tribunal so that pretrial discovery may be conducted more efficiently, witnesses' time may be conserved, public and parties' litigation expenses may be reduced, and inconsistent results can be avoided.")

### 6. Factor 6: Location of Books and Records Favors Transfer.

While this factor primarily focuses on whether evidence cannot be produced in one of the fora, courts have found this factor weighs in favor of transfer when "relevant evidence is either located in or more easily produced in" the proposed forum. *Sentient Sensors, LLC v. Cypress Semiconductor Corp.*, C.A. No. 19-1868 (MN), 2020 WL 3640065, at *6 (D. Del. July 6, 2020). Because the California Action presents substantially overlapping allegations and legal issues, and to the extent Stability UK is required to make any documents available for inspection, it will be significantly more convenient if such documents can be made available for inspection to the parties in each proceeding in the same location.

### B. The Balance of Public Interests Strongly Favors Transfer.

### 1. Factor 7: Enforceability of the Judgment Is a Neutral Factor.

Transfer from Delaware to Northern California does not implicate any issues relating to the enforceability of any judgment in this case, and therefore, this factor is neutral.

### 2. Factor 8: Practical Considerations Strongly Favor Transfer.

"[This] Court has often cited the existence of related lawsuits in one of the fora at issue as being an important 'practical consideration' to be taken into account." *Ross*, 2013 WL 5299171, at *13; *see also Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [§] 1404(a) was designed to prevent."). Similar to Getty's claims in this lawsuit, the plaintiffs in the California Action pending in the Northern District of California allege that Stability UK and Stability US infringed their copyrights by using their images to train Stable Diffusion. The commonalities between the two lawsuits "may allow the court to develop some familiarity with the . . . technology involved, thereby conserving judicial time and resources." *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 733 (D. Del. 2012).

Additionally, transfer mitigates the risk that defendants will be subject to inconsistent judgments. If this case is transferred to the Northern District of California, it will likely be deemed to be related to the California Action because (1) both lawsuits revolve around the legality of training Stable Diffusion and (2) an "unduly burdensome duplication of labor and expense or conflicting [would] result[] if the cases are conducted before different Judges." *See* United State District Court Northern District of California, Local Rules 3-12(a), https://www.cand.uscourts.gov/wp-content/uploads/2023/10/CAND_Civil_Local_Rules_10-19-2023.pdf (last visited July 24, 2024). If the cases are deemed related, they would be heard by the same judge, which both furthers judicial economy and reduces the risk of inconsistent judgments. This factor therefore strongly favors transfer.

### 3. Factor 9: Court Congestion Favors Transfer.

The relative congestion of the transferor and transferee courts' dockets also favors transfer. This Court has four judges, while the Northern District of California has 23. *See* United States District Court Northern District of California, Judges, https://www.cand.uscourts.gov/judges/ (last visited July 24, 2024). This Court also faces a heavier caseload than the Northern District of California. According to the most recent data, for the 12-month period ending December 31, 2023, there were 666 weighted filings per judge in this Court, as compared to 486 weighted filings per judge in the Northern District of California. United States Courts, Judicial Caseload Profile at 14, 66, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf (last visited July 24, 2024). While the median time from filing to trial has varied over the past few years,[5] the percent change in total filings shows the Northern District of California becoming significantly less congested, having 25% fewer filings in 2023 than 2022 compared to only 9.2% fewer filings in Delaware. *Id.*

Thus, this factor strongly favors transfer. *See Gen. Sci. Corp. v. Den-Mat Holdings, LLC*, Civil Action No. 21-882-CFC, 2021 WL 4622548, at *3 (D. Del. Oct. 7, 2021) (relying on weighted filings per Judge to determine court congestion).

### 4. Factor 10: Local Interest Is a Neutral Factor.

Because this case does not involve a local controversy, this factor is neutral.

### 5. Factor 11: Public Policy of the Fora Is a Neutral Factor.

This case does not implicate any public policy of Delaware or California, and so this factor is neutral.

---

[5] The Northern District of California having a shorter median time to trial in three of the past six years, and Delaware a shorter median time in the other three.

9

### 6. Factor 12: Familiarity of Trial Judge with State Law Is a Neutral Factor.

In addition to its Federal claims, Getty has asserted two trademark claims under Delaware law—specifically under Delaware's Uniform Deceptive Trade Practices Act and the Delaware Trademark Act. But courts apply the same standards to these claims as their federal equivalents. *Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, 333 F. Supp. 2d 239, 244 n.13 (D. Del. 2004) (finding that the same standards used for determining trademark infringement under the Lanham act "apply to UTN's claims for trademark infringement and unfair competition under Delaware and New York law"), *aff'd in part sub nom. Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463 (3d Cir. 2005); *Sanofi-Aventis v. Advancis Pharm. Corp.*, 453 F. Supp. 2d 834, 847 n.2 (D. Del. 2006) ("[C]laims for infringement, false designation of origin, statutory unfair competition, and common law unfair competition are all governed by the same standards.") And so, this factor is neutral.

In conclusion, the relevant private and public interests weigh decisively in favor of transfer. Accordingly, this Court should transfer this case under § 1404(a).

### III. CONCLUSION

For the foregoing reasons, should the Court not dismiss this case for lack of personal jurisdiction, Defendants respectfully request that this case be transferred to the Northern District of California.

OF COUNSEL:

Joseph C. Gratz
Timothy Chen Saulsbury
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
(415) 268-7000

Allyson R. Bennett
Laura Gilbert Remus
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA, 90017-3543
(213) 892-5200

Aditya V. Kamdar
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C., 20037
(202) 887-1500

July 29, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 29, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Tammy L. Mercer, Esquire<br>Robert M. Vrana, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>1000 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Benjamin E. Marks, Esquire<br>Jared R. Friedmann, Esquire<br>Melissa Rutman, Esquire<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY  10153<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Brian Liegel, Esquire<br>WEIL, GOTSHAL & MANGES LLP<br>1395 Brickell Avenue, Suite 1200<br>Miami, FL 33131<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)