IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GETTY IMAGES (US), INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 23-135 (JLH) |
| | ) |
| STABILITY AI, LTD., STABILITY AI, INC. and STABILITY AI US SERVICES CORPORATION, | ) ) ) |
| | ) |
| Defendants. | ) |

# DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS

OF COUNSEL:

Joseph C. Gratz
Timothy Chen Saulsbury
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

Allyson R. Bennett
Laura Gilbert Remus
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA, 90017-3543
(213) 892-5200

Aditya V. Kamdar
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
(202) 887-1500

August 19, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 1

    A. Getty Fails to Meet the Basic Requirement of Identifying Fraud, Injustice, or Unfairness, and Therefore Cannot Establish Alter Ego Liability. ..................... 1

    B. The Remaining Alter Ego Factors Are Also Not Met. ........................................ 3

        1. There Is No Gross Undercapitalization. ....................................................... 4

        2. Getty's Accusations of Siphoning of Funds Are Lacking. ......................... 5

        3. Getty Has Shown No Failure to Observe Corporate Formalities and No Absence of Corporate Records Sufficient to Support Alter Ego Jurisdiction. ................................................................................................ 5

        4. Stability US Is Not Merely a Façade for the Operations of the Dominant Stockholder. ................................................................................ 7

    C. There Is No Specific Jurisdiction over Stability UK. ........................................... 8

    D. The Federal Long-Arm Statute Does Not Provide Jurisdiction over Stability UK in Delaware. .................................................................................. 10

III. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*,
    295 F. Supp. 2d 400 (D. Del. 2002)......................................................................................7

*Blair v. Infineon Techs. AG*,
    720 F. Supp. 2d 462 (D. Del. 2010)....................................................................................1, 2

*C.R. Bard, Inc. v. Guidant Corp.*,
    997 F. Supp. 556 (D. Del. 1998)............................................................................................2

*Hepp v. Facebook*,
    14 F.4th 204 (3d Cir. 2021) .................................................................................................8, 9

*Kaplan v. First Options of Chicago, Inc.*,
    19 F.3d 1503 (3d Cir. 1994).................................................................................................2, 4

*Marnavi S.p.A. v. Keehan*,
    900 F. Supp. 2d 377 (D. Del. 2012).......................................................................................2

*Mobil Oil Corp. v. Linear Films, Inc.*,
    718 F. Supp. 260 (D. Del. 1989)............................................................................................5

*Monsanto Co. v. Syngenta Seeds, Inc.*
    443 F. Supp. 2d 636 (D. Del. 2006).....................................................................................10

*Pearson v. Component Tech. Corp.*,
    247 F.3d 471 (3d Cir. 2001)................................................................................................4, 8

*Pontiaki Special Mar. Enter. v. Taleveras Grp.*,
    C.A. No. 16-247-LPS, 2016 WL 4497058 (D. Del. Aug. 26, 2016) .......................................5

*T-Jat Systems 2006 Ltd. v. Expedia, Inc. (DE)*,
    C. A. No. 16-581-RGA-MPT, 2017 WL 896988 (D. Del. Mar. 7, 2017) ...............................2

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003)...................................................................................................9

*Trs. of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*,
    332 F.3d 188 (3d Cir. 2003)...................................................................................................4

*VoterLabs, Inc. v. Ethos Grp. Consulting Servs., LLC*,
    C.A. No. 19-524-MAK, 2021 WL 4288506 (D. Del. Sept. 21, 2021) ..............................2, 7, 9

**Statutes & Other Authorities**

Fed. R. Civ. P. 4(k)(2)..................................................................................................................10

Director's loans, GOV.UK, https://www.gov.uk/directors-loans. ....................................................5

I.      **INTRODUCTION**

Getty's answering statement to the motion to dismiss focuses on the alter ego theory of personal jurisdiction. This theory, if satisfied, bypasses any formal separation between related corporate entities and treats them as the same. It rests on the premise that one entity's use of the corporate form contains an element of fraud or injustice, and so that entity should not be permitted to avoid liability. Getty contends that Stability UK, because of its relationship with Stability US (and, perhaps, Stability Services), should be subject to this Court's jurisdiction.

The Stability Defendants are not trying to avoid being haled into court. Delaware is simply not the appropriate place to bring this action. This is a copyright and trademark case where none of the alleged infringement took place in Delaware. Stability UK, the entity alleged to have committed the acts of infringement, is not based in Delaware, and no development, training, or infringing use of the artificial intelligence models at issue took place in this state either.

Without this direct connection, Getty instead claims that Stability UK and Stability US—entities with separate boards of directors, books and records, and bank accounts—are the same. The facts don't bear this out.

This Court cannot exercise personal jurisdiction over Stability UK—a necessary and indispensable party to this action. The Stability Defendants respectfully seek dismissal.

II.     **ARGUMENT**

    A.    **Getty Fails to Meet the Basic Requirement of Identifying Fraud, Injustice, or Unfairness, and Therefore Cannot Establish Alter Ego Liability.**

Getty has not pled nor identified any fraud, injustice, or unfairness sufficient to establish alter ego liability. "This court has required an element of fraudulent intent in its alter ego test." *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 470 (D. Del. 2010). *Blair*, a case Getty

1

extensively relies on in its brief, states clearly that "an overall element of fraud, injustice, or unfairness ***must always be present***." *Id.* at 471 (emphasis added).  This requirement makes sense:  the alter ego theory of jurisdiction is a narrow exception to the basic tenet of corporate law that parents and subsidiaries are not necessarily bound by (or liable for) the actions of the other, and the test helps courts determine whether the entities at issue are merely abusing the corporate form to avoid liability.

Courts regularly find that the stringent alter ego standard is not met where fraud or inequity in the corporate form has not been demonstrated.  *See, e.g.*, *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 560 (D. Del. 1998) (denying alter ego jurisdiction where no evidence of "fraud in the corporate structure" of parent and subsidiary); *Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 392 & n.7 (D. Del. 2012) (denying alter ego jurisdiction and rejecting notion that any "murkiness" in the record warrants disregarding corporate separateness); *T-Jat Systems 2006 Ltd. v. Expedia, Inc. (DE)*, C.A. No. 16-581-RGA-MPT, 2017 WL 896988, at *8 (D. Del. Mar. 7, 2017) (with a showing of fraud or injustice, "factual allegations of nothing more than a close relationship and coordination among defendants, including operational control of [one entity] over [others], is insufficient" (cleaned up)); *VoterLabs, Inc. v. Ethos Grp. Consulting Servs., LLC*, C.A. No. 19-524-MAK (Consolidated), 2021 WL 4288506, at *6 (D. Del. Sept. 21, 2021) (denying alter ego jurisdiction where plaintiff presented no evidence that corporation was a "mere shell shuttling assets between entities in an effort to escape the effect of any potentially adverse judgment" or was manipulated to avoid judgment (cleaned up)).  Here, Getty has not put forth "clear and convincing evidence" that any Defendant abused the corporate form, and there is no evidence whatsoever that the Stability Defendants are trying to avoid a potentially adverse judgment.  *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1522 (3d Cir. 1994), *aff'd*,

514 U.S. 938 (1995).

With no allegations of fraud or unfairness to point to, Getty instead argues that "injustice" can be gleaned from two accusations: (1) Stability UK, a company based overseas, formed a Delaware parent corporation for the purpose of fundraising in the United States to the benefit of the entire Stability AI group, and (2) Stability Services, another Delaware corporation, was created as an entity to employ workers based in the United States who would provide services to Stability UK. (Opp. at 14–15.) Getty suggests that Stability UK, through its relationship with these entities, is reaping the benefits of Delaware law while simultaneously avoiding liability. (*Id.* at 15.) Not so. Neither corporate formation is unusual, let alone unjust. That Stability UK engages in arms-length transactions with a Delaware-based entity whose purpose is to raise money in exchange for equity, and with another Delaware-based entity that was able to employ individuals in the United States (where previously, a third-party remote working company was used), does not supply the element of injustice, inequity, or fraud necessary to support jurisdiction over Stability UK in Delaware. (*See* O'Donoghue Decl. ¶¶ 15–16 (intercompany loans subject to interest and services provided pursuant to a Management Services Agreement); Decl. of Robert Vrana, D.I. 56, Ex. C at 137:14–138:15 (describing nature of payments made by Stability US for services provided by Stability UK); *id.* at 150:2–154:18 (discussing Service Recharge Agreement between Stability Services and Stability UK).) Indeed, the existence of Stability Services should not even be a consideration: Getty offers no evidence beyond conclusory allegations that Stability Services was engaged in any of the allegedly infringing activity.

### B. The Remaining Alter Ego Factors Are Also Not Met.

Getty has not met the basic requirement of demonstrating fraud, injustice, or unfairness, and the alter ego analysis must end there. This Court has no personal jurisdiction over Stability

UK, a necessary and indispensable party, and must dismiss.

Should the Court find that Getty has crossed this threshold, it should nonetheless reject Getty's alter ego theory because none of the other factors courts consider weigh in favor of finding jurisdiction. The alter ego test is "notoriously difficult . . . to meet." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484–85 (3d Cir. 2001) (listing factors). "Alter ego . . . must be shown by clear and convincing evidence." *Kaplan,* 19 F.3d at 1522. Getty has not met this high bar.

Getty addresses only certain factors in determining whether defendants are a single entity for purposes of alter ego jurisdiction. Defendants respond as follows:

### 1. There Is No Gross Undercapitalization.

"[T]he inquiry into corporate capitalization is most relevant for the inference it provides into whether the corporation was established to defraud its creditors or other improper purpose such as avoiding the risks known to be attendant to a type of business." *Trs. of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 197 (3d Cir. 2003). As in *Lutyk*, there are no accusations here that any Stability entity was formed to defraud creditors or avoid other business risks. *See id.* Getty instead points to the fact that Stability UK is not cash-flow positive. But that does not set Stability UK apart from most startups. As was made clear during jurisdictional discovery, although Stability UK receives funding in the form of revenue from its products and services (as well as from interest, grants, and research and development tax credits), it also takes out intercompany loans to help cover operational costs. (Vrana Decl. Ex. C at 115:9-19.) This arrangement allows Stability UK to be "adequately funded for [its] corporate purposes" and "able to pay [its] current obligations as they become due." (Decl. of Peter O'Donoghue, D.I. 47, ¶ 11.) That these payments sometimes come from Stability US—on behalf of Stability UK—makes no difference. *See Mobil Oil Corp. v. Linear*

4

*Films, Inc.*, 718 F. Supp. 260, 267 (D. Del. 1989) (where obligations of one corporation were paid from other corporation's bank account insufficient to support alter ego theory).  The capitalization of the Stability entities leads to no inference of their being formed for an improper purpose, and this factor does not weigh in favor of finding alter ego liability.

### 2. Getty's Accusations of Siphoning of Funds Are Lacking.

Getty points to two examples in an attempt to prove "siphoning of funds":  First, Stability US—an entity that has no employees—does not repay or contribute to the rent of the London office it shares with Stability UK and considers its headquarters.  This fact is sharply different from the situation in the sole case Getty cites, where it was alleged that the parent corporation deliberately scuttled two entities to avoid paying judgments owed to creditors and then transferred (i.e., "siphoned") their business and customers to another entity, without consideration.  *Pontiaki Special Mar. Enter. v. Taleveras Grp.*, Civ. No. 16-247-LPS, 2016 WL 4497058, at *4 (D. Del. Aug. 26, 2016).  Second, former director Emad Mostaque and his wife took out loans from Defendants.  But, as Stability UK's CFO testified, these loans "flowed both ways" and are "pretty common in UK businesses." (Vrana Decl. Ex. C at 97:12-101:15); *see also* Director's loans, GOV.UK, https://www.gov.uk/directors-loans.  That these individuals were borrowing (and lending back) money is not evidence that one Stability entity was "siphoning" funds from another for purposes of alter ego jurisdiction.

### 3. Getty Has Shown No Failure to Observe Corporate Formalities and No Absence of Corporate Records Sufficient to Support Alter Ego Jurisdiction.

Getty does not dispute that Stability UK and Stability US maintained and continue to maintain separate bank accounts, books, and records.  Instead, Getty puts all its weight on the fact that there was a period during which the two entities' sole director was the same person, and that during that time there were few minuted board meetings.  Getty's argument does not paint a

5

complete picture of the facts.

First, Getty identifies that Stability UK had just one minuted board meeting between 2019 and March 2023, when Getty filed suit. Those meeting minutes reflect Mr. Mostaque's transfer of his interest in Stability UK to Stability US. (Vrana Decl. Ex. G (minutes of board meeting held on Oct. 15, 2020).) But Getty points to no requirement in the United Kingdom's Companies Act nor in Stability UK's governing documents that necessitates regular board meetings, particularly when there is a sole director.[1] Without any insight into UK corporate law, this Court should not assume that it is a required or common practice otherwise.

Second, when it comes to Stability US, as Mr. O'Donoghue explained in his deposition, its board of directors grew from one individual (Mr. Emad Mostaque) to five members only after Stability US closed its Series A financing round in September 2022. (Vrana Decl. Ex. C at 27:3–17, 44:12–15.) It is therefore not surprising that there were no formal board meetings until then, nor does Getty point to any requirement in the governing law or the corporation's bylaws that mandated any such meetings.[2] And the mistakes Getty points to in the board meeting minutes that do exist do not expose any wrongdoing. Indeed, Mr. O'Donoghue affirmatively pointed out in his deposition that there was some "imprecision" in the minutes where certain employees and actions were improperly attributed to the "[C]ompany," defined as Stability US, when they should have been attributed to Stability UK or to the group. (*Id*. at 170:2–15.) That the Stability

---

[1] Getty incorrectly states that Stability UK claimed "both that it had no officers and that" Mr. O'Donoghue was its Chief Financial Officer. (Opp. at 9.) Stability UK stated that it "does not have any officially elected or appointed Officers." (Vrana Decl. Ex. B, No. 8; *see also* Vrana Decl. Ex. C at 79:6–10 (explaining that there is no formal "officer" requirement in the UK).) Further, as Mr. O'Donoghue explained, there is not a "group" board of directors. (Vrana Decl. Ex. C at 123:14-124:4.)

[2] The Court should give no weight to the self-serving declaration of Mr. Cyrus Hodes from an unrelated lawsuit against Mr. Mostaque, Stability US, and Stability UK.

US board minutes included discussions of the activities of Stability UK is expected given Stability US's oversight role as parent corporation and sole shareholder of Stability UK.

A lack of board meetings when each entity was run by one director, even if it was the same director, does not weigh in favor of alter ego jurisdiction. *See Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 407 (D. Del. 2002) (rejecting alter ego jurisdiction—even where two corporations had the same sole shareholder and director and failed to hold board meetings—because the two entities were kept separate). The weight of the evidence shows that Stability US and Stability UK are separate entities.

### 4. Stability US Is Not Merely a Façade for the Operations of the Dominant Stockholder.

Getty suggests that Stability US is merely a façade by pointing to the fact that former director and CEO Emad Mostaque effectively controlled both Stability US and Stability UK; the unsupported accusation that he "siphon[ed] funds for personal use"; and the unimpressive reality that—because Stability US does not have its own employees—employees of Stability UK have provided it key management services under contract. (Opp. at 10.) Getty further relies on the fact that the combination of entities under Stability US have been referred to as a "Group." (*Id.*)

The mere fact that Mr. Mostaque was the controlling shareholder and, for a time, sole director of Stability US and Stability UK does not render them a single entity. In *VoterLabs*, despite the fact that a single person owned the parent holding company, was the sole director of the two subsidiaries at issue, and was the sole manager of the Delaware corporation that plaintiff sought to use as a jurisdictional hook, the court held that the plaintiff had not established that the Delaware entity was a "mere façade" of the two other subsidiaries. *VoterLabs*, 2021 WL 4288506, at *3, *6. Contrary to Getty's argument, Mr. Mostaque's dual roles do not render Stability US a façade for the operations of Stability UK.

Further, the fact that employees of Stability UK provide services to Stability US, which does not have its own employees, does not merge them into a single entity either.  These services are provided in exchange for payment.  (Vrana Decl. Ex. C at 138:7–15.)  This arrangement is governed by a formal Management Services Agreement.  (O'Donoghue Decl. ¶ 16.)  While that agreement was not effective until 2023, Stability UK's CFO testified that the agreement was a formalization of the operating arrangement that had existed prior.  (Vrana Decl. Ex. C at 133:2-19.)  And while it is true that Stability UK employs individuals who help run Stability US, Stability US is ultimately overseen by a separate board of directors (that includes non-management directors), keeps separate books and records, and maintains separate bank accounts. (O'Donoghue Decl. ¶¶ 9, 13.)

Finally, the mere description of the entities as "Stability AI" or a "Group" does not alone support Getty's alter ego theory.[3]  As the Third Circuit has recognized, "courts have refused to pierce the veil even when subsidiary corporations use the trade name of the parent, accept administrative support from the parent, and have a significant economic relationship with the parent."  *Pearson*, 247 F.3d 471, 485 (3d Cir. 2001).  Getty's accusations on this factor are not enough.

        **C.**    **There Is No Specific Jurisdiction over Stability UK.**

Specific jurisdiction requires Getty to demonstrate purposeful availment of and nexus to the forum.  Regardless of whether some of Stability UK's users are in Delaware and revenues came from Delaware, these alleged "contacts ***must give rise to—or relate to***—plaintiff's claims." *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021) (emphasis added).  Getty acknowledges, yet ignores, this key component of the personal jurisdiction analysis.  (Opp. at 16.)  "For the contacts

---

[3] The Court should put no weight in what appears to be an unsubmitted screenshot of an application form to the startup accelerator Y Combinator.  (Vrana Decl. Ex. O.)

8

to satisfy this . . . prong, there must be a 'strong relationship among the defendant, the forum, and the litigation.'" *Hepp*, 14 F.4th at 208 (quoting *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1028 (2021)). In *Hepp*, the Third Circuit held that there was no "strong connection" between plaintiff's claims of misappropriation of likeness and the defendant websites' alleged commercial relationships with the forum. *Id.* So too here. Getty does not dispute that it makes ***no allegations*** that any of the actions underlying its claims took place in Delaware.[4] There are no allegations that any of Getty's images were reproduced in Delaware, no allegations that any training of the AI models in question took place in Delaware, nor any allegations that any trademark infringement occurred in Delaware. Getty merely says that some people used and paid for Stability UK's DreamStudio service from Delaware, the state with the third fewest number of users and 0.1% of recorded revenue. (Vrana Decl. Ex. B (Supp. Resps. to Nos. 2 & 3).) Under accepted principles of personal jurisdiction, these facts are not enough. Indeed, that argument would subject nearly every website to jurisdiction anywhere it had paying users, regardless of the connection between those users and the causes of action. That possibility has been forcefully rejected. *See Hepp*, 14 F.4th at 208; *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003).

---

[4] Getty's suggestion that Stability US is an agent of Stability UK is incorrect. As explained above, that Stability UK provides services to Stability US does not outweigh the fact that the two entities have separate boards, separate books, separate banks, and—importantly—separate purposes. In *VoterLabs*, the court found no agency relationship, even though one individual controlled each entity, because the entities had "entered arms-length business relationships with one another to achieve distinct business goals." 2021 WL 4288506, at *8. Further, in *VoterLabs*, there was no evidence that the entities acted in lockstep. *Id.* So too here: Stability US is the fundraising entity that holds several entities—not just Stability UK. Getty's further suggestion that Stability Services' actions are enough to subject Stability UK to jurisdiction are unsupported, as explained earlier, because the sole allegation purporting to connect Stability Services to the alleged infringement is threadbare and conclusory.

### D. The Federal Long-Arm Statute Does Not Provide Jurisdction over Stability UK in Delaware.

Getty completely ignores its burden under Rule 4(k)(2) to demonstrate that Stability UK is not subject to jurisdiction in any state. There are no allegations of the sort in the Second Amended Complaint, nor any such representations in their answering statement. Getty thus has failed to carry its burden on the second element required by the Rule: that the foreign defendant lacks sufficient contacts with any single state to subject it to personal jurisdiction in any state.

*Monsanto Co. v. Syngenta Seeds, Inc.* 443 F. Supp. 2d 636 (D. Del. 2006), is instructive. Monsanto, similar to Getty, attempted to argue for Rule 4(k)(2) jurisdiction in the alternative to its primary argument that Delaware had personal jurisdiction. *Id.* at 647. Monsanto argued that, if the court found no Delaware jurisdiction, then by default no jurisdiction lies in any other state. *Id.* The court rejected that logic, finding instead that Monsanto had "not satisfied its burden of proving the lack of state-specific contacts" because it had not "affirmatively represented that [the defendants] are not subject to the jurisdiction of any state." *Id.*

Here, Getty offers no allegation nor proof that Stability UK is not subject to jurisdiction in any state. Getty's suggestion that Defendants tried to "defeat the negation requirement" is an attempt to flip the burden that the Federal Rules place on the plaintiff. (Opp. at 19.) While the Stability Defendants still maintain that the Northern District of California would be an appropriate venue (*see* motion to transfer, ECF No. 48), proving that Stability UK has no state contacts for purposes of Rule 4(k)(2) is Getty's burden—and one it did not meet.

### III. CONCLUSION

For the foregoing reasons, Stability Defendants respectfully request that this case be dismissed for lack of personal jurisdiction.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Joseph C. Gratz<br>Timothy Chen Saulsbury<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105-2482<br>(415) 268-7000<br><br>Allyson R. Bennett<br>Laura Gilbert Remus<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard<br>Los Angeles, CA, 90017-3543<br>(213) 892-5200<br><br>Aditya V. Kamdar<br>MORRISON & FOERSTER LLP<br>2100 L Street, NW, Suite 900<br>Washington, DC  20037<br>(202) 887-1500<br><br>August 19, 2024 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Michael J. Flynn*<br><br>_____<br>Jack B. Blumenfeld (#1014)<br>Michael J. Flynn (#5333)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>mflynn@morrisnichols.com<br><br>*Attorneys for Defendants* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 19, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Tammy L. Mercer, Esquire<br>Robert M. Vrana, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>1000 North King Street<br>Wilmington, DE 19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Benjamin E. Marks, Esquire<br>Jared R. Friedmann, Esquire<br>Melissa Rutman, Esquire<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Brian Liegel, Esquire<br>WEIL, GOTSHAL & MANGES LLP<br>1395 Brickell Avenue, Suite 1200<br>Miami, FL 33131<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Michael J. Flynn*

Michael J. Flynn (#5333)