IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GETTY IMAGES (US), INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | C.A. No. 23-135 (JLH) |
| ) | |
| STABILITY AI, LTD., STABILITY AI, ) | |
| INC. and STABILITY AI US SERVICES ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |

# DEFENDANTS' REPLY IN SUPPORT OF
# RENEWED MOTION TO TRANSFER

OF COUNSEL:

Joseph C. Gratz
Timothy Chen Saulsbury
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

Allyson R. Bennett
Laura Gilbert Remus
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA, 90017-3543
(213) 892-5200

Aditya V. Kamdar
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
(202) 887-1500

August 19, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

                                                                                                                      **Page**

I.     INTRODUCTION .................................................................................................... 1

II.    ARGUMENT ............................................................................................................ 1

        A.     The California Action is Highly Relevant to the Transfer Analysis ...................... 1

        B.     The Balance of Private Interests Strongly Favors Transfer ................................... 3

                1.     Factor 1: Plaintiff's Choice of Forum Should Be Given Minimal Weight .................................................................................................... 3

                2.     Factor 2: Defendant's Choice of Forum Favors Transfer .......................... 5

                3.     Factor 3: Where the Claims Arose Favors Transfer ................................. 6

                4.     Factor 4: The Convenience of the Parties Heavily Favors Transfer .......... 7

                5.     Factor 5: Witness Convenience Favors Transfer ....................................... 8

                6.     Factor 6: Location of Books and Records Favors Transfer ....................... 9

        C.     The Balance of Public Interests Strongly Favors Transfer .................................... 9

                1.     Factor 8: Practical Considerations Strongly Favor Transfer ..................... 9

                2.     Factor 9: Court Congestion Favors Transfer ........................................... 10

                3.     Factor 11: Public Policy of the Fora Is a Neutral Factor ......................... 10

III.   CONCLUSION ....................................................................................................... 10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re 3M Co.*,
  No. 20-2864, 2020 WL 13924735 (3d Cir. Nov. 18, 2020) ...............................................3, 6, 9

*ADE Corp. v. KLA-Tencor Corp.*,
  138 F. Supp. 2d 565 (D. Del. 2001).................................................................................................7

*Amtrust at Lloyd's Ltd v. Lee*,
  No. 15-cv-1615 (KM)(JBC), 2016 WL 1464650 (D.N.J. Apr. 12, 2016) ...................................4

*Andersen v. Stability AI Ltd.*,
  No. 3:23-CV-00201-WHO, 2024 WL 3823234 (N.D. Cal. Aug. 12, 2024) ............................2

*Blackbird Tech LLC v. Cloudflare, Inc.*,
  C.A. Nos. 17-283, 17-284, 2017 WL 4543783 (D. Del. Oct. 11, 2017)...................................3

*Cashedge, Inc. v. Yodlee, Inc.*,
  C.A. No.06-170 JJF, 2006 WL 2038504 (D. Del. July 19, 2006) ........................................2, 9

*Cont'l Cas. Co. v. Am. Home Assur. Co.*,
  61 F. Supp. 2d 128 (D. Del. 1999)..............................................................................................4

*Intell. Ventures I LLC v. Altera Corp.*,
  842 F. Supp. 2d 744 (D. Del. 2012)............................................................................................5

*McKee v. PetSmart, Inc.*,
  C.A. No. 12-1117-SLR-MPT, 2013 WL 1163770 (D. Del. Mar. 20, 2013) .............................4

*Memory Integrity, LLC v. Intel Corp.*,
  C.A. No. 13-1804-GMS, 2015 WL 632026 (D. Del. Feb. 13, 2015) .......................................4

*Nat'l Prop. Invs. VIII v. Shell Oil Co.*,
  917 F. Supp. 324 (D.N.J. 1995).................................................................................................8

*Pennwalt Corp. v. Purex Indus., Inc.*,
  659 F. Supp. 287 (D. Del. 1986).................................................................................................4

*Phoenix Ins. Co. Ltd. v. Teva Pharm. Indus. Ltd.*,
  381 F. Supp. 3d 416 (E.D. Pa. 2019) .........................................................................................5

*Pragmatus AV, LLC v. Yahoo! Inc.*,
  C.A. No. 11-902-LPS-CJB, 2012 WL 4889438 (D. Del. Oct. 15, 2012) ...............................10

*Ross v. Institutional Longevity Assets LLC*,
   C.A. No. 12-102-LPS-CJB, 2013 WL 5299171 (D. Del. Sept. 20, 2013) ........................ 2, 5, 9

*Sentient Sensors, LLC v. Cypress Semiconductor Corp.*,
   C.A. No. 19-1868 (MN), 2020 WL 3640065 (D. Del. July 6, 2020) ........................................ 9

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ............................................................................................................... 3

*Smart Audio Techs., LLC v. Apple, Inc.*,
   910 F. Supp. 2d 718 (D. Del. 2012) .................................................................................. 3, 6

*Take2 Techs. Ltd. v. Pac. Biosciences of Cal., Inc.*,
   C.A. No. 22-1595-WCB, 2023 WL 4930359 (D. Del. Aug. 2, 2023) ..................................... 8

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*,
   676 F. Supp. 2d 321 (D. Del. 2009) ...................................................................................... 8

*Ultravision Techs., LLC v. RMG Networks Holding Corp.*,
   C.A. 18-1333-CFC, 2019 WL 1985110 (D. Del. May 6, 2019) ........................................... 10

*Werner v. Hive Media Grp., LLC*,
   C.A. No. 20-1176-LPS, 2021 WL 3662902 (D. Del. Aug. 18, 2021) .................................. 5, 7

## I. INTRODUCTION

In its opposition to the motion to transfer, Getty does not identify any connection it has to Delaware or any connection its claims have to Delaware. Getty does not argue that it has any offices, any employees, or any documents in Delaware. Nor does Getty assert that any alleged infringement occurred in Delaware: it does not argue that the development or training of Stable Diffusion occurred here, and it does not identify evidence that any "dissemination of substantially similar images" took place here. There is nothing to suggest that Getty's claims have any tie to Delaware or that Delaware would be an appropriate forum.

In contrast, Defendants have identified numerous reasons why the Northern District of California would be appropriate – for example there is an earlier filed lawsuit raising substantially similar allegations and issues currently pending in that district (the "California Action"), the development of Stable Diffusion partly occurred in California, approximately one third of Stability AI US Services Corporation's ("Stability Services'") employees reside in California, and Getty employees who likely have relevant knowledge reside in California. Transfer would therefore not only be more convenient for the parties, but it would also promote the interests of judicial economy.

## II. ARGUMENT

### A. The California Action is Highly Relevant to the Transfer Analysis.

In the opening paragraphs of its opposition, Getty argues that no efficiencies would be gained by transferring to the same district as the California Action. (Opp. at 1-2.) Getty suggests that Defendants' argument regarding the California Action "misstates the facts and law," but fails to identify these alleged misstatements. (*Id*. at 1.) Specifically, Getty criticizes Defendants' arguments as based on the assumption that "the cases might be consolidated because . . . [Getty] is a member of the purported class." (*Id*. at 1-2, 8.) Not so. Transfer would

1

create efficiencies whether or not the cases are consolidated.

Courts have "often cited the existence of related lawsuits in one of the fora at issue as being an important 'practical consideration' to be taken into account" in a 1404 analysis. *Ross v. Institutional Longevity Assets LLC*, C.A. No. 12-102-LPS-CJB, 2013 WL 5299171, at *13 (D. Del. Sept. 20, 2013) (citation omitted), *report and recommendation adopted*, 2013 WL 5613998 (D. Del. Oct. 11, 2013). For example, when cases involve "related or similar technologies for the judge to become familiar with," that similarity weighs in favor of transfer. *Cashedge, Inc. v. Yodlee, Inc.*, C.A. No. 06-170 JJF, 2006 WL 2038504, at *2 (D. Del. July 19, 2006). As explained in Defendants' opening brief, if this case is transferred to the Northern District of California, it will likely be deemed *related* to the California Action under local rules because both lawsuits revolve around allegations of copyright infringement based on the training of Stable Diffusion. (Mot. at 8.) Related cases are heard by the same judge, and so a transfer would further judicial economy even if the cases are not consolidated.

Getty also argues that the claims in this Action and the California Action do not *entirely* overlap, and that Defendants have sought dismissal of "all but one of [the] claims in the California Action." (Opp. at 2.) But the one claim—direct copyright infringement—is the primary claim in both actions, and the facts and law underlying that claim are substantially the same in both cases.[1] The plaintiffs in the California Action allege that Defendants are liable for "direct copyright infringement . . . by training the Stability Models, including Stable Diffusion 2.0 and Stable Diffusion XL 1.0." *Andersen v. Stability AI Ltd.*, No. 23-CV-00201-WHO, 2024 WL 3823234, at *2 (N.D. Cal. Aug. 12, 2024). Getty's claim of copyright infringement is

---

[1] The court in the California Action has now ruled on Defendants' motion to dismiss, which did not seek dismissal of the California plaintiffs' claim for direct copyright infringement. Needless to say, the claim for direct copyright infringement remains.

2

substantially similar, alleging that Defendants infringe its copyrights through "the training and development of Stable Diffusion." (Opp. at 7.) The issue in each case is whether Defendants have infringed the plaintiffs' copyrights by allegedly using their images to train Stable Diffusion. Transfer will conserve judicial time and resources by requiring just one court to develop familiarity with Stable Diffusion and the process of training Defendants' models. *See Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 733 (D. Del. 2012) (noting that assignment of similar cases to the same judge conserves judicial time and resources).

### B.      The Balance of Private Interests Strongly Favors Transfer

Defendants demonstrated in their opening brief that the *Jumara* factors favor transfer. Nothing in Getty's opposition undermines that analysis.

#### 1.      Factor 1: Plaintiff's Choice of Forum Should Be Given Minimal Weight.

Getty concedes that it has no connection to this district but argues that "a plaintiff's choice of a proper forum is a paramount consideration" regardless. (Opp. at 4-5.) Not so. The Third Circuit has held that "[w]hen a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference." *See In re 3M Co.*, No. 20-2864, 2020 WL 13924735, at *2 (3d Cir. Nov. 18, 2020) (citation omitted) (reversing a refusal to transfer because "the District Court placed too much weight on the Respondents' chosen forum"); *see also Blackbird Tech LLC v. Cloudflare, Inc.*, C.A. Nos. 17-283, 17-284, 2017 WL 4543783, at *5 (D. Del. Oct. 11, 2017) (finding plaintiff's choice of forum did "not merit 'substantial' or 'paramount' weight" because it had "no physical presence in that state"). Indeed, the presumption in favor of a plaintiff's forum applies with less force when it does not choose its home forum. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) ("When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's

favor 'applies with less force' . . . ."); *Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 289 (D. Del. 1986) ("A defendant's burden with respect to plaintiff's choice of forum is easier to meet where the plaintiff has not brought suit on its 'home turf.'"); *Amtrust at Lloyd's Ltd v. Lee*, No. 15-cv-1615 (KM)(JBC), 2016 WL 1464650, at *4 (D.N.J. Apr. 12, 2016) (same). Because Getty, a New York corporation with headquarters in Seattle, is not at home in Delaware, its choice of forum is entitled to less deference.

Getty claims that its choice of forum should nevertheless be afforded heavy deference because it "selected the forum for [a] legitimate reason," namely, because Stability AI, Inc. ("Stability US") is incorporated here. The cases on which Getty relies do not support its position. For example, Getty cites *McKee v. PetSmart, Inc.* for the proposition that "bringing suit against a corporation where it has incorporated[] is a rational and legitimate reason to choose to litigate in that state." C.A. No. 12-1117-SLR-MPT, 2013 WL 1163770, at *2 (D. Del. Mar. 20, 2013), *report and recommendation adopted*, 2013 WL 2456719 (D. Del. 2013). But in *McKee*, even though the defendant was incorporated in Delaware, the court ultimately held that plaintiff's "choice of forum is not given 'substantial' or 'paramount' consideration. Instead, lead plaintiff's choice of forum is given significantly reduced weight." *Id.* at *3. The fact that Stability US is incorporated in Delaware is even less relevant here, given that Getty does not identify any alleged infringement that occurred in Delaware. *See Cont'l Cas. Co. v. Am. Home Assur. Co.*, 61 F. Supp. 2d 128, 131 (D. Del. 1999) ("[T]he transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred." (citation omitted)).

Thus, Getty's choice of forum should be given minimal, or at best significantly reduced, weight. *See Memory Integrity, LLC v. Intel Corp.*, C.A. No. 13-1804-GMS, 2015 WL 632026, at

4

*3 (D. Del. Feb. 13, 2015) (finding plaintiff's choice of forum "weigh[ed] minimally against transfer" because of its minimal connection to Delaware).

### 2. Factor 2: Defendant's Choice of Forum Favors Transfer.

Getty appears to argue that Defendants' preference as to forum "weighs against transfer" but provides no support for that conclusion. (Opp. at 6-7.) The case that Getty cites found that the defendant's preference weighed *in favor* of transfer. *Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 760 (D. Del. 2012). A defendant's choice weighs in favor of transfer where it has "rational, legitimate reasons to support that preference." *Ross*, 2013 WL 5299171, at *10 (citation omitted). Defendants' preference is to litigate in California where there are multiple likely witnesses and because the California Action presents substantially overlapping allegations and issues. (Mot. at 2-3.) These are rational and legitimate reasons to prefer California. Getty asserts that "only about a quarter" of the Defendants' U.S. workforce is located in California (Opp. at 6), but that number has now grown to one third; more importantly, *none* of Defendants' U.S. workforce is based in Delaware. (Mot. at 3.)

Getty also argues that a party with international operations must show that litigating in Delaware would pose "a unique or unusual burden." (Opp. at 6.) This argument appears more relevant to the convenience of the parties than a defendant's preference, but either way, a unique or unusual burden is *not* required. *See Werner v. Hive Media Grp.*, LLC, C.A. No. 20-1176-LPS, 2021 WL 3662902, at *3-4 (D. Del. Aug. 18, 2021) (holding that convenience weighed in favor of transfer even though defendant failed to show litigating in Delaware would impose "unique or unusual hardship"). Moreover, Defendants *have* identified an unusual burden. Unless this case is transferred, Defendants will be forced to litigate the same issues in two different courts on different sides of the country at the same time. *Phoenix Ins. Co. Ltd. v. Teva Pharm. Indus. Ltd.*, 381 F. Supp. 3d 416, 424 (E.D. Pa. 2019) (highlighting the "burden [of]

litigating 'identical actions' in two different districts").

### 3. Factor 3: Where the Claims Arose Favors Transfer.

Getty argues that its claims relate not just to "training and development" but also "the dissemination of substantially similar images." (Opp. at 7.) These arguments only further demonstrate that this factor favors transfer. First, to the extent its claims relate to "training and development," Getty does not claim that any development or training occurred in Delaware. In contrast, Defendants have explained that some of the people involved in the development of Stable Diffusion are located in California. (Mot. at 3.) And second, to the extent Getty's claims relate to the "dissemination of substantially similar images," Getty does not identify any such image that was disseminated in Delaware. Instead, Getty merely argues that its "claims *may* have arisen anywhere that the various iterations of Stable Diffusion or Dream Studio have been made available and/or used." (Opp. at 7 (emphasis added).) Because there is no evidence that Getty's claims arose in Delaware, while some of those involved in the development of Stable Diffusion are located in California, this factor weighs in favor of transfer. *See In re 3M Co.*, 2020 WL 13924735, at *2 (reversing a refusal to transfer because the "District Court failed to meaningfully consider whether Respondents' claims arose outside of New Jersey").

Getty's reliance on *Microsoft Corp. v. Geotag Inc.* is misplaced. 847 F. Supp. 2d 675 (D. Del. 2012). There, the claim was one for declaratory judgment of non-infringement of a patent for an internet organizer for geographic information. *Id.* at 676. The court found that "the claim that is relevant here is the plaintiffs' claim that their activities do not infringe any valid patent held by the defendant," and these assertedly *non*-infringing activities happened wherever the internet was present. *Id.* at 678. Here, the plaintiff's claim is not one of *non*-infringement. Getty is alleging *infringement*, and such claims arise where acts of *infringement* occur. *See Smart Audio Techs., LLC*, 910 F. Supp. 2d at 730 ("[I]nfringement arises wherever someone has

6

committed acts of infringement . . . ."). Again, Getty does not claim that any alleged acts of *infringement*, such as the development and training of Stable Diffusion and the "dissemination of substantially similar images," occurred in Delaware. (Opp. at 7.)

4. **Factor 4: The Convenience of the Parties Heavily Favors Transfer.**

Contrary to Getty's arguments regarding convenience, a party incorporated in Delaware is not required to show a unique or unusual burden for this factor to weigh in favor of transfer. *See Werner*, 2021 WL 3662902, at *3-4 (holding that convenience weighed in favor of transfer even though litigating in Delaware did not impose "unique or unusual hardship"). Indeed, the case cited by Getty recognizes this. *See ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001) ("KLA is correct that its status as a Delaware corporation is not dispositive of the issues raised by the motion . . . ."). Moreover, Getty's argument does not apply to Stability AI, Ltd. ("Stability UK") because it is not incorporated in Delaware.

Getty also criticizes Defendants' assessment that it will be more convenient for Defendants to litigate in the same district as the California Action. But again, Getty mischaracterizes Defendants' arguments as being "grounded in the flawed assumption that this case will be consolidated." (Opp. at 8.) Consolidation is not necessary for a transfer to create efficiencies for Defendants, including for example, by allowing for greater coordination of discovery, eliminating the need to account for any differences in procedural or substantive law in two districts, and eliminating the need for local counsel in Delaware. (Mot. at 4-5.)

Finally, Getty asserts that it is "certainly not convenient for Getty Images to transfer this case to a district where it has no offices, documents or evidence." (Opp. at 9.) But Getty has not identified any offices, documents, or evidence in *this* district, and so it's unclear how Delaware would be more convenient than California. Moreover, Getty has employees in California who may have relevant knowledge but has not claimed to have employees in Delaware. (Mot. at 5-6.)

7

Because none of the parties have any physical presence in Delaware, but do have employees in California, and because of the convenience to Defendants of litigating in the same district as the California Action, this factor strongly favors transfer.

### 5. Factor 5: Witness Convenience Favors Transfer.

Defendants have identified several potential witnesses located in California, including employees of Getty and two former employees of Stability Services who participated in the development of Stable Diffusion.  (*Id*. at 5-7.)  Getty does not identify any potential witnesses in Delaware and instead argues that a greater percentage of Defendants' workforce is located closer to Delaware than to California, relying in part on employees located in the Midwest and in Europe for support.  (Opp. at 6-7, 10.)  But when a witness is thousands of miles from both districts, the fact that he or she is somewhat closer to one than the other has little relevance.  *See, e.g.*, *Take2 Techs. Ltd. v. Pac. Biosciences of Cal., Inc.*, C.A. No. 22-1595-WCB, 2023 WL 4930359, at *7 (D. Del. Aug. 2, 2023) (noting that witnesses located in Hong Kong would have to travel significant distances regardless of transfer).  Moreover, Getty does not dispute that Getty employees located in California are potential witnesses, and it does not identify any Getty employees or third parties in or near Delaware who may be potential witnesses.

Getty argues that the third parties identified by Defendants have not been shown to be "necessary" or unavailable, but "the inquiry in the Third Circuit is broad, and the court should examine 'all relevant factors to determine whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer.'"  *Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 334 (D. Del. 2009) (citation omitted) (finding that a court may consider location of witnesses even if not shown to be unavailable in the plaintiff's chosen forum); *see also Nat'l Prop. Invs. VIII v. Shell Oil Co.*, 917 F. Supp. 324, 328 (D.N.J. 1995) (determining that witness convenience weighed in

8

favor of transfer because non-party witnesses outside the subpoena power of the court "appear[ed] relevant" rather than necessary). Here, Getty asserts that its claims relate to the "development of Stable Diffusion," and the third parties identified by Defendants were involved in the development of Stable Diffusion models. (Opp. at 7; Mot. at 6.) Furthermore, Getty has not identified any potential third-party witnesses that would be available in Delaware but not in California. And so, this factor favors transfer. *See In re 3M Co.*, 2020 WL 13924735, at *2 (finding district court erred in its witness convenience analysis because it failed to consider that "3M identified a nonparty witness" in the district to which transfer was sought while "Respondents did not identify any witness that would be unavailable to testify" there).

### 6. Factor 6: Location of Books and Records Favors Transfer.

Getty argues that any purported inconvenience of producing documents in a different location is nonexistent in modern litigation, but the case law recognizes that courts nevertheless consider this factor as part of their analysis. *Sentient Sensors, LLC v. Cypress Semiconductor Corp.*, C.A. No. 19-1868 (MN), 2020 WL 3640065, at *6 (D. Del. July 6, 2020). This factor therefore favors transfer for the reasons explained in Defendants' opening brief. (Mot. at 7.)

## C. The Balance of Public Interests Strongly Favors Transfer

Getty agrees with Defendants that several of the public interest factors are neutral, namely the enforceability of the judgment and local interest factors. In addition, Getty makes no mention of the familiarity-with-state-law factor, and so concedes that this is also neutral. Getty's arguments regarding the remaining public interest factors are without merit. (Opp. at 11-12.)

### 1. Factor 8: Practical Considerations Strongly Favor Transfer.

This "Court has often cited the existence of related lawsuits in one of the fora at issue as being an important 'practical consideration' to be taken into account." *Ross*, 2013 WL 5299171, at *13; *Cashedge, Inc.*, 2006 WL 2038504, at *2 (same). Getty ignores this consideration by

9

mischaracterizing Defendants' position as being reliant on consolidation. As explained above, consolidation is not necessary for transfer to create efficiencies. *Supra* at 2. The existence of the related California Action, which raises substantially similar allegations and issues, weighs heavily in favor of transfer. (Mot. at 8.)

### 2. Factor 9: Court Congestion Favors Transfer.

Getty fails to meaningfully address court congestion, simply concluding that the District of Delaware and the Northern District of California are two of the busiest districts in the country. (Opp. at 1-2, 8.) But as noted in Defendants' opening brief, there were 666 weighted filings per judge in this Court, as compared to 486 weighted filings per judge in the Northern District of California, a difference of almost 30%. (Mot. at 9.) This factor favors transfer.

### 3. Factor 11: Public Policy of the Fora Is a Neutral Factor.

Getty argues that public policy encourages Delaware entities to resolve their disputes in Delaware courts, and because two of the Defendants are Delaware entities this factor weighs against transfer. But this policy "has generally only been considered relevant . . . where the parties on *both* sides of the dispute were Delaware corporations." *Pragmatus AV, LLC v. Yahoo! Inc.*, C.A. No. 11-902-LPS-CJB, 2012 WL 4889438, at *14 (D. Del. Oct. 15, 2012), *report and recommendation adopted*, 2013 WL 174499 (D. Del. Jan. 16, 2013). Indeed, the case on which Getty relies involved Delaware entities on both sides. *Ultravision Techs., LLC v. RMG Networks Holding Corp.*, C.A. No. 18-1333-CFC, 2019 WL 1985110, at *1 (D. Del. May 6, 2019). Getty is not a Delaware entity, and therefore, this factor is neutral.

## III. CONCLUSION

For the foregoing reasons, should the Court not dismiss this case for lack of personal jurisdiction, Defendants respectfully request that this case be transferred to the Northern District of California.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Joseph C. Gratz<br>Timothy Chen Saulsbury<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105-2482<br>(415) 268-7000<br><br>Allyson R. Bennett<br>Laura Gilbert Remus<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard<br>Los Angeles, CA, 90017-3543<br>(213) 892-5200<br><br>Aditya V. Kamdar<br>MORRISON & FOERSTER LLP<br>2100 L Street, NW, Suite 900<br>Washington, DC  20037<br>(202) 887-1500<br><br>August 19, 2024 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Michael J. Flynn*<br><br>_____<br>Jack B. Blumenfeld (#1014)<br>Michael J. Flynn (#5333)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>mflynn@morrisnichols.com<br><br>*Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 19, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Tammy L. Mercer, Esquire<br>Robert M. Vrana, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>1000 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Benjamin E. Marks, Esquire<br>Jared R. Friedmann, Esquire<br>Melissa Rutman, Esquire<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY  10153<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Brian Liegel, Esquire<br>WEIL, GOTSHAL & MANGES LLP<br>1395 Brickell Avenue, Suite 1200<br>Miami, FL 33131<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

/s/ *Michael J. Flynn*

Michael J. Flynn (#5333)