**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

GETTY IMAGES (US), INC.,

          Plaintiff,

      v.

STABILITY AI, LTD., STABILITY AI,
INC., and STABILITY AI US SERVICES
CORPORATION,

              Defendants.

C.A. No. 23-135 (JLH)

███████████████

REDACTED - PUBLIC VERSION
Filed August 21, 2024

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO**
**DEFENDANTS' RENEWED MOTION TO DISMISS**

Dated: August 12, 2024

OF COUNSEL:

Benjamin E. Marks
Jared R. Friedmann
Melissa Rutman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
benjamin.marks@weil.com
jared.friedmann@weil.com
melissa.rutman@weil.com

Brian G. Liegel
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Ave, Ste. 1200
Miami, Florida 33131
(305) 577-3180
brian.liegel@weil.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

      Tammy L. Mercer (No. 4957)
      Robert M. Vrana (No. 5666)
      1000 North King Street
      Wilmington, Delaware 19801
      (302) 571-6600
      tmercer@ycst.com
      rvrana@ycst.com

*Attorneys for Plaintiff Getty Images (US), Inc.*

## TABLE OF CONTENTS

**Page**

THE NATURE AND STAGE OF THE PROCEEDINGS...................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .............................................................1

STATEMENT OF FACTS ...........................................................................................................3

PROCEDURAL HISTORY..........................................................................................................4

ARGUMENT ...............................................................................................................................5

    I.    The Alter Ego Relationship Between Stability AI, Inc. and Stability AI, Ltd. Confers Jurisdiction Over Stability AI, Ltd. ....................................................5

    II.    Stability AI, Ltd. is Subject to Specific Jurisdiction in Delaware. ........................16

    III.    Stability AI, Ltd. Is Subject to Jurisdiction Under the Federal Long-Arm Statute. ....................................................................................................................19

CONCLUSION...........................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.)*,
    473 B.R. 525 (Bankr. D. Del. 2012) ....................................................................................11

*Blair v. Infineon Techs. AG*,
    720 F. Supp. 2d 462 (D. Del. 2010)..................................................................6, 11, 13, 15

*Cephalon, Inc. v. Watson Pharms.*,
    629 F. Supp. 2d 338 (D. Del. 2009)...................................................................................15

*Chatz v. World Wide Wagering, Inc.*,
    413 F. Supp. 3d 742 (N.D. Ill. 2019) ................................................................................13

*Conformis, Inc. v. Zimmer Biomet Holdings, Inc.*,
    No. CV 19-1528-RGA, 2022 WL 1909386 (D. Del. June 3, 2022) .......................................19

*Cuppels v. Mountaire Corp.*,
    No. CV S18C-06-009 CAK, 2020 WL 3414848 (Del. Super. Ct. June 18,
    2020) ..................................................................................................................................17

*Franklin Cap. Funding, LLC v. Austin Bus. Fin., LLC*,
    No. 22-10947, 2023 WL 3874311 (E.D. Mich. June 7, 2023) ..............................................11

*Genesis Bio Pharms., Inc. v. Chiron Corp.*,
    27 F. App'x 94 (3d Cir. 2002) .............................................................................................6

*Grootonk v. Labrie Env't Grp., LLC*,
    No.: 8:22-cv-01868-FWS-ADS, 2023 WL 5420299 (C.D. Cal. July 20, 2023) ...................20

*Harrison v. Soroof Int'l, Inc.*,
    320 F. Supp. 3d 602 (D. Del. 2018).....................................................................................6

*HMG/Courtland Properties, Inc. v. Gray*,
    729 A.2d 300 (Del. Ch. 1999)..............................................................................................6

*inno360, Inc. v. Zakta, LLC*,
    50 F. Supp. 3d 587 (D. Del. 2014)......................................................................................19

*L. Sch. Admission Council, Inc. v. Tatro*,
    153 F. Supp. 3d 714 (E.D. Pa. 2015) .................................................................................17

*L'Athene, Inc. v. EarthSpring LLC*,
    570 F. Supp. 2d 588 (D. Del. 2008)............................................................16, 17, 18

*Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents DMCC*,
    531 F. Supp. 3d 854 (S.D.N.Y. 2021).......................................................................8

*Merial Ltd. v. Cipla Ltd.*,
    681 F.3d 1283 (Fed. Cir. 2012)...............................................................................20

*Miramax Film Corp. v. Abraham*,
    No. 01 CV 5202(GBD), 2003 WL 22832384 (S.D.N.Y. Nov. 25, 2003) ..............14

*Mobil Oil Corp. v. Linear Films, Inc.*,
    718 F. Supp. 260 (D. Del. 1989).............................................................................15

*In re Mobile Telecommunications Techs., LLC*,
    243 F. Supp. 3d 545 (D. Del. 2017).....................................................................7, 10

*Novartis Pharms. Corp. v. Handa Neuroscience*,
    LLC, No. CV 21-645-LPS, 2022 WL 610771 (D. Del. Mar. 1, 2022)...................14

*Oliver v. Boston Univ.*,
    2000 WL 1091480 (Del. Ch. July 18. 2000)..........................................................15

*Pac. Biosciences of California, Inc. v. Oxford Nanopore Techs., Inc.*,
    No. CV 17-1353-LPS, 2019 WL 1789781 (D. Del. Apr. 24, 2019).......................12

*Pontiaki Special Mar. Enter. v. Taleveras Grp.*,
    No. CV 16-247-LPS, 2016 WL 4497058 (D. Del. Aug. 26, 2016) ...................12, 14

*Riot Games, Inc. v. Suga PTE, Ltd.*,
    No. 2:22-CV-00429-SPG-KS, 2023 WL 6881904 (C.D. Cal. Sept. 14, 2023).......13

*Rockwell Automation, Inc. v. EU Automation, Inc.*,
    No. CV 21-1162 (MN), 2022 WL 3576231 (D. Del. Aug. 19, 2022) ...............17, 18

*Round Rock Rsch. LLC v. ASUSTeK Computer Inc.*,
    967 F. Supp. 2d 969 (D. Del. 2013)..........................................................................7

*Rovi Corp. v. Haier Grp. Corp.*,
    No. 11–1140 (KAJ), 2013 WL 4534641 (D. Del. Aug. 23, 2013) ....................16, 17

*Shuker v. Smith & Nephew*,
    PLC, 885 F.3d 760 (3d Cir. 2018) ............................................................................6

*Sony Corp. v. Pace PLC*,
    No. 1:15-cv-00288-SLR, 2016 WL 593455 (D. Del. Feb. 12, 2016).....................20

*Parker v. Titan Mining (US) Corp. (In re Star Mountain Res., Inc.),*
No.: 2:18-bk-01594-DPC, 2022 WL 2294175 (Bankr. D. Ariz. June 22, 2022)......................7

*In re Stingray IP Sols., LLC,*
56 F.4th 1379 (Fed. Cir. 2023) ............................................................................20

*Sugartown Worldwide LLC v. Shanks,*
129 F. Supp. 3d 201 (E.D. Pa. 2015) ..........................................................................6

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE),*
No. 16–581–RGA–MPT, 2017 WL 896988 (D. Del. Mar. 7, 2017)................................12, 13

*Telenor Mobile Commc'ns AS v. Storm LLC,*
587 F. Supp. 2d 594 (S.D.N.Y. 2008)......................................................................6, 11

*Tigo Energy, Inc. v. SMA Solar Tech. Am. LLS,*
No. CV-22-915-GBW, 2023 WL 6990896 (D. Del. Oct. 23, 2023) ....................................16

*Toys "R" Us, Inc. v. Step Two, S.A.,*
318 F.3d 446 (3d Cir. 2003)..................................................................................18

*Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk,*
332 F.3d 188 (3d Cir. 2003)..................................................................................14

*UHS of Delaware, Inc. v. United Health Servs., Inc.,*
No. 1:12-CV-485, 2015 WL 539736 (M.D. Pa. Feb. 10, 2015) ........................................6

*United States v. Kindred Healthcare, Inc.,*
469 F. Supp. 3d 431 (E.D. Pa. 2020) ........................................................................15

*VoterLabs, Inc. v. Ethos Grp. Consulting Servs, LLC,*
No. 19-524-MAK, 2021 WL 4288506 (D. Del. Sept. 21, 2021)........................................14

*Winter-Wolff Int'l, Inc. v. Alcan Packaging Food & Tobacco Inc.,*
No. 05-2718 (DRH)(ETB), 2008 WL 11385822 (E.D.N.Y. July 18, 2008) ..........................9

**Statutes**

10 Del. C. § 3104(c)............................................................................................16

**Other Authorities**

Fed. R. Civ. P. 4(k)(2)..................................................................................3, 19, 20

## THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Getty Images (US), Inc. ("Getty Images"), one of the world's leading creators and distributors of digital content, has sued defendants Stability AI, Ltd. ("SAI Ltd."), Stability AI, Inc. ("SAI, Inc."), and Stability AI US Services Corporation ("SAI Services") (collectively, "Stability AI" or "Defendants") to obtain redress for Defendants' blatant disregard for its intellectual property rights. Stability AI has copied more than 12 million photographs from Getty Images' collection, along with the associated captions and metadata, without permission from or compensation to Getty Images, as part of its efforts to build a competing business. Getty Images filed its Second Amended Complaint ("SAC") on July 8, 2024, alleging claims under the Copyright Act, Lanham Act, and Delaware trademark and unfair competition laws. *See* D.I. 42. Defendants have moved to dismiss, contending only that this Court lacks personal jurisdiction over SAI Ltd. and that SAI Ltd. is a necessary party. D.I. 44. The motion should be denied.

## INTRODUCTION AND SUMMARY OF ARGUMENT

In 2020, SAI Ltd., a U.K. corporation, came to Delaware to establish SAI Inc. as its corporate parent for the sole purpose of raising funds in the U.S. to support its operations. The same individual—Emad Mostaque—is the founder of both entities, until recently served as CEO of both entities, and, when the infringing activities at the heart of this lawsuit began, was their sole director. Operating through SAI Inc.—which has no employees of its own—officers and employees of SAI Ltd. raised vast sums from U.S. investors, while taking advantage of U.S. and Delaware tax and securities laws for their fundraising efforts. They used those funds for the benefit of SAI Ltd., including to fund the infringing acts at issue. Mr. Mostaque and SAI Ltd. personnel under his supervision directed the use (or misuse) of the funds raised through SAI Inc. On numerous occasions, Mr. Mostaque and his wife used company funds for their own personal benefit, repaying the monies taken only years later. In 2023, SAI Ltd. officers and employees (again acting through

1

SAI Inc.) set up another Delaware corporation, SAI Services, to employ remote employees scattered throughout the U.S. who had been providing services to SAI Ltd. through a third party, in furtherance of the infringing acts at issue.

Having intentionally availed themselves of the laws and legal protections of Delaware, Defendants now claim that SAI Ltd. is not subject to personal jurisdiction here and that it would somehow offend due process to expect SAI Ltd. to defend against claims in Delaware. The Court should reject this meritless position. SAI Ltd. is plainly subject to jurisdiction as the alter ego of SAI Inc., which is incorporated here and thus is indisputably subject to general personal jurisdiction. SAI Inc. is not a real separate company; it has operated with SAI Ltd. as one entity. SAI Ltd.'s own public filings admit that SAI Inc. "does not have any trading activities of its own" and instead operates as part of a "Group" "under the leadership of personnel employed by" SAI Ltd.[1] SAI Inc. has no employees of its own, has overlapping directors with SAI Ltd., shares the same London office space, email domain, and website with SAI Ltd., and was so insignificant that Delaware voided its corporate charter in 2022 for failure to pay required taxes.

Defendants try to defeat personal jurisdiction over SAI Ltd. by contending that the companies observe corporate formalities such as separate board meetings and minutes. But whether they do so *now* is irrelevant to the jurisdictional inquiry. In his declaration (D.I. 47), Peter O'Donoghue is notably silent about when observation of those formalities began. That is because the jurisdictional discovery record conclusively establishes the lack of corporate formalities when the infringing activities that led to suit began and at the time SAI Ltd. was sued in March 2023. That is the relevant time period for the jurisdictional inquiry, and Defendants cannot use the period *after* the suit was filed to clean up their act and divest this Court of jurisdiction. Despite its creation in 2019,

---

[1] *See* O'Donoghue Dep. Ex. 6, SAI Ltd.'s Financial Statement for the period ended Dec. 31, 2022 (Ex. A) at 4. Citations to "Ex. __" are to the Declaration of Robert Vrana, filed contemporaneously.

SAI Ltd. had just a *single* minuted board meeting prior to being sued in this case in 2023. SAI Inc. did not have minuted meetings at all until September 2022, well after the first funding round took place and the infringement had already commenced. Moreover, while Defendants now tout their board minutes as examples of corporate formalities, the actual documents routinely refer to the two companies interchangeably, revealing that their board members could not keep them straight. The blurred corporate lines and confusion as to which company is which are textbook for alter egos.

Beyond the alter ego relationship, SAI Ltd. is subject to specific personal jurisdiction based on its conduct in Delaware, and the conduct of its agents, SAI Inc. and SAI Services. The law and the facts do not permit SAI Ltd. to set up a Delaware shell company to raise money to fund infringement, set up another Delaware company to employ its workers in the U.S., sell its products and services in Delaware, and then escape jurisdiction here. There is no real dispute that SAI Ltd. could fairly anticipate being haled into court here, and doing so plainly satisfies due process.

Finally, the Court should reject Defendants' attempt to escape jurisdiction here under Fed. R. Civ. P. 4(k)(2) by voluntarily consenting to jurisdiction in California. Rule 4(k)(2) does not permit the negation of jurisdiction in the plaintiff's chosen forum just by offering to submit to jurisdiction in some other district it prefers. SAI Ltd. does not have, and has never had, an office in California, and it has contested that it is subject to personal jurisdiction there in other cases.

## STATEMENT OF FACTS

Getty Images has curated a collection of hundreds of millions of premium quality visual assets. SAC ¶ 3. Getty Images makes these visual assets available to customers throughout the world and in this District via websites, such as www.gettyimages.com and www.istock.com. *Id*. ¶ 4. The visual assets on Getty Images' websites are accompanied by: (i) titles and captions which are themselves original and creative copyrighted expression; (ii) watermarks with credit information and content identifiers designed to deter infringing uses of the content; and (iii) metadata containing

other copyright management information. *Id*. Getty Images' visual assets are highly desirable for use in connection with artificial intelligence and machine learning because of their high quality, and because they are accompanied by content-specific, detailed captions and rich metadata. *Id*. ¶ 6.

Mr. Mostaque founded SAI Ltd. in 2019. *Id*. ¶ 8; SAI Ltd.'s Supp. Resp. to Interrogatories, No. 1 (Ex. B). To train various iterations of an image-generating model called Stable Diffusion that uses artificial intelligence to deliver computer-synthesized images in response to text prompts, SAI Ltd. scraped many millions of copyrighted images and their captions and metadata from Getty Images' websites. SAC ¶ 11. SAI Ltd.'s image-generating offerings, including Stable Diffusion and DreamStudio, are available to and generate revenue from internet users in Delaware and elsewhere through its website. Ex. B., No. 3; O'Donoghue Tr. (Ex. C) 240:4-241:13.

In October 2020, SAI Ltd. created a Delaware corporation, SAI Inc., to take advantage of U.S. and Delaware tax and securities laws and fund the U.K. entity's operations. *See* SAI Inc.'s Supp. Resp. to Interrogatories, No. 1 (Ex. D); Ex. C 56:12-57:3; Ex. E. SAI Inc. has no employees, no offices other than the same London office SAI Ltd. occupies, and no day-to-day operations, or any real function other serving as a "holding company" to raise money for SAI Ltd. D.I. 18 ¶¶ 4, 6, 13; Ex. B., No. 1; Ex. D., No. 1; Ex. A at 4; Ex. C 18:20-23. SAI Inc. has managed to raise vast sums of money for SAI Ltd. and applied to the Y Combinator, a start-up funder, without having any employees because the employees, officers, and directors of SAI Ltd. performed all of the necessary tasks for it to do so. D.I. 28 ¶¶ 11, 13; Ex. C 145:23-146:10.

## PROCEDURAL HISTORY

Getty Images filed its original complaint against SAI, Inc. on February 3, 2023. Getty Images amended its complaint on March 29, 2023 to add SAI Ltd. as a defendant. *See* D.I. 13. SAI Ltd. moved to dismiss for lack of personal jurisdiction. *See* D.I. 16. Over the next several months, Defendants resisted basic jurisdictional discovery requests concerning the alter ego issue, such as

4

Getty Images' requests for board minutes. *See* D.I. 25 at 2. Although the Court granted Getty Images' motion to compel additional discovery (D.I. 30), Defendants yet again refused to provide relevant documents such as board agendas, board presentations, and investor pitches that almost certainly would have further evidenced their failure to distinguish between the entities, forcing a second motion to compel (D.I. 32). Although that motion remains pending (D.I. 52), to move the case forward, Getty Images filed the Second Amended Complaint, which contains additional jurisdictional allegations based on the jurisdictional discovery it did receive. D.I. 42. The Second Amended Complaint also added SAI Services, a Delaware corporation formed after the filing of the First Amended Complaint to further Stability AI's infringing scheme. SAC ¶ 26. Despite discovery confirming that SAI Ltd. is subject to personal jurisdiction in Delaware, Defendants have now moved again to dismiss for lack of personal jurisdiction over SAI, Ltd. D.I. 44. Defendants' motion does not challenge the merits of Getty Images' claims, nor do they dispute that, as Delaware corporations, SAI Inc. and SAI Services are both subject to general personal jurisdiction here.

## ARGUMENT

This Court has jurisdiction over SAI Ltd. for three reasons. *First*, SAI Inc. and SAI Ltd. are alter egos. *Second*, specific jurisdiction is appropriate over SAI Ltd. both because it is responsible for Delaware contacts of its agents and because this litigation concerns actions it has directed towards Delaware. *Third*, personal jurisdiction is appropriate under the federal long-arm statute.

## I.    The Alter Ego Relationship Between Stability AI, Inc. and Stability AI, Ltd. Confers Jurisdiction Over Stability AI, Ltd.

SAI Ltd. and SAI Inc. are alter egos. They share a common founder, Mr. Mostaque, who until recently was the CEO and "ultimate controlling party" of both companies. Ex. C 127:21-128:14. SAI Inc.'s *sole existence* is as "the corporate entity through which the Stability AI corporate group raises capital from outside investors." D.I. 18 at ¶ 13; *see also* Ex. C 45:22-46:5 (affirming the

5

statement "remains true"). As such, SAI Inc., which has no employees, has been operated not for its own benefit but instead for the benefit of SAI Ltd. and the broader Group (which is operated by employees of SAI Ltd.). Ex. A. at 4. Piercing the corporate veil to find jurisdiction over SAI Ltd. is appropriate where, as here, a parent and subsidiary "operate as a single economic entity[.]" *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 614 (D. Del. 2018) (citations omitted). The "standard for finding a shareholder to be an alter ego for purposes of personal jurisdiction is a less stringent standard than that necessary to pierce the corporate veil for purposes of liability." *Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 619 (S.D.N.Y. 2008); *see also Sugartown Worldwide LLC v. Shanks*, 129 F. Supp. 3d 201, 205 (E.D. Pa. 2015) (similar).

As discussed below, jurisdictional discovery has confirmed that many of the non-exclusive factors courts consider to answer this question are present and, accordingly, the Court has personal jurisdiction over SAI Ltd. as SAI Inc.'s alter ego.[2] *See Genesis Bio Pharms., Inc. v. Chiron Corp.*, 27 F. App'x 94, 98 (3d Cir. 2002) (The "relevant jurisdictional inquiry" is whether the "subsidiary and the parent so operate as a single entity, or unified and cohesive economic unit, that when the parent is within the venue of the court, the subsidiary is also within the court's jurisdiction."); *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (similar); *UHS of Delaware, Inc. v. United Health Servs., Inc.*, No. 1:12-CV-485, 2015 WL 539736, at *15-16 (M.D. Pa. Feb. 10, 2015); *HMG/Courtland Properties, Inc. v. Gray*, 729 A.2d 300, 308 (Del. Ch. 1999).

***Failure to observe corporate formalities and absence of corporate records.*** In a sworn declaration, one of Stability AI's co-founders, Cyrus Hodes, admitted "Stability US and Stability UK did not observe corporate formalities during [his] tenure at the company," which ran through May

---

[2] These factors are: (1) gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporations at the time; (5) siphoning of the corporation's funds; (6) absence of corporate records; and (7) whether the corporation is merely a facade. *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 470–71 (D. Del. 2010).

2022. Ex. F ¶ 7. He explained that the "two corporate entities operated and presented themselves as one single entity, and they did not have separate board meetings, ownership or employees." *Id*.

Jurisdictional discovery obtained directly from Defendants confirms Mr. Hodes' first-hand account. In their brief, Defendants attempt to overcome their past failure to observe corporate formalities with a declaration from Mr. O'Donoghue that they *now* "hold separate board meetings" and "keep separate minutes." *E.g.* Mot. 11 (citing O'Donoghue Decl. at ¶¶ 9, 13-14). But they make no effort to establish that they did so *at the relevant time—i.e.*, during the conduct leading up to and at the filing of the amended complaint in March 2023. *See Mobile Telecomms. Techs., LLC v. Bright House Networks, LLC (In re Mobile Telecomms. Techs., LLC)*, 243 F. Supp. 3d 545, 552 (D. Del. 2017) ("Courts must consider the existence of personal jurisdiction on the basis of the facts as they existed at the time the complaint was filed" and the "focus [ ] must be on pre-complaint activity between [potential alter egos]."); *Round Rock Rsch. LLC v. ASUSTeK Computer Inc.*, 967 F. Supp. 2d 969, 974 (D. Del. 2013) ("[T]he existence of personal jurisdiction is evaluated at the time the complaint was filed.").[3] The record clearly shows that Defendants did not. Although SAI Ltd. was formed in 2019, it had just one minuted board meeting (attended only by Mr. Mostaque) before Getty Images filed suit in March 2023. *See* Composite Ex. G (composite exhibit of all SAI Ltd. minutes produced in discovery). SAI Inc. did not have a single minuted meeting until September 2022, after much of the copying supporting Getty Images' infringement claims occurred. *See* Ex. C 161:1-16. There is no evidence that other board meetings occurred because, as SAI Ltd.'s witness explained, "they would not be proper meetings if there were no minutes." *Id*. 85:7-11. That Defendants may have begun holding separate meetings and keeping separate minutes more recently

---

[3] *See also Parker v. Titan Mining (US) Corp. (In re Star Mountain Res., Inc.)*, No.: 2:18-bk-01594-DPC, 2022 WL 2294175, at *11 (Bankr. D. Ariz. June 22, 2022) ("A general review of alter ego cases suggests that the pertinent time to analyze the alleged alter ego relationship is at the time the transaction occurred and/or the liability arose.").

cannot divest this Court of personal jurisdiction it had over SAI Ltd. when Getty Images sued.

In any event, the minutes upon which Defendants rely undercut their contention that SAI Inc. and SAI Ltd. have operated as separate companies. Those minutes routinely confuse the entities, showing that the board members considered them to be a single company. For example:



As other courts have held, such "blurred lines of corporate control" weigh in favor of a finding of alter ego for personal jurisdiction purposes. *Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents*

*DMCC*, 531 F. Supp. 3d 854, 860 (S.D.N.Y. 2021).[4]

These repeated failures to distinguish between SAI Inc. and SAI Ltd. are unsurprising given that the two companies had overlapping officers and directors. Defendants share a common founder and former CEO. Mr. Mostaque was also the sole director of SAI Ltd. long prior to this suit and until June 2023. *See* Ex. C 26:16-21; 57:4-10; Ex. B, No. 8. In addition to his roles with SAI Ltd., Mr. Mostaque also served during the relevant period as President, CEO, CFO, and Secretary of SAI Inc. Ex. D, No. 2. In fact, in August 2022, when Defendants launched DreamStudio on the backs of millions of copyrighted images scraped without permission from Getty Images, Mr. Mostaque was the sole director of both SAI Ltd. and SAI Inc. Ex. C 107:4-108:5. They also have overlapping internal and external legal counsel. *See, e.g.*, Exs. G at 1 & L (identifying Adam Chen as Deputy General Counsel of both companies).

Just as Defendants' board minutes repeatedly confuse the two companies, Defendants' efforts to identify their overlapping officers and directors in discovery responses reflect substantial confusion over whether Defendants have officers and, if so, who they are. In the same verified document, SAI Ltd. claimed both that it has no officers and that "Peter O'Donoghue [is] the Chief Financial Officer and a member of the Board of Directors of Stability AI Ltd." Ex. B, No. 8 & p. 27. SAI Inc. also contemporaneously identified both Mr. O'Donoghue and Mr. Mostaque as its CFO. D.I. 18 ¶ 1; Ex. D, No. 2. Defendants' confusion over their officers' identities indicates that the roles are insignificant and that they did not distinguish between entities at the relevant time.[5]

---

[4] The blurred lines described in these minutes distinguishes the situation here from *Winter-Wolff Int'l v. Alcan Packaging Food & Tobacco Inc*, where plaintiff made "only the allegation that since the acquisition neither board has met." No. 05-2718 (DRH)(ETB), 2008 WL 11385822, at *6 (E.D.N.Y. July 18, 2008) (Mot. 11).

[5] Further reflecting the lackadaisical approach to corporate formalities at SAI Inc., as noted above, its corporate charter was voided for non-payment of taxes and/or failure to file a complete annual report in 2022. O'Donoghue Dep., Ex. 2 (Ex. N).

*Façade for the operations of the dominant stockholder.* In addition to his overlapping roles during the relevant period, Mr. Mostaque has been "the ultimate controlling party" of SAI Ltd. "by virtue of his majority voting rights in Stability AI, Inc." Ex. C 127:21-128:14. Given Mr. Mostaque's dual roles, complete control over both entities during the relevant period, and regular siphoning of funds for personal use, it is no surprise that SAI Inc. is merely a façade for the operations of SAI Ltd. SAI Inc. has no trading activities of its own and is a "holding company" "through which the Stability AI corporate group raises capital from outside investors." D.I. 18 ¶¶ 4, 6, 13. Defendants present themselves publicly as a single enterprise (or "Group") for which each member—including SAI Inc.—"operate[s] under the leadership of personnel employed by" SAI Ltd. Ex. A at 4; *see* Ex. C 18:18-23 (testifying that, while acting as CFO for the group, his "employment contract is with Stability AI Ltd." because "Stability AI Inc. does not have employees"), 18:20-20:9; Ex. A at 24 (referring to the "Group's Board of Directors"). Indeed, despite SAI Inc.'s raising over $75 million in funding in 2022 alone and continuously conducting fundraising activities, Mr. O'Donoghue admitted that the fundraising activities are actually "by definition" conducted by "employees of Ltd." Ex. C 145:23-146:10. While SAI Ltd. did this work, there was not even a draft management services agreement or similar document between the companies until *after* this suit commenced,

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Defendants'

attempts to clean up their compliance by formalizing a services agreement after the fact (Mot. 8) only highlight their prior failings and cannot divest this Court of jurisdiction it already had over SAI Ltd. *Compare* Mot. 10-12 *with In re Mobile Telecomms. Techs., LLC*, 243 F. Supp. at 552.

As courts in this District have confirmed, describing entities as one corporate "Group" to refer to entities under direct control coupled with the representation that one entity carries out the

"group's management and corporate functions" is indicative of an alter ego relationship. *See Blair*, 720 F. Supp. 2d at 471-72 ("single entity" test met where, among other things, the defendant "used the term 'Infineon Group' in its most recent 2009 corporate profile to refer to entities under its direct control, including the [alleged alter egos]" and stated that the defendant "is the parent company of the Infineon Group and carries out the group's management and corporate functions"). The presence of alter ego here is even clearer because SAI Inc. cannot act on its own and instead completely relies upon SAI Ltd. employees and officers to act for it. As Mr. O'Donoghue testified, SAI Ltd.'s executive leadership team not only does the fundraising for SAI Inc. but also has the control to decide how to use all funds raised by SAI Inc. Ex. C 244:2-21. *See, e.g.*, *Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.)*, 473 B.R. 525, 558-59 (Bankr. D. Del. 2012) ("significant control over a subsidiary's operations and finances" established "façade" factor); *Franklin Cap. Funding, LLC v. Austin Bus. Fin., LLC*, No. 22-10947, 2023 WL 3874311, at *6 (E.D. Mich. June 7, 2023) (alter ego jurisdiction sufficiently alleged where "Austin and MXT share principal offices and functionally share staff, and MXT has no employees of its own but instead relies on Austin employees to act on MXT's behalf"); *Telenor*, 587 F. Supp. 2d at 620 (entities were alter egos for jurisdictional purposes where they were "shell companies that existed solely for purpose of holding [alter ego's] interest").

Real world examples of Defendants operating as one single entity abound. In March 2021, "Stability AI" applied to participate in the Y Combinator program. *See* Ex. O. Its application identified itself as a "Delaware C Corp" (*i.e.*, SAI Inc.) but then described its activities as being "focused on using humans & AI to answer some of the most valuable questions out there, which in turn we can charge for" (*i.e*, the activities of SAI Ltd.). *Id*. at 9, 11; *compare* D.I. 18 ¶ 13 (describing SAI Ltd.'s activities). Like its board minutes that repeatedly refer to SAI Ltd.'s activities as its own,

11

*supra* p.8*,* this application likewise shows that SAI Inc. considers SAI Ltd.'s activities to be its own.

Relatedly, Defendants represent themselves as one entity called "Stability AI" in their investor presentations. One pitch deck refers to the entities only as "Stability AI." *See* Ex. P. Additionally, a leaked slide from the October 2022 Series A investment that SAI Inc. conducted for SAI Ltd.'s benefit illustrates that investors were sold on the assertion that Stability AI "co-create[s] community products" and has a "process" to develop AI with different partners. *See* Ex. Q. Of course, SAI Inc. does none of that (and has no employees to do so). *E.g.* Ex. C 208:7-17. So, the slide deliberately misleads investors into thinking they are investing into a Delaware entity that has SAI Ltd.'s (or the "Group") AI activities, and not a mere shell company with no activities.[6]

Defendants' shared website, https://stability.ai, also repeatedly fails to distinguish between them. A June 2024 funding announcement states: "Stability AI, a leading imaging, language, code and audio generative AI company, today announced it has closed an initial round of investment from a world-class investor group,"—again referring both to SAI Inc.'s fundraising activities and SAI Ltd.'s AI offerings as being completed by the same entity. Ex. R. And, the website also directs potential remote employees to a Careers page, which posts job openings in the U.S. without explaining which "stabilityai" entity is hiring. *See* Ex. S.[7] In light of this substantial evidence that there is no distinction between the companies and that SAI Inc. is a mere façade, it is telling the Motion simply asserts the opposite without a single citation. Mot. 12.

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, No. 16–581–RGA–MPT, 2017 WL 896988 (D.

---

[6] Defendants' conduct of coming to Delaware to set up a company to finance for the "Group" is likewise relevant to the fraud and injustice component of the analysis discussed *infra*.

[7] *See Pontiaki Special Mar. Enter. v. Taleveras Grp.*, No. CV 16-247-LPS, 2016 WL 4497058, at *4 (D. Del. Aug. 26, 2016) (evidence defendants' "website appears to present the group as a single entity" supported alter ego); *Pac. Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*, No. CV 17-1353-LPS, 2019 WL 1789781, at *2 (D. Del. Apr. 24, 2019) (alter ego factors pled where entities shared high-level officers, headquarters, internal and external legal counsel, and a website with a unified contact point for employment inquiries, product information, and news updates).

Del. Mar. 7, 2017) (Mot. 12-13) does not help Defendants. The court there found the plaintiffs' allegations that the Expedia entities "refer to themselves as 'Expedia, Inc.' collectively as one entity on marketing and promotional materials" were "sufficient facts to establish two of the eight factors" of the alter ego test. *Id*. at *5. While other factors weighed against a finding of alter ego in *Expedia*, Getty Images' strong showing on these factors, coupled with other evidence discussed herein, warrants a holding that SAI Ltd. is SAI Inc.'s alter ego or, at a minimum, had been at the relevant times for this litigation. *See Blair*, 720 F. Supp. 2d at 471-72 (holding "single entity" test satisfied).

**Siphoning of funds and undercapitalization.** The money raised by SAI Inc. funds SAI Ltd.'s activities and is used at SAI Ltd.'s discretion. Ex. C 244:2-21. SAI Ltd. is not cash flow positive, and depends on these cash infusions from SAI Inc. to operate. *See* Ex. A at 2, 8; Ex. C 47:19-48:11. As of December 2022, SAI Ltd. owed SAI Inc. over $28 million, and its liabilities exceeded its assets. Ex. C 104:9-105:3. This included routine payments from SAI Inc. to fund SAI Ltd.'s contract ██

████████████████████████████████████████████████████████████████████

SAI Ltd. (and the "Group") cannot survive without the funds it receives from SAI Inc., and SAI Inc.'s only purpose is to generate money for SAI Ltd. In these circumstances, where the "only purpose" of a Delaware entity is "to serve as a conduit for transfers of money," courts find an alter ego relationship. *See Chatz v. World Wide Wagering, Inc.*, 413 F. Supp. 3d 742, 757 (N.D. Ill. 2019) (applying Delaware law); *Riot Games, Inc. v. Suga PTE, Ltd.*, No. 2:22-CV-00429-SPG-KS, 2023 WL 6881904, at *10 (C.D. Cal. Sept. 14, 2023) (alter ego relationship existed when money into one entity was a benefit to "everyone" in corporate group).[8] While Defendants purport to document the existence of loans, they share a London office space, which is paid for entirely by SAI Ltd. without

---

[8] *VoterLabs, Inc. v. Ethos Grp. Consulting Servs, LLC*, No. 19-524-MAK, 2021 WL 4288506, at *6 (D. Del. Sept. 21, 2021) (Mot. 11) is not to the contrary as, while the company could obtain intercompany loans to fulfill obligations, the evidence adduced showed it had its own employees, separately generated its own revenue, and was not "a mere shell," unlike SAI Inc.

repayment or contribution by SAI Inc. Ex. C 131:25-132:2. *See Taleveras Grp.*, 2016 WL 4497058, at *4 (siphoning of funds factor sufficiently pled where there was transfer of business and customers without consideration.). Relatedly, as publicly reported, Mr. Mostaque and his wife routinely used these funds as their personal piggy bank, only to set up a plan for repayment later on. *See* Ex. T (Forbes article entitled "The AI Founder Taking Credit for Stable Diffusion's Success Has a History of Exaggeration"); Ex. C 99:4-101:12 (confirming this repeated siphoning occurred).

***Element of Injustice and Due Process.*** Last, Defendants wrongly claim that Getty Images must establish Defendants perpetrated a fraud. *See* Mot. 9-10. Because Getty Images seeks to pierce the corporate veil "for purposes of obtaining jurisdiction" the standard is "less stringent" such that where, as here, the "corporation is merely a shell, the corporate veil may be pierced to impute jurisdiction even without a showing that the shell was used to perpetuate a fraud." *Miramax Film Corp. v. Abraham*, No. 01 CV 5202(GBD), 2003 WL 22832384, at *7 (S.D.N.Y. Nov. 25, 2003).

Even if Getty Images were required to make this showing, Defendants misstate the standard. While piercing the corporate veil for liability "must present an element of injustice or fundamental unfairness," that unfairness can be demonstrated with reference to the *Pearson* factors, and "does not require proof of actual fraud." *Trs. of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003); *see also Novartis Pharms. Corp. v. Handa Neuroscience*, LLC, C.A. No. 21-645-LPS, 2022 WL 610771, at *7 (D. Del. Mar. 1, 2022) ("[A]n absence of fraud is not 'fatal' to an effort at veil-piercing. Rather, the presence of a number of the above factors can establish that an injustice or unfairness exists and justifies veil piercing."). Defendants' own records establish that SAI Ltd. came to Delaware to set up a funding arm for the entire Group's infringement, and it is dependent on SAI Inc.'s cash infusions to fund its operations and pay critical contractors ███████████████. *Supra* p.13. It then set up another Delaware entity, SAI

Services, to employ the Group's U.S.-based employees (using funds from SAI Inc.). Defendants use their Delaware connection when it is to their benefit in incorporation, fundraising, and submitting their Y Combinator application, and they should not be permitted to disclaim it when asked to answer for their conduct here. Because SAI Ltd. and SAI Inc. have commingled their business relationships repeatedly, they should not be able to escape full liability by claiming they now operate as separate entities. *See Blair*, 720 F. Supp. 2d at 473 (plaintiffs sufficiently alleged injustice element where defendants misdirected funds, exercised crippling control over alter ego, and siphoned profits to other subsidiary).[9]

Further, the direct actions by SAI Ltd. in Delaware and millions of dollars in benefits it has received from SAI Inc.'s incorporation here also satisfy due process. *See id*. By creating a Delaware company to fund its infringing operations and another to employ its U.S.-based employees, SAI Ltd. can hardly claim surprise at being haled into court here to answer for its conduct. *See Cephalon, Inc. v. Watson Pharms.*, 629 F. Supp. 2d 338, 439 (D. Del. 2009); *Oliver v. Boston Univ.*, 2000 WL 1091480, *12 (Del. Ch. July 18. 2000) (alter ego's "alleged active role establishes the requisite 'minimum contacts' with Delaware").[10] This is particularly the case where SAI Ltd. admits that its employees handle SAI Inc.'s fundraising, dictates the use of those funds, and receives all services of SAI Services' employees. Ex. C 145:23-146:11, 244:2-21. For all the foregoing reasons, SAI Ltd. is subject to personal jurisdiction under an alter ego theory.

---

[9] *See United States v. Kindred Healthcare, Inc.*, 469 F. Supp. 3d 431, 454–55 (E.D. Pa. 2020) (injustice met where failure to hold defendants liable would prevent full recovery because alter egos depended on defendants, and defendants "treated the funds of one entity as the funds of another").

[10] Defendants rely on *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 267 (D. Del. 1989) (Mot. 9-10), but fail to mention that there the injustice element was not met because the Delaware entity did not exist until five years *after* the allegedly infringing conduct. *See id*. at 270. SAI Inc. is integral to the infringing conduct here, and established before relevant actions occurred.

## II.     Stability AI, Ltd. is Subject to Specific Jurisdiction in Delaware.

Specific jurisdiction over SAI Ltd. is proper where the Delaware long arm statute and due process concerns are satisfied. *See L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d 588, 593 (D. Del. 2008). Jurisdiction is proper where a nonresident "in person or through an agent: (1) Transacts *any* business or performs any character of work or service in the State; (2) Contracts to supply services or things in this State; [or] (3) Causes tortious injury in the State by an act or omission in this State." 10 Del. C. § 3104(c). Due process is satisfied "when a defendant has both purposefully directed its activities at residents of the forum State and the action arises from, or is directly related to, the defendant's actions within the forum State." *L'Athene*, 570 F. Supp. 2d at 593. "Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper. Different results should not be reached simply because business is conducted over the Internet." *Id.*

SAI Inc.'s and SAI Services' contacts are relevant to the specific jurisdiction analysis because both operate as agents of SAI Ltd.[11] As explained above, SAI Ltd. reached into Delaware to form SAI Inc. as the entity through which SAI Ltd. funds its operations, and SAI Services exists to employ individuals in the U.S. who provide SAI Ltd. with services used to develop, maintain, and promote its infringing products. D.I. 18 at ¶ 13; Ex. C 74:2-10; Ex. D, 2d Supp. No. 7. Each acts solely on SAI Ltd.'s behalf and at its direction and, given overlap in directors and officers at the relevant time, there are no employees or officers to push back on the domination by SAI Ltd. *See* § I; *Rovi Corp.* 2013 WL 4534641, at *3 (personal jurisdiction based on an agency theory existed where parties had overlapping directors and parent controlled actions of subsidiary); *Cuppels v. Mountaire*

---

[11] The factors relevant to an agency are similar to alter ego. *See Rovi Corp. v. Haier Grp. Corp.*, No. 11–1140 (KAJ), 2013 WL 4534641, at *3 (D. Del. Aug. 23, 2013). Evidence of "total domination" is not required. *Tigo Energy, Inc. v. SMA Solar Tech. Am. LLS*, No. 22-915-GBW, 2023 WL 6990896, at *8 (D. Del. Oct. 23, 2023).

*Corp.*, No. CV S18C-06-009 CAK, 2020 WL 3414848, at *11 (Del. Super. Ct. June 18, 2020) (personal jurisdiction established through agency where evidence showed foreign entity controlled domestic entity, had overlapping directors, and profits from Delaware operations were sent to foreign entity).

SAI Ltd. is also subject to personal jurisdiction in Delaware based upon its own contacts. It has intentionally conducted business in Delaware by offering its online services here and benefiting from related sales. While the "mere operation of a commercially interactive website is not by itself a sufficient basis for jurisdiction anywhere the site can be viewed," courts have found Delaware's long-arm statute and due process satisfied, where there was evidence that a defendant provided a product or service to Delaware residents and profited therefrom. *See, e.g.*, *L'Athene*, 570 F. Supp. 2d at 593-94 (despite having no office or employees in Delaware, specific personal jurisdiction appropriate because "defendants operated a website accessible in Delaware, received orders and payments from customers in Delaware and shipped their products to Delaware"); *Rockwell Automation, Inc. v. EU Automation, Inc.*, No. 21-1162 (MN), 2022 WL 3576231, at *3 (D. Del. Aug. 19, 2022) ("[Defendant] purposefully availed [itself] of doing business with Delaware, which is shown through [its] conducting business with Delaware residents and knowingly shipping products to the State."); *L. Sch. Admission Council, Inc. v. Tatro*, 153 F. Supp. 3d 714, 720-21 (E.D. Pa. 2015) (establishing jurisdiction where residents of the forum made repeated purchases from defendant's website).

Here, there is no dispute that Defendants' infringing services are made available to Delaware users through the DreamStudio and Stable Diffusion products. SAC ¶ 35; Ex. B, No. 3. Defendants have attempted to contradict this by stating Getty Images doesn't allege that SAI Ltd. "performed any of the allegedly infringing training of Stable Diffusion in Delaware." Mot. 7. This ignores

17

allegations about SAI Ltd.'s use of the forum to fund its operations (through SAI Inc.) and employ its U.S. workforce (through SAI Services). Further, Defendants say that Getty Images "doesn't allege that [SAI Ltd.] contracted to supply relevant services or things in Delaware." *Id.* The facts are otherwise. Even the limited jurisdictional discovery provided makes clear SAI Ltd. realized revenue in 2022 from persons in Delaware, that DreamStudio has ██████ users in Delaware, and that additional Delaware revenue is likely to exist. *See* Ex. B, No. 3 and 2d Supp. No. 2. While this only represents a portion of SAI Ltd.'s 2022 revenue, it is more than enough to demonstrate that SAI Ltd. is subject to jurisdiction based on its sales and marketing to users in Delaware. *See, e.g., Rockwell*, 2022 WL 3576231, at *5 (exercising jurisdiction even though the relevant products accounted for less than one percent of defendant's overall revenue); *L'Athene*, 570 F. Supp. 2d at 593–94 (same). These amounts do not even include all Delaware users; users can "[t]ry DreamStudio for free" so long as they create an account. *See* DreamStudio*, https://dreamstudio.ai/. Accordingly, there are likely many more users in Delaware than the revenue figures Defendants provided suggest, and Defendants were unable or unwilling to provide that information. SAI Ltd. has targeted, and benefits from, users in Delaware (paying or not). And it does not—and cannot—claim unfairness in being subject to suit in a state in which it has customers. Specific jurisdiction over SAI Ltd. is proper.

The cases Defendants cite (at 8) do not support a different result. In *Toys "R" Us*, the website at issue was entirely in Spanish, merchandise could only be shipped to addresses in Spain, and defendant's website was not designed to accommodate addresses in the United States. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003). Here, Defendants' website is in English, and expressly states that the site [i.e., https://stability.ai/] and its content are "protected by copyright, trade dress, trademark, moral rights, and other intellectual property laws in the United States" and is indisputably available and used in Delaware. *See* Stability AI, Terms of Use,

https://stability.ai/terms-of-use. Therefore, SAI Ltd. targeted the United States, including Delaware, and subjected itself to jurisdiction in Delaware. Evidence of SAI Ltd.'s Delaware sales also distinguish this case from the other case Defendants cite, where the court noted that no such evidence existed. *See inno360, Inc. v. Zakta, LLC*, 50 F. Supp. 3d 587, 595 (D. Del. 2014).

## III.    Stability AI, Ltd. Is Subject to Jurisdiction Under the Federal Long-Arm Statute.

Even if the Court were to find that SAI Ltd. lacks sufficient contacts with Delaware in particular, it should still exercise jurisdiction over SAI Ltd. pursuant to the federal long-arm statute. *See* Fed. R. Civ. P. 4(k)(2). Of the three-part test, there is no dispute that Getty Images' claims predominately arise under federal law and that SAI Inc. has enough contacts with the United States as a whole. *See Conformis, Inc. v. Zimmer Biomet Holdings, Inc*., No. CV 19-1528-RGA, 2022 WL 1909386, at *2 (D. Del. June 3, 2022); Mot. 14 (not disputing these elements).

Defendants' sole argument is that Getty Images has not met its burden under the second element—the negation requirement—which requires that SAI Ltd. not be subject to jurisdiction in any particular state. Defendants are incorrect. They try to defeat the negation requirement by asserting that SAI Ltd. is subject to personal jurisdiction in the Northern District of California for this action. *See* Mot. 14. As support, SAI Ltd. points to a putative class action in California—where it *voluntarily consented* to jurisdiction for purposes of that suit—and ignores its objections to jurisdiction in California for other cases.[12] *See id*. Moreover, SAI Ltd. does not have a physical presence in California. D.I. 49 at 5. And, while Mr. O'Donoghue identifies approximately 16 employees "currently residing in California," those remote workers are employed by *SAI Services, not SAI Ltd*. O'Donoghue Decl. ¶ 23. Defendants cannot choose to be treated as a single entity for

---

[12] *See* Motion to Dismiss, *Hodes v. Mostaque et al.*, No. 3:23-cv-03481-MMC (N.D. Cal), ECF No. 54 at 15-16 (N.D. Cal. Oct. 16, 2023); Motion to Dismiss, *Andersen v. Stability AI, Inc.*, No. 3:23-cv-00201-WHO, ECF No. 58 at 1 n.1 (N.D. Cal. April 18, 2023) (reserving rights to oppose exercise of personal jurisdiction over Stability AI, Ltd. in California in other cases).

some jurisdictional purposes but not others. SAI Ltd. *does not* argue that the presence of these employees subjects it to specific personal jurisdiction in California for Getty Images' claims, and Getty Images submits that applicable law regarding remote workers requires more than their mere presence for jurisdiction. *See Grootonk v. Labrie Env't Grp., LLC,* No.: 8:22-cv-01868-FWS-ADS, 2023 WL 5420299, at *8 (C.D. Cal. July 20, 2023).

SAI Ltd., moreover, cannot escape jurisdiction in Delaware under Rule 4(k)(2) simply by voluntarily consenting to jurisdiction elsewhere. *See In re Stingray IP Sols., LLC,* 56 F.4th 1379, 1385 (Fed. Cir. 2023) ("A defendant … cannot simply use a 'unilateral statement of consent' to preclude application of Rule 4(k)(2) and 'achieve transfer into a forum it considers more convenient (or less convenient for its opponent).'"); *see also Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012). Defendants' reference to *Sony Corp.* to claim some unilateral veto right to jurisdiction in Delaware as long as it submits to jurisdiction in some other district it prefers is inconsistent with these cases and not supported by *Sony Corp.* itself, as there the court concluded that jurisdiction existed in the forum named by defendant because it was the principal place of business of its U.S. affiliate. *Sony Corp. v. Pace PLC*, No. 1:15-cv-00288-SLR, 2016 WL 593455, at *5 (D. Del. Feb. 12, 2016). Under that reasoning, *Delaware* would be the proper forum as both of SAI Ltd.'s affiliates are incorporated here.

## CONCLUSION

Defendants' motion should be denied. Only if the Court determines personal jurisdiction is lacking over SAI Ltd. should it transfer this case to the Northern District of California.

Dated: August 12, 2024

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_/s/ Robert M. Vrana_
Tammy L. Mercer (No. 4957)
Robert M. Vrana (No. 5666)
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
tmercer@ycst.com
rvrana@ycst.com

WEIL, GOTSHAL & MANGES LLP

Benjamin E. Marks (admitted _pro hac vice_)
Jared R. Friedmann (admitted _pro hac vice_)
Melissa Rutman (admitted _pro hac vice_)
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
benjamin.marks@weil.com
jared.friedmann@weil.com
melissa.rutman@weil.com

Brian G. Liegel (admitted _pro hac vice_)
1395 Brickell Ave, Ste. 1200
Miami, Florida 33131
(305) 577-3180
brian.liegel@weil.com

_Attorneys for Plaintiff Getty Images (US), Inc._

21

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 12, 2024, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

### <u>BY E-MAIL</u>

Jack B. Blumenfeld
Michael J. Flynn
MORRIS, NICHOLS, ARSHT
 & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

Allyson R. Bennett
Laura Gilbert Remus
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA, 90017-3543
abennett@mofo.com
LRemus@mofo.com

Joseph C. Gratz
Timothy Chen Saulsbury
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
jgratz@mofo.com
tsaulsbury@mofo.com

Aditya V. Kamdar
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C., 20037
akamdar@mofo.com

*Attorneys for Defendant*

Dated: August 12, 2024

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

*/s/ Robert M. Vrana*
Tammy L. Mercer (No. 4957)
Robert M. Vrana (No. 5666)
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
tmercer@ycst.com
rvrana@ycst.com

*Attorneys for Plaintiff Getty Images (US), Inc.*